TERRY F. SCHAPLOW, P.C.
1700 West Koch, Suite 11
Bozeman, Montana 59715
(406) 587-2767
Fax (406)586-4922
tfschaplow@gmail.com
Attorney for Plaintiff

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

No. 11-35285

PETER LEROY GOOLSBY
        Plaintiff Appellant,  )

                       )

    v.                 )

                       )

DARREN RANEY, individually and as )
Chief of Police and as agent of the City )
of Livingston, et al.,         )

                       )

Defendants-Appellees       )

D.C. No. 1:08-cv-00111-CSO
District of Montana, Billings

Appellant's Opening Brief

Appeal From the Montana U.S.
District Court, Billings Division

## **APPEARANCES**

Harlan Krogh
2708 First Ave. South Ste. 300
Billings, MT 59101
Phone: 406-587-3181
Fax: 406-255-0697
kgrogh@cristlaw.com
Atty. For Defendants Farrell/Harris

Terry F. Schaplow
1700 W. Koch Ste. 11
Bozeman, MT 59715
Phone: 406-587-2767
Fax: 406-586-4922
tfschaplow@gmail.com
Atty. For Plaintiff-Appellant

Mike Lilly
1 West Main Street
Bozeman, MT 59715
Phone: 406-587-3181
Fax: 406-587-3240
mikelilly@berglawfirm.com
Atty. For Defendants Raney/City of Livingston

Steve Milch
P.O. Box 2526
Billings, MT 59103-2529
Phone: 406-252-3441
Fax: 406-256-0277
smilch@crowleylaw.com
Atty. For Park County Defendants

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…………………………………………………1
TABLE OF AUTHORITIES……………………………………….......3
JURISDICTION……………………………………………………..….4
ISSUES PRESENTED FOR REVIEW…………………………………..6
STATEMENT OF THE CASE…………………………………….......6
STATEMENT OF THE FACTS………………………………………...10
SUMMARY OF THE ARGUMENT……………………………………24
STANDARD OF REVIEW……………………………………………..26
ARGUMENT…………………………………………………………..

    1. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF's
    RULE 56(f) MOTION……………………………………………27

    2. THE DISTRICT COURT ERRED IN GRANTING QUALIFIED
    IMMUNITY TO RANEY, FARRELL AND HARRIS ON FEDERAL
    CLAIMS……………………………………………………….32

    3. THE COURT ERRED IN GRANTING PARK COUNTY'S
    SUMMARY JUDGMENT MOTION ON ALL CLAIMS OTHER
    THAN JAIL CONDITIONS………………………………………..37

    4. THE COURT ERRED IN GRANTING THE DEFENDANTS'
    JOINT MOTION TO QUASH……………………………………..44

    5. THE DISTCT COURT ERRED IN GRANTING SUMMARY
    JUDGMENT TO THE CITY OF LIVINGSTON…………………45

    6. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT
    TO THE PARK COUNTY DEFENDANTS ON GOOLSBY'S JAIL
    CONDITION CLAIMS……………………………………………..48

    7. THE COURT ERRED IN GRANTING PARK COUNTY
    DEFENDANTS SUMMARY JUDGMENT ON PETE'S STATE
    LAW JAIL CONDITIONS CLAIMS………………………………50

CONCLUSION…………………………………………………….....51
STATEMENT OF RELATED CASES………………………..…..53
CERTIFICATE OF COMPLIANCE ………………………….…..53

CERTIFICATE OF SERVICE……………………………………………...54

# TABLE OF AUTHORITIES

## Cases:

Beard v. Banks (2006) 548 U.S. 521, 126 S.Ct. 2572, 2578, 165 L.ed.2d 697. …………………………………………………………………………..26

Brady v. Maryland (1963) 373 U.S. 83……………………………….…31

Crowe v. City of San Diego 593 f.3d 841, 869, 70 (9th Circuit 2010)………………………………………………………………………..36

Doe v. Abbington Friends School (3rd Circuit 2007) 480 f 2d. 252, 257 ………………………………………………………………………...24, 30, 51

Edgerly v. City and County of San Francisco 599 F.3d 946, 960 (9th Circuit 2010)………………………………… 25, 26, 32, 34, 36, 38, 43, 49, 51, 52

Farmer v. Brennan 511 U.S. 825, 832 (1994) ……………………………..39

Fisher v. Swift Transport Co (2008)¶ 12. 342 Montana 335, 181 p.2d 601…………………………………………………………………………….42

Frost v. Agnos 152 f.3d 1124, 1128 (9th Circuit 1998)…………………….37

Keenan v. Hall 89f 3d. 1083, 1089-90 (9th Circuit 1996)……...38, 39, 46, 49

Moralli v. Lake County 839 p.2d 1287, 1290 (Montana 1992). ………….50

Morris v. State 304 MT 114, 18 P.3d 1003 (2001)…………………….33, 34

Pearson v. Callahan 129 S. Ct. 808, 6818 (2009), …………....……..32, 34

Pennsylvania v. Ritchie (1987) 480 U.S. 39.………………………………31

Plouffe v. DPHHS (2004) 309 MT 184, 45P.3d 10
……………………………………………………………………....…41

Pospisil v. First National Bank of Lewistown(2001) ¶ 26, 2001 MT 286, 307
MT 392, 37 P.3d 704 ……………………………………………………43

State v. Colt (1992) 255 Mont. 399, 843 p. 2d 747; (U.S. Const. Amendment
V & XIV). ……………………………………………………………31

State v. Lafferty 291 MT. 157, 967 P.2d 363 (1998)………………………34

State v. Swanson (1986) 222 Montana 357, 362, 722 p 2d. 1155,
1158.……………………………………………………………………...3
1

U.S. v Cortez 449 US 411, 417-18……………………………………..32, 34

## Statutes

MCA 7-32-2121(7)…………………………………………………………11
MCA 7-32-2205……………………………………………………………..11
MCA 44-5-201………………………………………………………………..41
MCA 46-15-322…………………………………………………………….28, 31

## JURISDICTION

Note: "Excerpt of record" is abbreviated "ER".

On 6/12/08 plaintiff filed a complaint in Montana State 6th Judicial

Court alleging various claims including false arrest and imprisonment,

malicious prosecution, Section 1983 violations, Montana Constitution

violations, gross negligence, emotional distress, and punitive damages. The

Plaintiff named various County and City of Livingston law enforcement officials as defendants.

On 10/22/08 the Defendants removed the case to Billings Montana Federal District Court. The District Court had jurisdiction over the matter due to the federal claims raised in the complaint. On March 24, 2010 the Court granted Summary Judgment to most defendants on most claims, excepting the City of Livingston Defendants and the condition of confinement claims. (ER 72-143)

On April 14, 2010 the Court denied the Plaintiff's motion for leave to file a motion for reconsideration (ER 48-50)which pointed out that the parties had already agreed to several issues addressed by the Court in its order its 3/24/10 order ER (51-71). On March 14, 2011 the District Court granted Summary Judgment on the City of Livingston's Summary Judgment Motions and the Plaintiff's Condition of Confinement claims.

The District Court's final decision dismissed all Plaintiff's claims with prejudice (ER 4-45) as did the clerk's judgment (ER 3) Thus, the judgment and orders appealed from are final.

Plaintiff is appealing from the March 24, 2010 order ruling on various motions (including 4 summary judgment motions), from the April 14, 2010 order denying motion for leave to file motion for reconsideration, from the

March 14, 2011 order addressing summary judgment motions, and from the March 4, 2010 judgment (ER 1-2). Because the notice of appeal was filed on March 31, 2011 the appeal is timely pursuant FRAP for 4(a)(1) (A) & (B).

The Ninth Circuit has jurisdiction over this matter pursuant to 28 USC Section 1291.

## ISSUES PRESENTED FOR REVIEW

1. Did the District Court Err in denying Plaintiff's Rule 56(f) motion?

2. Did the District Court Err in Granting qualified immunity to Defendants Raney, Farrell, and Harris?

3. Did the District Court Err in granting Summary Judgment to Park County except on those claims regarding jail conditions?

4. Did the District Court Err in granting the Defendants' motion to quash?

5. Did the District Court Err in granting Summary Judgment to the City of Livingston?

6. Did the District Court Err in granting Summary Judgment to the Park County Defendants on Pete's jail condition claims?

## STATEMENT OF THE CASE

On 4/12/06, the State of Montana (Park County) filed a complaint in Park County Justice Court against the Plaintiff here (Pete) charging him with one count of criminal possession to precursor of dangerous drugs (Count 1), one count of attempted criminal production of manufacturing of dangerous drugs (Count 2) and one count of criminal possession of dangerous drugs (Count 3). On 4/19/06 the County Attorney filed an information in State District Court charging the Plaintiff with the same offenses.

On May 17, 2016, the Park County District Court granted Pete's Motion for discovery and ordered full disclosure by the state i.e. the Defendants, within thirty days or to request a written extension, (ER236). The videotapes of the traffic stop and passenger Daphne Peck interview were not produced, so Pete made a written request for them. No response, (ER232).

Then on 6/16/06, Pete wrote a second letter requesting the videotapes. No response, (ER232). Then on 8/4/06, Pete wrote a third letter requesting the videotapes. No response, (ER233).

On August 22, 2006 Pete again moved to compel the state to provide said discovery (ER231). Said motion again requested the videotape of the Peck interview and the traffic stop video tape (ER234).

On September 7, 2006, the Court entered another order compelling the State to provide said discovery by 9/29/06 (ER230). In spite of both discovery orders and the three written requests, the video tapes of the arrest and the Peck interview were never produced.

On 10/23/06 Pete filed a motion to suppress evidence and to dismiss all counts against him. Complaint Ex. J. On 11/1/06 the Park County Attorney moved to dismiss all charges against Pete, which the Court granted the same day, without prejudice *id.* at Ex. P, Q. On 1/26/07 the Park County Attorney moved to amend the order to a dismissal with prejudice which was granted *id* at. Ex. R, S.

A. Pete Filed His Civil Rights Complaint

As noted above, on 6/12/08 the Plaintiff filed this civil rights complaint in state court against the various law enforcement officers involved, which was removed to Billings, Montana Federal Court. After taking only one (Pete's) deposition (during which Pete discussed the state court discovery abuses), the Defendants filed Summary Judgment motions on most of his claims.

In Pete's 1/29/10 response thereto, he noted that the Defendants had failed to discuss said discovery violations, which mandated denial of the motions. On 2/2/10, Pete requested to depose the Defendants. On 2/11/11

the Defendants moved to supplement the record on the discovery issue by filing supplemental undisputed facts and supporting affidavits, which was granted (ER136). However, Pete's Rule 56(f) motion (which would have responded to these supplements) was denied even though three Defendants' depositions had already been taken and a fourth one scheduled (ER146-47).

The court only allowed further discovery on conditions of confinement, totally ignoring Pete's two reply briefs describing how the Defendants' supplemental information was false and/or simply raised issues of fact (ER144), (ER15).

<u>In other words, the Court allowed the Defendants, to supplement the record regarding the discovery abuse issue but denied Pete the same opportunity.</u> Discovery did not close until about four months after the reply briefs were fled (DKT 27 p. 2), allowing Plaintiff plenty of time to supplement the record had his motion been granted.

## B. The Court Granted Defendants' Summary Judgment Motions

In view of said denial, the Court, not surprisingly, granted the pending Summary Judgment motions. In the order doing so, the Court (not being satisfied by merely denying Pete the same opportunity given to the Defendants to supplement the record) then gratuitously invited the City of

Livingston to move for Summary Judgment as well, indicating that it would grant the motion, (ER114).

Accepting the invitation, the City of Livingston then moved for Summary Judgment which was granted (ER4). In so holding, the Court quoted itself as authority, repeatedly referring to its prior 3/24/10 order in doing so, e.g. (ER21).

Not surprisingly the Court then also granted Summary Judgment on Pete's jail conditions claims, (ER39,33) using the same method of authority e.g. (ER18). In so holding, the court found that Pete had to supply expert testimony to support his claim that his Sinusitis was caused by the jail conditions, (ER42-43), which is, of course beyond the financial means of any inmate, thereby rendering proof thereof an impossibility.

## STATEMENT OF THE FACTS

### A. The Parties

Defendant Darren Raney was a resident of Park County, Montana and was employed as the Chief of Police for the Defendant City of Livingston, and as such was responsible for forming and maintaining said City's law enforcement policies, practices and customs and was a policymaker. He was also responsible for the training and supervision of all City of Livingston agents and officers. (First Amended Complaint, ¶2.)

Defendant Glenn Farrell was a resident of Park County and employed by Defendant City of Livingston as a captain (*id.* at ¶3).

At all times material hereto, Defendant Officer Joseph Harris was a resident of Park County and employed by Defendant City of Livingston as a police officer (*id.* at ¶4). Defendant Clark Carpenter was a resident of Park County and employed by Defendant Park County as the Sheriff for Park County, and as such sheriff was responsible for forming and maintaining said County's law enforcement policies, practices and customs and was a policymaker. Also, in such capacity he was the chief law enforcement officer of said county and responsible for the training and supervision of all Park County agents and deputies, including but not limited to, Defendant O'Neill, id at. ¶5.

Also, in such capacity he was responsible for the immediate management and supervision of the jail and the custody and care of the inmates confined within it. *See, e.g.*, MCA 7-32-2121(7) (the duties of the sheriff include taking charge and keeping the detention center and its inmates) and MCA 7-32-2205 (the sheriff shall provide inmates with necessary food, clothing and bedding). (*Id.* at ¶5.)

Defendant Jay O'Neill was a resident of Park County and employed by Defendant Park County as a deputy sheriff. Defendant O'Neill was one of

Plaintiff's jailers and/or in charge of said jailers. (*Id.* at ¶6.) Defendant City of Livingston is the employer of Defendants Raney, Farrell and Harris (*id.* at ¶7.). Defendant Park County is the local government entity that is the employer of Defendants Carpenter and O'Neill (*id.* at ¶8.).

B. Peck Purchases Sudafed

On April 10, 2006 Pete entered Western Drug in Livingston with his girlfriend Daphne Peck (*id.* at ¶ 12). While in Western Drug Ms. Peck ordered less Sudafed than the amount that she was prescribed. While there, Pete bought two ice cream sandwiches and a two liter bottle of coke. Chris Slaght accompanied them to Western Drug (ER175).

The three were traveling to fix a window in Daphne Peck's vehicle (ER76). Pete was not aware of how much Sudafed Peck bought. He did not give her any money for it and she did not show him how much she had (*id.*).

At the time, Carla Fenton was a pharmacist at Western Drug. Her ex-husband was a City of Livingston Police officer. (First Amended Complaint, ¶8.) Ms. Fenton called the City of Livingston Police Department and told the dispatcher that Pete was buying large amounts of Sudafed to manufacture methamphetamine (*id* at ¶14).

At approximately 5:00 p.m. Defendant Officer Harris of the Livingston Police Department was informed by Ms. Fenton of the above

"facts." However, no Sudafed was purchased at Western Drug by Pete (*id* at ¶15). Ms. Fenton described a vehicle in which she believed Pete and the unknown female (Daphne Peck) were traveling. Defendant Harris located the vehicle that matched that description at 5:50 p.m. parked at Montana and M Streets. (*Id* at ¶16.)

As the parties left that location, Pete was driving because Peck was cold and sitting in the passenger's seat (ER176). The parties were planning to drive to a wrecking yard located on the old highway leaving Livingston to fix the side window (ER177).

Officer Harris was advised by Officer Farrell not to pull the vehicle over until he had probable cause so Harris set about manufacturing probable cause for a traffic stop (*id.*) that immediately turned into a drug investigation (ER190,191). Pete noticed a police car following him while he was driving on Interstate 90 (ER177). Pete had driven a short distance after entering the Interstate when he was pulled over.

C. The Officers' Pretext Stop For A Drug Bust Against Pete

In the police officer's narrative, it stated that Pete was pulled over for weaving down the road and crossing the fog line ten to twelve times in one-third of a mile (ER198). However, the video tape of the arrest, which the officers were ordered to produce but twice refused (more on this below),

indicated that he crossed the line only two or three times. This was due to high wind at the time. The vehicle was not swerving but rather was being pushed by the wind slightly (ER190). Defendant Farrell described Pete as a person that needed to put in jail for the rest of his life (ER193).

The officers' blatant pretext for the traffic stop is revealed by their total failure to follow up on the alleged reason for the stop. Specifically, even though Pete was supposedly arrested for weaving, he was never asked to do a field sobriety test (ER190, 194). Defendant Harris walked up to the vehicle Pete was driving and asked him if he was Pete Goolsby. Defendant Harris had never met Pete before in his life (ER191).

It was impossible for Harris to determine that Pete was driving by following the vehicle from the great distance that the video shows. First, there was a full-size all-terrain type tire attached to the back of the vehicle. Second, the vehicle had overly tinted windows. A person could not have seen a person inside the vehicle even if his face was pressed against the window. Also, Slaght was sitting directly behind Pete, making it impossible for someone to see the person in front of him (ER190-91).

Thus, the officers purported to identify Pete from this set-up (*id*.). The only conclusion is that the officers illegally profiled Pete to find him, pull

him over and put him in jail (ER190,193), a conspiracy that continued throughout his prosecution (ER183).

At the stop, Pete provided Defendant Harris with his license, vehicle registration and insurance (ER191). He was then told he was being arrested for having a suspended license, which was later dismissed (*id*.). Pete did not believe his license was suspended (ER178).

D. Nothing In The Vehicle Belonged To Pete

At the traffic stop, Peck told Officer Harris that nothing in the vehicle belonged to Pete and that she had purchased the Sudafed, in response to direct questions from Defendant Harris (ER183). She later wrote a statement indicating that Pete was not driving recklessly or speeding, that the officer who came to the driver's window was very short and was "determined to arrest Mr. Goolsby." She further indicated that the officer said he pulled Pete over for repeatedly hitting the while line "which was not true" (ER203).

All of a sudden, the traffic stop turned into a drug investigation, where the officers seized the vehicle and taxis started showing up on the freeway to drive Slaght and Peck home (ER191). Pete, however, was handcuffed and then placed in Defendant Harris' patrol car (ER180).

15

Defendant Harris then told Pete that he had a bunch of evidence on him, that he was in big trouble, and that Pete was finished (ER179,191). To Pete's knowledge there were no drugs or contraband in the vehicle (ER180).

Peck's subsequent statement corroborated that no drugs were found in her truck (ER203). The videotape also revealed a discussion between the officers to the effect that one of them admitted that Pete could not be arrested for a suspended license and another officer said they would arrest him anyway (ER180,191).

As it turned out, Peck was taken by taxi to the police station and Interviewed by Defendant Officer Farrell, which was also videotaped. During the interview, Officer Farrell told Peck that he was going to put Pete in prison for the rest of his life, even though he had been pulled over for swerving and arrested for a suspended license (ER193).

The officer who arrested Pete threatened Peck with thirty or forty years of prison time unless she testified against him about some things in this trial. In other words, she was told that she was going to do thirty years of prison time unless she implicated Mr. Goolsby in this crime (ER183).

Also there were statements made to Pete by the officers knowing that his license was suspended even prior to pulling him over, even though the

police narrative stated they did not know who was driving the vehicle. In other words, they were profiling Pete in this vehicle (ER179).

E. Defendant Farrell Applied For a Search Warrant

On April 10, 2006, Officer Glenn Farrell applied for a search warrant (Complaint, Exh. A). He began the application by stating the offense of criminal possession of precursors to dangerous drugs had been committed and that in or upon an automobile (described as a maroon 1997 Ford Explorer, license plate number 1- A30324 and registered to Daphne Peck) were located items which are contraband evidence or fruits of the crime. (First Amended Complaint, ¶24.)

The application also stated that Defendant Harris recognized the driver as Pete. However, his report indicates he could not see who was driving the vehicle other than a "huge" male. The application for search warrant states Defendant Harris saw the vehicle swerve.

Law enforcement had prior knowledge that Pete's driving privileges were suspended. Pete's driving record indicates that his license was suspended just four days before the stop on April 6, 2006. The application for search warrant stated that Defendant Harris stopped the vehicle at 6:22 p.m. just west of Exit 333 on Interstate 90. (*Id* at ¶25.)

However, there was no probable cause to issue the search warrant

because Pete did not own the vehicle, Peck did. Everything in the vehicle belonged to Peck. Peck had purchased the Sudafed and not Pete (ER192). Also, Pete questioned whether the issuing judge had jurisdiction to issue a search warrant because he was a city magistrate (ER179).

F. The Search Warrant Is Issued

On April 10, 2006 a search warrant was issued by City Court Judge Lord (Complaint, Exh. B). the vehicle was seized and transported to the City County complex sally port. After searching the vehicle it was returned to Ms. Peck.

On April 12, 2006 the State of Montana through the Park County attorney filed a complaint in Park County justice court for the three drug counts noted in the statement of the case. Count II (manufacturing drugs) referred to a "cookbook" and "list of chemicals," which were allegedly in Plaintiff's possession on April 10, 2006. However, this evidence was apparently planted by the Livingston officers because the internet download date was April 11, 2006, the day after Plaintiff was arrested (ER200-01).

On that same day April 12, 2006 Justice of the Peace Eglund issued a

warrant of arrest for Pete (Complaint, Exh. D). On April 19, 2006 the

County attorney filed an information in district court of Park County

charging the Plaintiff with the same offenses (Complaint, Exh. E).

G. The Officers Refuse to Produce The Exculpatory Videotapes

On May 15, 2006 Pete appeared for his arraignment in Park County

District Court. On May 17, 2006 the Park County District Court signed an

order granting Pete's motion for discovery and ordering full disclosure by

the State (i.e., the Park County attorney and the City Defendants) of all

materials discoverable within thirty days of the order (i.e., by June 16, 2006)

(ER236). This included the videotapes of the traffic stop and the interview

with Peck, which were exculpatory evidence and never produced. Pete then

wrote three letters asking for this evidence, all of which were ignored,

(ER232-233).

Because the Defendants violated the initial order by failing to produce

discovery, on August 22, 2006 Pete, through his attorney, again moved the

court to compel the State to provide discovery (ER230). After requesting the

videotapes, (ER234) Officer Harris' narrative referred to these recordings

(ER196).

On September 7, 2006 the Park County District Court entered an order

compelling the State (i.e., the Park County attorney and the City Defendants) to provide said discovery by September 29, 2006 (Complaint, Exh. I). In spite of both discovery orders and the three letters, the videotapes of the arrest and Peck interview were never produced.

These Defendants were in possession of these tapes throughout the entire proceedings. In Defendant Harris and Farrell's January 16, 2009 Initial Disclosure in Federal Court (ER206), they state that they have the tapes and in their July 14, 2009 responses to plaintiff's first discovery requests, they indicated that they had already provided these videotapes to the Plaintiff in the Federal Court suit, (ER210).

H. Pete's Jail Conditions Were Inhumane

Pete was kept in the Park County jail for seven months (272 days) in cruel and inhumane conditions. Pete could not see daylight from his cell, in fact, a person could not see daylight from the entire floor (ER192). Pete was not given recreation at any time during the seven months he was there (*id.*). There was no ventilation in his cell (*id.*).

The Park County jail is an old ship's brig that was cut out of a ship and lowered into the basement of the City/County complex (*id.*). Because of this, there was a gap between the steel of the ship and the concrete wall of the jail of about two inches. For the twenty plus years the jail has been there,

condensation, dust, sludge, etc. had accumulated there (*id*.). This debris was on the walls (*id*.). Pete was constantly in the process of chipping and scraping off grime, mold, dust, etc. that was in the gap (*id*.).

The distance between Pete's bed and the shower head was approximately six feet and, as a result, it was misty, foggy and wet in his cell at all times (*id*.). Because he was housed next to the shower for the entire time, there was water dripping down the inside walls of his cell (ER189). The shower runs all day long (ER192). Also, all of the pipes had old-fashioned asbestos hanging on them (*id*.) which had been there for over 20 years, (id.).

Prior to being in the Park County jail, Pete never had problems with sinusitis or other infections. After being in the jail Pete had to be treated for sinusitis (an infection in his head) (ER190). Pete's sinusitis was a direct result of his being in the Park County jail (*id*.).

Shortly after leaving the jail, Pete's sinusitis never occurred again, (ER189). The jailers were deliberately indifferent to Pete's medical needs (*id*.). Pete was eventually taken to the dentist, the emergency room and the doctor by the jailers (ER186-88).The documents relating to the length of time Pete made requests to the jailers before the responded were not

accurate. The jailers ignored his requests, at times for at least seven days (ER192-93).

The pain in Pete's head was so severe that he called his parents and told them he was going to die (ER188). The doctor who treated him told him he either had an infection or cancer in his head (*id*.). His head condition had been going on for days before the jailers took any action regarding it (ER189).

Chapter XVII of the Park County Jail Manual indicates that the Sheriff is ultimately responsible for the jail's operation (ER229). This manual contains no provision for inmates' recreation as indicated by the table of contents (ER221).

I. Pete's Pretrial Motions To Dismiss For Lack of Probable Cause

On October 23, 2006 Pete, through his attorney, filed a motion to suppress the evidence seized under the search warrant for lack of probable cause to do so (Complaint, Exh. J).

Also, on that same day, Pete, through his attorney, moved to dismiss Count 1 (criminal possession of precursors to dangerous drugs) for lack of "combined chemicals" for probable cause (Complaint, Exh. L) and to dismiss Count 2 (attempted criminal production or manufacture of

dangerous drugs) for lack of "attempted" probable cause (Complaint, Exh. K). Finally, Pete also moved to dismiss Count 3 (criminal possession of dangerous drugs) for lack of probable cause (Complaint, Exh. M).

K. The State Dismisses the Charges

On November 1, 2006 Park County attorney moved to dismiss the information against Pete without prejudice (Complaint, Exh. P). Pete never agreed to a plea agreement. Specifically he never agreed to admit to the allegation of absconding, or any other charge (ER181). It would have made no sense for him to do so because he was going to do ten years suspended as stated in the 2000 sentence when he violated the terms of his probation (ER181), a dirty UA taken after the illegal traffic stop, (ER107, 180-83).

On November 1, 2006 the Park County District Court ordered that the Information filed against Pete would be dismissed without prejudice (Complaint, Exh. Q). At his deposition, Pete was shown a September 7, 2006 letter from Deputy County Attorney Todd Whipple regarding an alleged plea agreement. However, the charges in Livingston had already been dismissed without prejudice at that time (ER182).

On January 26, 2007 the Park County attorney moved to amend the order of dismissal without prejudice to dismissal with prejudice (Complaint,

Exh. R). On January 29, 2007 the Park County District Court granted the motion dismissing the matter with prejudice (Complaint, Exh. S).

As a result of the Defendants wrongful, unlawful and negligent actions as described above, without limitation, Pete suffered substantial lost wages from his job for a local construction company. From the time Pete was 18 years old, he had always been gainfully employed and was skilled in several occupations. Prior to his arrest, he had always been in a foreman or supervisor position (ER184). Some of his employers included Fridley Concrete, RHR Construction and Buckshot Construction (ER184-85).

As a result of the Defendants' wrongful, unlawful and negligent actions as described above, without limitation, Pete was held for 272 days in incarceration on the charges that were dismissed. Pete suffered substantial emotional distress, including destroying his relationship with his son, losing a good job with decent pay (ER186) and it has taken a heavily emotional toll on Pete (ER184).

## SUMMARY OF ARGUMENT

The District Court erred in denying Pete's Rule 56(f) motion (to supplement the record) (ER136), while at the same time allowing the Defendants to do so, *id.* This ruling allowed the Defendants to file Supplemental affidavits

regarding chain of custody and the exculpatory videos, but denied Pete the opportunity to respond thereto. See Part 1 below. These motions are routinely granted, *Doe v. Abbington Friends School* 480 F.3d 252 (3rd Circuit 2007).

Discovery did not close for another four months, Dkt 27 p. 2, and three of the four depositions had already been taken. In its 3/4/11 opinion, the Court practically admitted this mistake, but attempted to explain it away by a totally erroneously interpretation of the stipulated facts, see part 5A below. If this Court finds that Pete's Rule 56(f) motion should have been granted, then it needn't go any farther and should reverse the Court on all other rulings because they are affected by Pete's inability to present evidence thereon.

The Court erred in granting qualified immunity to Defendants Raney, Farrell and Harris, because genuine issues of fact exist regarding the initial stop (Pete only touched the fog line two to three times), his arrest (he was profiled) and the search of the vehicle (none of the contents were his), *Edgerly v. City and County of San Francisco*, 599 F.3d 946 (9th Circuit 2010), see part 2 below. Also, the Court erred in granting Summary Judgment to the Park County Defendants because the Court ignored Pete's evidence on his medical claims, and ruled that he must present expert

testimony thereon, clearly beyond the financial means of any inmate, see parts 3, 6 below. In so ruling, the Court failed to note, among other things, that Pete was shackled every time he was allowed to recreate, which amounts to no recreation at all, *id.*

Moreover, the Court erred in granting the Defendants' motion to quash because the parties agreed on the production of the requested materials (the Defendants' personnel files), which were relevant to Pete's allegations alleging misconduct, see part 4 below. Finally, the Court erred in granting Summary Judgment to the Defendant City of Livingston because genuine issues of fact exist, *Edgerly, supra*. and said decision was based on its prior erroneous rulings, see part 5 below.

## STANDARD OF REVIEW

Because this is an appeal from a district court granting summary judgment to the defendants, all issues discussed below are governed by the following standard of review. This court reviews de novo the District Court's order granting summary judgment. More over, the facts are to be viewed in a light most favorable to Pete as the non-moving party. This court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive of law,

*Edgerly v. City and County of San Francisco* 599 F.3d 946, 960 (9th Circuit 2010).

Also, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party and all reasonable inferences will be drawn in the non-moving party's favor, *Beard v. Banks* 548 U.S. 521 (2006).

Finally, the Defendants, as the moving parties, always have the burden of making a prima facie showing that there are no genuine issues of material fact, Beard *supra.*

## **ARGUMENT**

## 1. THE DISTRICT COURT ERRED IN DENYING PLAINTIFF'S RULE 56(f) MOTION.

Notes: Effective 12/1/10, the language that appeared in Rule 56(f) now appears as Rule 56(d). Here, it will be referred to as Rule 56(f) because it was so used at the time the motion was made.

As discussed above the Plaintiff here was denied the opportunity to introduce the deposition testimony of the Defendants regarding the discovery abuse issue, chain of custody issue, evidence logs, etc. while the Defendants were allowed to so supplement with affidavits and supplemental tests. The reason for the Rule 56(f) motion was to allow the plaintiff to

conduct discovery on the very issues raised in the Defendant's supplemental motion.

The depositions of Defendants Farrell, Harris and O'Neill had already been taken and Defendant Raney's had been scheduled for 4/28/10 (about one month after Pete's reply briefs were filed).

The Defendants' supplemental pleadings made the chain of custody of evidence (including the videotapes) a very important and disputed issue, which Plaintiff was placed at a disadvantage without being able to submit discovery relevant there to. In denying this motion, the court claimed that there was no substantial evidence supporting the Defendants failure to turn over exculpatory evidence (ER139). However, Goolsby testified at length to the contrary, (ER190-91).

The court claimed that an affidavit of his defense counsel was necessary because Pete had no personal knowledge of the communications between his attorney and the prosecution (ER139). However, Pete testified that <u>he himself</u> had received the discovery and that he knew exactly what the Defendants had produced, (ER191-92).

Moreover, the Court totally ignored the evidence set forth in Pete's reply brief, which included the following. Regardless of prosecutor Linneweber's supplemental affidavit, the Defendants did not dispute that

they violated the first discovery order, (ER145) said discovery order being attached as a complaint exhibit, (ER147, 236).

The Defendants also did not dispute that they totally failed to respond to three written requests for discovery, (ER232-33), evidence thereof also being before the Court as a complaint exhibit. This inaction represents serial violations of the Montana Statute requiring disclosure on request MCA 46-15-322, (ER145).

Thus, the Defendants failed to respond to any discovery request/order for over four months (ER148).

A.     The Court Ignored Contradictions Between Defendants Supplemental Affidavits and Their Depositions

Moreover, the Court ignored the contradiction between the Defendants' self-serving affidavits and their deposition testimony. For example, the second affidavit of Harris (Dkt 71-2, p. 31-33) indicated that he turned over his file to Linneweber on or about April 10, 2006 and that thereafter he was "out of the loop" regarding legal proceedings. However, at his deposition, he admitted that he simply turned over his materials to Defendant Farrell, who then took charge of the matter.

Also, it became clear at Harris' deposition that there were Goolsby criminal pleadings in the Defendants' file, indicating that these Defendants

29

were still "in the loop" as late as October 2006, after both discovery orders had been issued, (ER148).

Similarly, Defendant Farrell's second affidavit (Dkt 71-2, p.27-29), which is a verbatim copy of Harris', is misleading for the same reasons. Also, Defendant Farrell admitted that he was in regular communication with Linneweber throughout Plaintiff's prosecution, including through the use of an "in box" mechanism that the county attorney uses to communicate with him, (ER148).

All these facts would have been fleshed out if Plaintiff's Rule 56(f) motion had been granted, and, in any case, raised fact issues negating Summary Judgment. If Plaintiff had been allowed to prove the Livingston Defendants' discovery abuses, it would have had a great impact on the pending Summary Judgment motions. For example, qualified immunity does not lie if the Livingston Defendants violated a well-established law that they should have been aware of. So far, the Livingston Defendants have admitted in their depositions that they knew they were supposed to disclose all exculpatory evidence, (ER149) which is well-established. Yet, their failure to respond to Goolsby's first discovery requests, follow up letters and first discovery order raises an issue of fact that they did not, their proffered affidavits not withstanding.

30

If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting on the motion, *Doe, supra,* 480 F.3d at 257.

    B.      <u>The Defendants Violated Pete's Due Process Rights</u>

The above proferred evidence makes it clear that, had Pete's Rule 56(f) motion been granted, he would have been able to prove the Defendant's violation of his due process rights, or at the very least, raise genuine issues of fact defeating the Defendants' Summary Judgment actions.

The plaintiff clearly stated in his deposition that the Livingston Defendants failed to provide exculpatory evidence, constituting a violation of Plaintiff's due process rights *State v. Swanson* (1986) 222 Montana 357, 362, 722 p 2d. 1155, 1158. In so acting, these Defendants violated MCA 46-15-322 (disclosure of evidence by the prosecution) and the due process clause of the Montana Constitution and the United States Constitution.

Under these two clauses, criminal prosecutions must comport with prevailing notions of fundamental fairness (MT Const. Art. II, § 17), see also, *State v. Colt* (1992) 255 Mont. 399, 843 p.2d 747; (U.S. Const. Amendment V & XIV). This constitutional privilege delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of the criminal justice

system, see, *Brady v. Maryland* (1963) 373 U.S. 83; *Pennsylvania v. Ritchie* (1987) 480 U.S. 39.

In summary, because Pete's Rule 56(f) motion was denied, his ability to respond to the Defendants' Summary Judgment motions was severely compromised. If this Court finds that Pete's Rule 56(f) motion should have been granted, then its inquiry ends and it must necessarily reverse the Court's orders granting Summary Judgment as well.

## 2. THE DISTRICT COURT ERRED IN GRANTING QUALIFIED IMMUNITY TO RANEY, FARRELL AND HARRIS ON FEDERAL CLAIMS

As noted above, if Pete had been allowed to offer evidence pursuant to his 56(f) motion, he would have been able to demonstrate even more clearly why the Defendants were not entitled to qualified immunity. Without waiving those arguments, Plaintiff can also demonstrate that the Court erred in granting the Defendants Summary Judgment.

In addressing qualified immunity claims, the Court has two functions 1) to determine whether the facts allege a violation of a federally secured right and 2) whether the right was clearly established, *Pearson v. Callahan,* 129 S. Ct. 808, 6818 (2009), Reasonable suspicion to begin a traffic stop esists when there are objective facts and circumstantial evidence suggesting

that a particular automobile is involved in criminal activity, *U.S. v. Cortez* 449 U.S., 411, 417-18.

Here the Court amazingly stated that no evidence offered suggested that the initial stop of Goolsby violated his constitutional rights (ER104). However, Goolsby's evidence indicated otherwise and he is entitled to have all reasonable inferences drawn therefrom and to have this evidence viewed in a light most favorable to him *Edgerly, supra.*

The Court claims that Pete's initial traffic stop was justified because he was weaving and had crossed the center and fog line, citing the "careful and prudent driving" statute, (ER104). However, conspicuously absent from the Court's discussion is any mention of the evidence that immediately calls this assertion into question, i.e. the officers' total failure to investigate the cause of his alleged weaving, (ER190,94). The Court does not (and cannot) refute this evidence. The Court also failed to discuss the Defendants' motive for the step- they described him as somebody who needed to be put in jail for the rest of his life (ER193).

Moreover, Defendant Harris exaggerated the number of times the Plaintiff crossed the fog line (ER198). Also, the videotape the Defendants failed to produce showed that Pete crossed only one line only 2-3 times because of the high wind, and did not cross the other line at all, (ER190).

Also, passenger/eyewitness Peck indicated that Pete was not driving recklessly or speeding and that Farrell lied about how many times Pete crossed the fog line, (ER203).

Moreover, the law in Montana is that crossing the fog line a few times is not grounds for a traffic stop. *Morris v. State* 304 Mt. 114, 18 P.3d 1003 (2001) (Drifting to touch the fog line and then drifting a foot into the on-coming traffic lane). *State v. Lafferty* 291 Mt. 157, 967 P.2d 363 (1998) (Crossing the fog line twice and driving on it once).

Therefore, the Plaintiff has alleged a violation of a federal right, *Pearson, supra,* by showing an unreasonable search and seizure as applied to traffic stops, *Cortez, supra.* Moreover, the right of a party not to be stopped without particularized suspicion is clearly established in Montana, *Morris, supra. Lafferty, supra.* Goolsby is entitled to every reasonable inference drawn in his favor that these facts show and have them viewed in a light most favorable to him, *Edgerly, supra.*

Nor can the Defendants justify their stop by claiming that Goolsby had a suspended license while driving. Harris admits that he could not see who was driving but later claims that the driver was huge, (ER196). However, it was impossible for him to so conclude because he would have

had to see through overly-tinted glass, a full sized all-terrain tire and Slaght who was sitting directly behind Pete, (ER190-91).

The Court then claims that a pretext stop is valid as long as the underlying stop is valid, (ER105). However as discussed above, the initial stop was invalid. Given these parameters, the initial stop was improper, *Cortez, supra.* and therefore all evidence and police actions performed thereafter violated Pete's constitutional rights as well.

A. Goolsby's Arrest Was Not Valid

The Court bases its conclusion that Pete was properly arrested because the initial stop was valid, (ER106), the falsity of which has already been demonstrated.

B. The Defendants' Search was Invalid

In justifying the subsequent search, the Court parroted the Defendants' facts, with absolutely no discussion of Pete's evidence, (ER108-109). However, Harris' search warrant application falsely stated that he recognized the driver as Pete, a fact not discussed by the Court. Harris had never met Pete before (ER191) and his report indicated he couldn't see who the driver was (ER196). Also, the Court failed to discuss the State's admission that no probable cause existed, i.e. after Pete's attorney moved to

suppress the evidence obtained under the search warrant for lack of probable cause, the State dismissed the charges, Complaint Ex. J,P.

Next, the application failed to note that the car was Pecks'. It also failed to note that Peck twice told the officers, once at the sight and once at a hand-written statement, that she had purchased the Sudafed and that everything in the car was hers, not Pete's, (ER183, 203). These representations, regarding the ownership of the very evidence that Pete was charged with possessing, were material and omitted from Harris' affidavit. Thus, Harris' affidavit violates the Fourth amendment, *Crowe v. County of San Diego* 593 F.3d 841, 869-70 (9th Circuit 2010).

The Court then claims that a search warrant is not necessary for Pete's probation officer to conduct a UA, (ER112), all the while, failing to note that said UA never would have been conducted but for the alleged stop. The Court then bases its conclusion that the claims against Raney are invalid (based on negligent training/supervision) because the evidence proffered by Goolsby does not demonstrate a violation of his rights.

Supervisorial liability under Section 1983 obtains where (1) the supervisor's own culpable action or inaction results in inadequate training supervision or control of the subordinates; (2) their acquiescence in the constitutional deprivation of which a complaint is made or; (3) for conduct

that showed a reckless or callous indifference to the rights of others,
*Edgerly, supra.* 599 F.3d at 961. When the facts are taken in a light most
favorable to Pete, it is clear that Summary Judgment does not lie on the
qualified immunity issue or Farrell, Raney, and Harris.

Finally, the Court failed to discuss these Defendants' apparent
planting of evidence. Here, they claim that a "cookbook" and a "list of
chemicals" were in Pete's possession on 4/10/06. However, the internet
download date for these documents was 4/11/06, the date after Pete was
arrested, (ER200-01). The Court also failed to discuss Farrell's improper
actions of threatening Peck with thirty to forty years in jail if she did not
testify against Pete, (ER183), and telling her that Pete needed to be put in
jail for the rest of his life. (ER193). Thus qualified immunity does not lie for
these Defendants.

## 3. THE COURT ERRED IN GRANTING PARK COUNTY'S SUMMARY JUDGMENT MOTIONS ON ALL CLAIMS OTHER THAN JAIL CONDITIONS

Pete's claims against the Park County Defendants stem from his
incarceration at the Park County Detention Center. Claims made by pretrial
detainees are analyzed under the Fourteenth Amendment due process clause,
which are similar to a prisoner's rights under the Eighth Amendment, and

the same standards are applied, *Frost v. Agnos* 152 f.3d 1124, 1128 (9th Circuit 1998). Here, even though the City of Livingston had not moved for Summary Judgment, the Court unilaterally invited it to do so indicating that it would grant Summary Judgment to them as well (ER114, note 8).

A. The Court Ignored Pete's Evidence Regarding Medical Claims

In granting Summary Judgment on Pete's medical claims, the Court examined only the Defendants' evidence, and ignored all of Pete's. Pete testified that the headaches and related matters that he complained to the jailers about had been going on for days before they took any action, (ER192-193). In fact, the pain in his head was so severe that he called his parents and told them he thought he was going to die (ER188).

Moreover, the wet, moist conditions in his cell caused the Plaintiff's headaches and Sinusitis (ER190). He never suffered these conditions before enduring the Park County Jail and his head condition had persisted for days before the jailers eventually acted by taking him to the emergency room of the hospital, (ER186-188).

Also, Pete testified about the lack of ventilation in his cell and how he had been denied any meaningful exercise for 272 days (ER192). Pete is entitled to have this evidence viewed in a light most favorable to him and to have all reasonable inferences drawn there from, *Edgerly, supra.*

Inadequate violation and air flow violates the Eighth Amendment if it jeopardizes the health of the inmates and the sanitation of the jail, *Keenan v. Hall* (9th Circuit 1996) 89 F.3d 1083, 1090. Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates, *Keenan, supra.* 89 F.3d at 1089.

However, in discussing the defendants' failure to address Pete's medical conditions, the Court attempted to side step these facts, (ER117-19). In doing so, the Court relied on the Defendants' self-serving facts, ignoring the fact that the Defendants' records were not accurate (ER192-93).

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement, to ensure inmates receive adequate food, clothing, shelter and medical care and to take reasonable measures to guarantee the safety of the inmates, *Farmer v. Brennan* 511 U.S. 825, 832 (1994). A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment, *id.* at 828.

Also, the cases are clear that deliberate indifference is satisfied by something less than actual intentions for the very purpose of causing harm or with knowledge that harm will result, *id.* at 835. The Court's discussion of the law failed to note the above standard, (ER117). Therefore, the Court was

in err in finding that there were no genuine issues of material fact regarding Pete's treatment at the jail.

B. <u>Summary Judgment Does not Lie for Pete's Jail Conditions Claims</u>

As discussed above, *Keenan v. Hall* sets forth the standards that have been applied. In this circuit since 1996. In its discussion of Pete's jail conditions, (ER119-24) the Court failed to discuss *Keenan*. Also, the Court fails to that there was asbestos hanging on the pipes for over 20 years, (ER192) prima facia evidence of his rights being violated.

Moreover, there was a complete lack of ventilation in his cell, the air in his cell was constantly foggy and misty, and his cell was always damp (ER192). The shower head, which ran twenty four hours a day, was only six feet away from Pete's bed, causing water to constantly drip down the cell walls (ER192). In spite of this evidence, the Court inexplicably found no genuine issues of material fact, and granted Summary Judgment except with respect to Park County, and O'Neill and Carpenter in their individual capacities, (ER53).

Next, the Court attempts to explain away Pete's denial of exercise for 272 days by stating that, even if this claim were adequately pled, he was allowed to use recreation room 22 times during his period of incarceration, citing the supplemental affidavits of the defendants, (ER123) which the

Court denied Pete the opportunity to refute. However, in O'Neill's deposition, contrary to his affidavit, he testified that all inmates in the sunroom were always kept in handcuffs.

Obviously, this does not qualify as recreation at all, as was pointed out to the Court in Plaintiffs reply brief which was ignored, (ER153). Also, said reply brief noted that O'Neill's affidavit states that inmates are allowed to exercise in their cells but in his deposition he admitted that there was no exercise equipment contained therein, *id,* a fact also ignored by the Court. Finally, the Court also ignored the uncontradicted evidence that the Park County jail manual contains no policy providing for the recreation of the inmates (ER221).

C. Summary Judgment Does Not Lie For False Arrest/False
   Imprisonment

Here the Court examines the Defendants' evidence only, and ignored all of Pete's (ER124). The Court's entire discussion of false arrest is based on the Court's erroneous conclusion that Pete's initial arrest was lawful (ER125 see above discussion). Also, said discussion fails to note the Court's own earlier fact that a Gallatin County petition to revoke was based on the dirty UA obtained after Pete was illegally arrested (ER107).

Given the fact that the arrest was not legal (See above) then the dirty UA is inadmissible as well, the fact that the Court fails to discuss. Since Pete's detention was unlawful, the jailers' contacts were not reasonable, see MCA 44-5-201. Therefore, Park County is not entitled to Summary Judgment on Goolsby's false arrest/imprisonment claims and assault/battery claim.

D. Summary Judgment Does Not Lie for Malicious Prosecution

In *Plouffe v. DPHHS* (2004) 309 MT. 184, 45P.3d 10, the Montana Supreme Court reversed a District Court's directed verdict in favor of its Defendants on a malicious prosecution action. The Court ruled that the probable cause issue must be submitted to the jury when the evidence related of the Defendants' knowledge is susceptible to different conclusions by reasonable persons. Moreover, according to the Court, a party may demonstrate probable cause for part of a claim while a jury may still reasonably conclude that they party lacked probable cause to prosecute the action, id. at ¶18,19.

Here, the Court focuses only on the Park County attorney's actions (ER131-31), but fails to note that the Defendants here were just as involved in failing to turn over evidence as the Park County attorney was, see Argument part 1A above. If Pete's Rule 56(f) motion had been

granted, he would have been able to contradict the Defendants' self-serving supplemental affidavits and prove facts supporting this claim even further. Therefore, Summary Judgment does not lie on Plaintiffs malicious prosecution claims.

E. Summary Judgment Does Not Lie for Plaintiff's Negligence/Gross Negligence Claims

The Montana Supreme Court has generally held that, since negligence actions ordinarily involve questions of fact, they are generally not susceptible to Summary Judgment, *Fisher v. Swift Transport Co*. (2008)¶ 12. 342 MT. 335, 181 P.2d 601. Gross negligence is defined as a conscious voluntary act or remission in reckless disregard of a legal duty and that the consequence to another party, Black's Law Dictionary p. 1134 (9th Edition 2009). In other words, Gross negligence is also comparable to reckless negligence, *id.*

Here the evidence clearly shows that the Park County Defendants were negligent in their treatment of Pete regarding his medical needs, regarding his recreation needs, etc. The Court failed to note that Pete was shackled the entire time that he was in the sunroom when he was supposed to be "recreating" (ER153) which would constitute negligence. Therefore Summary Judgment does not lie on this count. See *Edgerly, supra* 599 F.3d

at 960 (because the District Court mistakenly concluded that his arrest and search were lawful it did not reach the negligence questions so the case was remanded so the District Court could address these questions).

### F. Summary Judgment Does Not Lie on Pete's Emotional Distress Claims

Plaintiff can recover on emotional distress claims if the Defendants actions were improper, *Pospisil v. First Nat'l Bank of Lewistown* (2001) ¶26 307 Montana 392, 37 P.3d 704, 708. A jury may very well conclude that the Defendants actions were improper, e.g. by profiling Pete at the initial stop, disregarding Peck's statement that all the car's contents were hers, executing a search warrant application that omitted material facts, etc. Therefore, the Court erred in limiting this claim to jail conditions only (ER135).

Pete, as the party opposing summary judgment is entitled to all reasonable inferences to be drawn from this evidence and to have it viewed in a light most favorable to him. Therefore, Summary Judgment does not lie on emotional distress.

### G. Summary Judgment Does Not Lie on Punitive Damages

Here, the Court admitted that Pete's punitive damage claim is based on other claims (ER136). Since the Court was in err for finding that Summary

44

Judgment did lie for Pete's claims, to the extent it did, Pete is entitled to full punitive damages.

## 4. THE COURT ERRED IN GRANTING THE DEFENDANTS' JOINT MOTION TO QUASH

The Court granted the motion of Defendant Harris and Farrell to quash their employment files, Plaintiffs' notices of deposition *subpeona duces tecum* to these Defendants, and protecting their personnel records from discovery, (ER140-42). Here again, the court failed to note that in the pleadings before it, the Defendants agreed to produce these documents under an agreed upon protective order. This was called to the attention of the Court in the Defendants motion for leave to file a motion for reconsideration, (ER51) that was predictably refused, (ER48).

However, Goolsby pointed out that the information in their personnel files as it relates to this action, e.g. reprimands, disciplines, etc. makes it clearly relevant and discoverable pursuant to F.R.C.P. 26(b). Here again the Court erred in denying the Plaintiff this discovery to while allowing the Defendants to supplement their summary judgment motions with affidavits, etc. and not allowing the Plaintiff to opportunity to respond thereto.

## 5. THE DISTRICT COURT ERRED IN GRATING SUMMARY JUDGMENT TO THE CITY OF LIVINGSTON

Having been gratuitously invited by the Court to move for Summary Judgment, the City of Livingston did so and not surprisingly, its motion was granted on 3/4/11 (ER4). The reason for this is that the Court had, for all practical purposes, already erroneously determined in its prior order that the City of Livingston's agents acted properly in all respects, which failed to take into account Pete's facts as discussed above.

In other words for the Court to deny the City of Livingston's Summary Judgment motions would essentially mean that the Court would have to reverse itself which of course it wasn't going to do. However, since the Court's earlier decision was in err for the reasons discussed above, the Court's 3/4/11 decision should be reversed as well.

Because of this method of citing itself for authority, the Court not surprisingly found that Summary Judgment was proper on Goolsby's federal claims against Livingston, because the Court had already determined that Goolsby had not shown a violation of constitutional rights, (ER13). The Court also stated that Pete had failed to demonstrate a policy of action or inaction, which fails to take into account the City's total lack of a policy regarding recreation, (ER221) which denied Pete his constitutional right thereto (ER192), *Keenan, supra.*

For all of Pete's state law claims, except negligence, the Court's only principal authority was its earlier opinion, finding Summary Judgment appropriate: false arrest/false imprisonment (ER14-15); malicious prosecution (ER15); emotion distress (ER22-24); assault and battery (ER24); and punitive damages (ER25). Needless to say, because its initial decision was erroneous, the Court's conclusions here fare no better.

A. The Court's Treatment of Pete's Negligence Claims is Disingenuous

Regarding Pete's negligence/gross negligence claims, the Court launched into an extended discussion of the Defendants' failure to produce the exculpatory videos (ER16-22). This could easily be construed as "damage control", after the Court realized it should've granted Pete's Rule 56(f) motion, and now was attempting to justify its erroneous decision.

Specifically, the Court quotes two pages of stipulated facts and then comes to the startling conclusion that, because Pete was going to jail anyway (due to a 2/2/06 petition to revoke that he allegedly pled guilty to), he had no right to exculpatory evidence, (ER18-21). Here again, the Court totally ignored Pete's evidence.

Pete testified at length that the 2/2/06 petition to revoke (filed before the 4/10/06 events at issue here) related to an absconding charge that he

never pled guilty to, (ER180-83). It was the dirty UA (ER180) that was

obtained after his illegal stop, (ER107), that caused him to subsequently pled

guilty to the petition to revoke. He fully intended to go to trial on the

absconding charge and the felony charges issued here, (ER182).

None of these facts are noted by the Court. Moreover, the Court

indicates its misunderstanding thereof, by stating that Pete pled guilty to the

petition to revoke which stemmed "from prior incidents" (ER21), i.e. the

absconding charge which, of course, is totally false.

Also, the Court apparently reasoned that, because the drug charges

here were ultimately dismissed, Pete did not have the right to exculpatory

evidence and thus can prove no damages, (ER21), which is preposterous.

The Court cites no case holding that a Defendants' due process rights to

exculpatory evidence no longer obtain if the charges are ultimately

dismissed. If that were the case, these Defendants who had custody of the

videotapes could simply hold onto them until the case was ultimately

decided, a most prejudicial result.

Pete's evidence showed that he had lost wages as a result of the

Defendants' illegal actions, (ER184-85). Finally, the Court's statement that

there was no evidence showing that the Livingston officers  had control of

the exculpatory evidence (ER21) is contradicted by the Defendants'

depositions, (ER148) which should have been fleshed out even more if Pete's Rule 56(f) motion had been granted.

Thus, Summary Judgment does not lie on the city's negligence claims.

## 6. THE COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE PARK COUNTY DEFENDANTS ON GOOLSBY'S JAIL CONDITION CLAIMS.

The Court erroneously concluded that Summary Judgment was appropriate for the Park County Defendants' on Pete's jail condition claims (ER33). Interestingly, the Court noted that it could rely on the law and argument that the parties set forth in their briefing with respect to Goolsby's claims (ER31). However, the Court totally failed to take into account Goolsby's reply briefs as discussed above, (ER144, 151).

Initially, we note that the Court totally failed to dicuss Pete's deprivation of outdoor exercise, which violated his Eighth Amendment rights, *Keenan, supra.* 83 F.2d at 1089-90.

The Court admitted that adequate lighting is one of the fundamental attributes of adequate shelter, but missed the point of Pete's testimony (ER192) that he could not see daylight from anywhere on his floor (ER35). This was to refute the Defendants' claim that Pete could have exercised in his room. Thus, Summary Judgment does not lie.

Next, the Court noted that *Keenan* guaranteed adequate ventilation and airflow and minimized Pete's testimony that there was no ventilation in his cell ER36-38). However, the Court also failed to note the uncontradicted facts that his bed was located within six feet of the shower head which ran twenty four hours a day (ER192). His cell was constantly permeated with moist air resulting in mold growing on the walls, and water dripping down the inside of them, *id.* Also, the Court totally failed to discuss the 20 year old asbestos hanging from the pipes, *id.* Pete is entitled to every reasonable inference to be drawn from this evidence, *Edgerly, supra.*

Next, the Court inexplicably notes that Goolsby presented no evidence that his moist cell undermined the health of the inmates. However, he stated in uncontradicted fashion that his moist cell contributed to his Sinusitis which he had never suffered from before entering the jail or upon leaving it (ER189-90). These conditions certainly raise issues of fact, mandating a denial of Summary Judgment.

## 7. THE COURT ERRED IN GRANTING PARK COUNTY DEFENDANTS SUMMARY JUDGMENT ON PETE'S STATE LAW JAIL CONDITION CLAIMS.

In granting Summary Judgment, on Pete's state law jail condition claims, the Court admitted that jailers have a duty to keep

prisoners safe and to protect them from unnecessary harm, *Moralli v. Lake County* 839 P.2d 1287, 1290 (Montana 1992). However, then the Court amazingly concluded that Pete would have to present expert testimony on his negligence claims to prove that the jail conditions caused his Sinusitis (ER42-43).

This amounts to an insurmountable obstacle for all inmates, none of whom have the financial means to hire an expert, a fact the Court well knew. This unreachable requirement guarantees Summary Judgment for Park County on this claim.

However, expert testimony is not required when the experience is within the common knowledge of the jury. In any case, Pete's treating doctor implied that his Sinusitis was caused by the cell conditions (ER190). Pete is entitled to every reasonable inference, *Edgerly, supra,* and it is certainly sufficient to withstand the Defendants' Summary Judgment motion.

The Court's conclusion that Summary Judgment was proper on Pete's emotional distress and punitive damages claims (ER43-44) was based on the fallacious assumption that there were no underlying claims. However, as discussed above, that reasoning is flawed.

## 8. CONCLUSION

For the reasons set forth above, this Court should reverse the District Court's rulings. Specifically, if this Court finds that Pete's Rule 56(f) motion should have been granted (to allow him the same opportunity to supplement the record that the Defendants were given), it need go no further but simply reverse the District Court and allow Pete to go forward with discovery, *Doe, supra.* The District Court practically admitted its error in its 3/4/11 opinion but tried to explain it away with a totally incorrect interpretation of the stipulated facts (contrary to Pete's testimony), see part 5A above.

The Court was also in err for granting Summary Judgment to Defendants Raney, Farrell, and Harris by qualified immunity. Genuine issues of fact exist regarding the initial stop (where Pete was profiled) and the subsequent arrest and search of the car (none of the items were his), part 2 above, *Edgerly, supra.* Moreover, genuine issues of fact exist regarding Pete's claims against the Park County Defendants.

As noted in the <u>Statement of Facts,</u> the Livingston jail is an old ship's brig with mold and asbestos. Pete's head was located six feet from the showerhead, which ran twenty four hours a day, and was not ventilated. These conditions caused Pete to have Sinusitis, which he never had before his jail stay or after, see parts 3, 6 above.

Furthermore, the Court erred in granting the City of Livingston's Summary Judgment motion, because it based its decision on its prior erroneous rulings, see part 5 above. Finally, the Court erred in granting the defendants' motion to quash because the parties agreed on the production of the questioned evidence, a fact that was brought to the Court's attention and ignored, see part 4 above.

## STATEMENT OF RELATED CASES

Plaintiff does not believe there are any related cases on appeal to this Court.

Dated this 13th day of September, 2011.

S/ Terry F. Schaplow
Terry F. Schaplow, P.C.
Attorney for Plaintiff Appellant

## CERTIFICATE OF COMPLIANCE

I certify that:

Pursuant to FRAP 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached opening brief is proportionally spaced, has a typeface of 14 point, is printed with Times New Roman text typeface, is double spaced, and contains 10,734 words, according to Microsoft Word Count.

DATED: September 13, 2011.


By: S/Terry  F. Schaplow
Terry F. Schaplow, P.C.
Attorney for Plaintiff-Appellant


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the following by ECF on 9/13/11:

Ninth Circuit Clerk of Court          Mike Lilly
95 Seventh St.                        1 West Main Street
PO Box 193939                         Bozeman, MT 59715
San Francisco, CA 94119-3939

Steve Milch
P.O. Box 2529
Billings, MT 59103-2529

Harlan Krogh
2708 1st Ave. N, Suite 300
Billings, MT 59101

Terry Schaplow

Terry F. Schaplow, P.C.