CASE NO. 11-35285

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PETER LEROY GOOLSBY,

      Plaintiff - Appellant,

v.

DARREN RANEY, individually and as
the Chief of Police and as agent of the City
of Livingston; et al.,

      Defendants - Appellees.

On Appeal from the United States District Court,
for the District of Montana, Billings Division
Cause No.:  CV-08-111-BLG-CSO

**BRIEF OF APPELLEES PARK COUNTY DEFENDANTS**

Steven R. Milch
Crowley Fleck PLLP
P.O. Box 2529
Billings, MT 59103-2529
406-252-3441
Attorneys for Defendants/Appellees
Clark Carpenter, Jay O'Neill, and Park County

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................iii

I.    STATEMENT OF JURISDICTION .......................................... 1

II.   STATEMENT OF THE ISSUES ................................................ 1

III.  STATEMENT OF THE CASE ................................................... 2

IV.  STATEMENT OF THE FACTS ................................................. 4

    A. Provision of Medical Care at PCDC........................................ 4

    B. Conditions of Confinement at PCDC .................................... 7

V.   SUMMARY OF THE ARGUMENT ......................................... 9

VI.  THE PARK COUNTY DEFENDANTS WERE ENTITLED TO
     SUMMARY JUDGMENT ON THE PLAINTIFF'S MEDICAL
     NEEDS CLAIMS .................................................................. 10

    A.   The Plaintiff Failed to Show that the Park County
        Defendants Acted with "Deliberate Indifference" to his
        Alleged Serious Medical Needs ....................................... 10

    B.   Summary Judgment Was Properly Rendered on the
        Plaintiff's Medical Needs Claims Under State Law
        as Well .......................................................................... 15

VII.  THE PARK COUNTY DEFENDANTS WERE ENTITLED TO
      SUMMARY JUDGMENT ON THE PLAINTIFF'S
      UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT
      CLAIMS .............................................................................. 17

    A.   Applicable Constitutional Standards................................ 17

    B.   The Plaintiff Was Not Deprived of the Minimal Civilized
        Measures of Life's Necessities....................................... 20

i

C.   The Plaintiff Failed to Demonstrate that PCDC
     Personnel Acted with Deliberate Indifference ................................. 25

D.   Summary Judgment was Properly Rendered on the
     Plaintiff's Conditions of Confinement Claims Under
     State Law as Well............................................................................. 28

VIII.  CONCLUSION............................................................................................ 31

CERTIFICATE OF SERVICE ............................................................................. 32

CERTIFICATE OF COMPLIANCE.................................................................... 32

STATEMENT OF RELATED CASES ................................................................ 32

## TABLE OF AUTHORITIES

**CASES**                                                                    **Page**

*Allen v. Malone*, 2009 WL 2595615 (E.D.Wis. Aug. 20, 2009) ......................... 24

*Bell v. Wolfish*, 441 U.S. 520 (1979) ..................................................... 17

*Bourrage v. McFarland*, 2001 WL 185034 (5th Cir. 2001) ................................. 23

*Broughton v. Cutter Labs.*, 622 F.2d 458 (9th Cir. 1980) ................................... 11

*Chandler v. Crosby*, 379 F.3d 1278 (11th Cir. 2004) ......................................... 23

*Doty v. County of Lassen*, 37 F.3d 540 (9th Cir. 1994) ....................................... 10

*Estelle v. Gamble*, 429 U.S. 97 (1976) ..................................................... 10, 11, 13

*Farmer v. Brennan*, 511 U.S. 825 (1994) .................................... 11, 18, 19, 25, 26

*Forde v. Fischer*, 2009 WL 5174650 (D.N.J. Dec. 16, 2009) .............................. 24

*Fox v. Fisher*, 2005 WL 1423580 (S.D.N.Y. June 14, 2005),
<u>aff'd</u>, 2007 WL 2089967 (2nd Cir. July 20, 2007) ................................. 14

*Frost v. Agnos*, 152 F.3d 1124 (9th Cir. 1998) ............ 10, 11, 12, 15, 17, 18, 20, 21

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002) ..................... 19, 20, 26

*Gregg v. Georgia*, 428 U.S. 153 (1976) .............................................. 18

*Hagen v. Dow Chemical Co.*, 261 Mont. 487, 863 P.2d 413 (1993) .................... 28

*Hinkle v. Shepherd Sch. Dist. #37*, 2004 MT 175, 322 Mont. 80,
93 P.3d 1239 ........................................................................ 29

*Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982) ...................................... 22, 24, 25

*Hudson v. McMillian*, 503 U.S. 1 (1992) .................................................. 18, 20, 21

*Ingram v. Jewell*, 2004 WL 619428 (6th Cir. 2004)...............................................23

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) ......................................................11

*Johnson v. Lewis*, 217 F.3d 726 (9th Cir. 2000) ....................................................25

*Jordan v. Franks*, 2010 WL 4007641 (S.D. Ga. Aug. 30, 2010) ........................24

*Kafka v. Mont. Dep't of Fish, Wildlife and Parks*, 2008 MT
460, 348 Mont. 80, 201 P.3d 8................................................................................16

*Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) ..........................................22, 23, 24

*Minix v. Canarecci*, 597 F.3d 824 (7th Cir. 2010)................................................20

*Mulkey v. Schweitzer*, 2009 WL 1451694 (D. Mont. May 20, 2009)...................12

*Nickles v. Taylor*, 2010 WL 1949447 (D.N.J. May 14, 2010).............................24

*Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101 (9th Cir. 2003) ...........................10

*Peterson v. Eichhorn*, 2008 MT 250, 344 Mont. 540,
189 P.3d 615 ......................................................................................................28, 29

*Pretty On Top v. City of Hardin*, 182 Mont. 311, 597 P.2d 58 (1979)................28

*Quigg v. Slaughter*, 2007 MT 76, 336 Mont. 474,
154 P.3d 1217 ..........................................................................................................16

*Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991)...................10, 17

*Rhodes v. Chapman*, 452 U.S. 337 (1981)............................................................17

*Sanchez v. Vild*, 891 F.2d 240 (9th Cir. 1989)......................................................12

*Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d
404 (9th Cir. 1985) ................................................................. 12

*Simmons v. Navaho County*, 609 F.3d 1011 (9th Cir. 2010) ................................. 19

*Sommers v. Thurman*, 109 F.3d 614 (9th Cir. 1997) ............................................. 18

*Strung v. Anderson*, 529 P.2d 1380 (Mont. 1975) ................................................. 17

*Sumahit v. Parker*, 2009 WL 2879903 (E.D.Cal. Sept. 3, 2009) ......................... 27

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) ................................................. 19

*Trishan Air, Inc. v. Federal Ins. Co.*, 635 F.3d 422 (9th Cir. 2011) ...................... 21

*Vasquez v. Frank*, 290 Fed. Appx. 927, 2008 WL 3820466
(7th Cir. 2008) ........................................................................ 23

*Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989
(9th Cir. 2006) ........................................................................ 21

*Watkins v. Maryland Div. of Corrections*, 2010 WL 234975
(D. Md. Jan. 15, 2010) ............................................................. 24

*Wilson v. Seiter*, 501 U.S. 294 (1991) ................................................. 12, 18, 20, 25

*Wilson v. State*, 2010 MT 278, 358 Mont. 438,
249 P.3d 28 ............................................................................... 20

*Whitley v. Albers*, 475 U.S. 312 (1986) ................................................................ 12

*Wood v. Housewright*, 900 F. 2d 1332 (9th Cir. 1990) ................................... 11, 15

## STATUTES

42 U.S.C. § 1983 ................................................................................................ 2
28 U.S.C. §§ 1331, 1343 .................................................................................... 2
28 U.S.C. § 1367 ................................................................................................ 2
28 U.S.C. § 1291 ................................................................................................ 2
§ 2-9-305, M.C.A. ............................................................................................. 15

# I.
## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the plaintiff's constitutional claims pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343. The District Court also had supplemental jurisdiction over the plaintiff's state tort claims pursuant to 28 U.S.C. § 1367.

On March 4, 2011, the District Court issued an Order which disposed of all of the plaintiff's remaining claims against all remaining parties, and the District Court accordingly entered a final judgment in the case. **[CR 126]**. On March 31, 2011, the plaintiff filed a notice of appeal. **[CR 127].** This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

# II.
## STATEMENT OF THE ISSUES

1. Whether the District Court erred in granting summary judgment to the Park County Defendants on the plaintiff's medical needs claims.

2. Whether the District Court erred in granting summary judgment to the Park County Defendants on the plaintiff's conditions of confinement claims.

# III.
## STATEMENT OF THE CASE

The plaintiff initiated this action in state court on June 12, 2008, asserting various federal and state law claims against various defendants.  The action stems from the plaintiff's traffic stop, arrest, detention, and prosecution.

The defendants removed the case to federal court.  **[CR 1].**  On July 7, 2009, the plaintiff filed a First Amended Complaint.  **[CR 31].**  The factual allegations directed at the Park County Defendants were limited to the following two paragraphs in the plaintiff's First Amended Complaint:

> 53.      While Pete was being held in the Park County jail, he got an infection in his head.  The cell was moist, dark, with little ventilation and later had black mold cleaned out of it.  He had a CAT scan done which showed dark images.  The jailers failed to give him the proper pain medications and antibiotics and Pete thought he was going to die.

> 54.      Pete has chronic hypertension and high blood pressure, which the Park County jailers were aware, and failed to properly treat.

**First Amended Complaint, ¶¶ 53-54 [SER A; CR 31].**

The Park County Defendants[1] construed the limited allegations against them as being based solely on alleged deprivations of adequate medical care under the Eighth and Fourteenth Amendments while the plaintiff was detained at the Park County Detention Center (PCDC), and moved for summary judgment on the

_____

[1] Sheriff Clark Carpenter, Captain Jay O'Neill, and Park County are referred to collectively as the "Park County Defendants."

plaintiff's federal and state law claims. **[CR 44-45, 46-47].** On March 24, 2010, the District Court issued an Order granting the Park County Defendants' motion for summary judgment as to all federal claims, except as to those that may relate to alleged conditions of confinement, with leave to renew a motion for summary judgment on those remaining federal claims. **Order, March 24, 2010, pp. 43-53, 72 [SER L; CR 89].** In its Order, the District Court also granted the Park County Defendants' motion for summary judgment as to all state law claims, except as to those that may relate to alleged conditions of confinement, with leave to renew a motion for summary judgment on those remaining state law claims. **Id. at pp. 53-65, 72.**

On March 4, 2011, and after renewal of summary judgment motions on the conditions of confinement claims **[CR 109-110, 111-112],** the District Court issued an Order granting Park County Defendants' motion for summary judgment on the remaining federal and state law claims, which related to alleged conditions of confinement. **Order Addressing Summary Judgment Motions, March 4, 2011, pp. 27-36, 36-41 [SER O; CR 125].** The Order disposed of all of the plaintiff's remaining claims against all parties, and the District Court accordingly entered a final judgment in the case. **[CR 126].**

## IV.
## STATEMENT OF THE FACTS

**A.      Provision of Medical Care at PCDC.**

After his arrest by Livingston police officer Joseph Harris, the plaintiff Peter Goolsby was booked into the Park County Detention Center  (PCDC) on April 10, 2006, at 18:49.  **Inmate Activity & Incident Form, April 10, 2006 [SER B; CR 48].**  At 19:31, Probation and Parole Officer Brent Rudolph obtained a UA sample from Goolsby  **Id.**  It tested positive for methamphetamine, and pursuant to § 46-23-1012, Mont. Code Ann., Goolsby was then held at the PCDC without bond.  **Authorization to Pick Up and Hold Probationer, April 10, 2006 [SER C; CR 48].**

As of April 12, 2006, Goolsby was being held at the PCDC on a JP warrant for criminal possession of precursors to dangerous drugs.  **PCDC Booking Sheet, p. 1 [SER D; CR 48].**  As of April 13, 2006, he was additionally being held at the PCDC on a Gallatin County District Court warrant for violating the conditions of his probation.  **Id.**  As of June 27, 2006, he was additionally being held at the PCDC on a Gallatin County District Court warrant for felony assault with a weapon.  **Id.**

On July 20, 2006, Goolsby prepared and submitted a medical request form (Medical Kite) indicating that he had lost a filling in a tooth and was experiencing a "bad ache."  **Medical Kite, July 20, 2006 [SER E; CR 48].**  The form indicates

4

that PCDC personnel arranged for a dental appointment for Goolsby for July 24, 2006. **Id.** On July 24, 2006, Goolsby was transported to a dentist at 0842 and returned to the PCDC at 0925. **Inmate Activity & Incident Form, July 24, 2006 [SER B; CR 48].**

On September 12, 2006, Goolsby prepared and submitted another medical request form indicating that he was experiencing a throbbing ache in his jaw, mouth and ears. **Medical Kite, September 12, 2006 [SER F; CR 48].** Goolsby indicated that it had lasted for two days and that the daily regimen of 2400 mg. of Ibuprofen which the PCDC was providing him did not seem to be helping. **Id.**

Later that afternoon, PCDC personnel transported Goolsby to the ER at Livingston Memorial Hospital. **Inmate Activity & Incident Form, September 12, 2006 [SER B; CR 48].** He was seen and examined at the ER by J. Thomas Rowe, M.D. **Emergency Room Report, September 12, 2006 [SER G; CR 48].** In the "Past Medical History" portion of the ER Report, Dr. Rowe noted that Goolsby had been treated for hypertension for almost 10 years, but had been off all of his medications (Atenolol and Hydrochlorothiazide) for the past year. **Id.** During the physical exam, Dr. Rowe noted that Goolsby was "well-developed and well-nourished and in no acute distress." **Id.** He did, however, note that Goolsby's blood pressure was moderately elevated. **Id.**

Dr. Rowe concluded that Goolsby's facial pain was most likely due to sinusitis. **Id.** He prescribed Augmentin, an antibiotic, to Goolsby, as well as Hydrocodone with APAP as needed for pain. **Id.** Dr. Rowe noted that if the symptoms continued, a CT scan of the head may be necessary. **Id.** Dr. Rowe also placed Goolsby back on Atenolol for his blood pressure. **Id.**

On October 3, 2006, and because his headaches had apparently continued, PCDC personnel returned Goolsby to the Livingston Memorial Hospital for a CT scan of the head and sinuses. **X-Ray Report, October 3, 2006 [SER H; CR 48].** The CT of the head was determined to be normal with no evidence of hemorrhage or mass effect. It was also determined that there was a "minimal mucosal thickening" primarily in the maxillary sinuses on the right. **Id.**

On October 12, 2006, Goolsby was seen in follow-up by Michelle Marti, PA, of Community Health Partners, the contract medical providers for the PCDC. **Progress Notes, October 12, 2006 [SER I; CR 48].** It was determined that Goolsby's hypertension was "under good control." **Id.** As for his sinusitis, Goolsby was to start on a Azithromycin Z-Pak, an antibiotic, and Nasarel nasal spray. He was also given a prescription for Vicodin to be taken as needed for pain. **Id.**

On October 26, 2006, a subsequent follow-up occurred with Michelle Marti, PA. **Progress Notes, October 26, 2006 [SER J; CR 48].** She determined that

Goolsby's hypertension was "not optimally controlled," and increased his Hydrochlorothiazide to 25 mg.  She also concluded that his sinus headaches were "now resolved," and that he was to continue the Nasarel nasal spray for another few weeks and then discontinue.  **Id.**

On November 1, 2006, Goolsby was transferred to the Gallatin County Detention Center (GCDC) in Bozeman on a petition to revoke suspended sentence.  **GCDC Initial Classification, November 1, 2006 [SER K; CR 48].**  The GCDC booking sheet indicated that his physical condition at intake was "good," that he was presently taking Atenolol and Hydrochlorothiazide for hypertension, and that he had no other medical problems.  **Id.**

**B.**     **Conditions of Confinement at PCDC.**

The plaintiff Peter Goolsby has been incarcerated at the PCDC on twenty-two (22) different occasions.  His most recent incarceration at the PCDC occurred from April 10 to November 1, 2006, which incarceration forms the basis for his claims against the Park County Defendants in this action.  **Aff. of Jay O'Neill, ¶ 3 [SER N; CR 113].**

Inmates at the PCDC are permitted to exercise in their cells, as well as in a large enclosed common area outside their individual cells.  In addition, and at all relevant times, the PCDC maintained a Sunroom which provides recreational space and exercise for inmates housed in general population.  The Sunroom measures

approximately 144 square feet in size, and has two doors at one end which open to permit outside air and sunlight into the room. During the period of Goolsby's incarceration in 2006, a Sunroom log indicates that he used the Sunroom on 22 different occasions. **Id. at ¶¶ 4-6.**

During the period of Goolsby's incarceration and presently, each cell at the PCDC has its own lighting. The lights are turned off during lockdown at 11:00 p.m., unless an inmate wants his or her cell light left on until 1:00 a.m. so they can read. **Id. at ¶ 7.**

During the period of Goolsby's incarceration and presently, there is working forced air ventilation throughout the entire jail facility. Photographs depicting the air ducts in the cell area of the facility accurately reflect the working air ventilation conditions as they existed during the period of Goolsby's incarceration in 2006. **Id. at ¶ 8.**

Inmates at the PCDC receive cleaning products and supplies every other day which they can use to do their own cleaning of their cells, as well as the inmate common area. In addition, during the period of Goolsby's incarceration and presently, the County Sanitarian conducts routine inspections of the PCDC to assure compliance with state and local environmental and hygiene standards. **Id. at ¶¶ 9-10.** Shortly after Goolsby's incarceration, arrangements were made for an Industrial Hygienist to conduct mold sampling at the PCDC. The results of the

mold sampling indicated that mold levels were low and within normal ranges. **Id. at ¶ 11.**

During the period of Goolsby's incarceration, inmates at the PCDC were provided written Complaint/Request Forms. Despite submitting more than forty (40) Complaint/Request Forms during his incarceration in 2006, the vast majority of which requested law books, Goolsby never submitted any form complaining of any alleged inhumane conditions of confinement at the PCDC. **Id. at ¶ 12.**

## V.
## SUMMARY OF THE ARGUMENT

The District Court properly granted summary judgment on the plaintiff's medical needs claims because he failed to demonstrate that the Park County Defendants acted with deliberate indifference to his alleged serious medical needs. The District Court also properly granted summary judgment on the plaintiff's unconstitutional conditions of confinement claims. The plaintiff failed to demonstrate that he was deprived of the "minimal civilized measure of life's necessities," or that the Park County Defendants deliberately disregarded an excessive risk to inmate health or safety with respect to the conditions of confinement at the Park County Detention Center. Summary judgment was also properly rendered on the plaintiff's conditions of confinement claims under state law as well.

## VI.
## THE PARK COUNTY DEFENDANTS WERE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S MEDICAL NEEDS CLAIMS

**A.     The Plaintiff Failed to Show that the Park County Defendants Acted with "Deliberate Indifference" to his Alleged Serious Medical Needs.**

The Eighth Amendment protects inmates from cruel and unusual punishment, which includes the denial of medical care.  Estelle v. Gamble, 429 U.S. 97, 102-03 (1976).  By contrast, the right of pretrial detainees, such as the plaintiff, to receive constitutionally adequate medical care is evaluated under the Due Process Clause of the Fourteenth Amendment.  Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003).  As the Due Process Clause imposes the same duty to provide adequate medical care to pretrial detainees as imposed by the Eighth Amendment, the Eighth Amendment standards governing the provision of medical care may be applied.  See Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998)("Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment . . . we apply the same standards")(*citing* Redman v. County of San Diego, 942 F.2d 1435, 1441 (9th Cir. 1991)).

The Eighth and Fourteenth Amendments both guarantee that inmates and detainees receive constitutionally adequate medical care.  Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  An official's deliberate indifference to a

substantial risk of serious harm to a prisoner – including the deprivation of medical care – violates the Eighth Amendment, and *a fortiori*, the Fourteenth Amendment. Farmer v. Brennan, 511 U.S. 825, 828 (1994); Frost, 152 F.3d at 1128.

In order to set forth a federal constitutional claim under 42 U.S.C. § 1983 predicated upon the failure to provide adequate medical care, plaintiffs must satisfy a two-part test:

> First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)(internal citations omitted). The second prong requires both "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. at 1096. Deliberate indifference thus requires both an objective risk of harm and a subjective awareness of that harm. Farmer, 511 U.S. at 837.

A showing of inadvertent or even negligent medical care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost, 152 F.3d at 1130. Claims based upon "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980). Indeed, a showing of "gross negligence" does not support a claim under § 1983. Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

1990)("While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice.").

A difference of opinion between a prisoner – patient and jail medical authorities regarding treatment does not amount to deliberate indifference to a prisoner's serious medical needs.  <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989); <u>Mulkey v. Schweitzer</u>, 2009 WL 1451694, at **1-3 (D. Mont. May 20, 2009).  A mere delay in the provision of medical care, without more, is insufficient to state a claim for deliberate indifference.  <u>Frost</u>, 152 F.3d at 1130 ("[C]laims stemming from alleged delays in administering his pain medication, in treating his broken nose, and in providing [plaintiff] with a replacement crutch" did not amount to deliberate indifference); <u>Sanchez</u>, 891 F.2d at 242; <u>Shapley v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985).

Moreover, the conduct prohibited by the Eighth and Fourteenth Amendments requires that defendants have a "sufficiently culpable state of mind." <u>Wilson v. Seiter</u>, 501 U.S. 294, 296 (1991).  Under Supreme Court jurisprudence, the defendant's actions must have been equivalent to subjective criminal recklessness.  <u>Farmer</u>, 511 U.S. at 836-40; <u>see</u> <u>also</u> <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment], whether

that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock"); Estelle, 429 U.S. at 104 (characterizing deliberate indifference as the "unnecessary and wanton infliction of pain").  Under this subjective recklessness standard, the claimant must show the officials knew of and disregarded a substantial risk of harm to the prisoner's health.  Id.

In this case, the plaintiff failed to demonstrate that Park County Defendants acted with deliberate indifference to his alleged serious medical needs.  During Goolsby's incarceration at the PCDC, the record conclusively demonstrates that jail officials were responsive to his requests for medical assistance.  For instance, when Goolsby submitted a Medical Kite on July 20, 2006, indicating that he had lost a filling in a tooth and was experiencing a "bad ache," PCDC staff arranged for and transported Goolsby to a dentist four days later on July 24, 2006.  **[SER B].**  When Goolsby submitted another Medical Kite on September 12, 2006, indicating that he was experiencing a throbbing ache in the region of his jaw, mouth and ears, PCDC staff arranged for and transported Goolsby to the ER at Livingston Memorial Hospital that very day.  **[SER B].**

When the sinusitis condition which Dr. Rowe tentatively diagnosed at the ER continued, PCDC personnel arranged for and transported Goolsby to the Livingston Memorial Hospital for a CT scan of the head and sinuses.  **[SER H].**

Jail staff continued to administer antibiotics and pain medication which Goolsby had been prescribed for his sinusitis throughout the remainder of his incarceration at PCDC, and until October 26, 2006, when Michelle Marti, PA, determined that the condition had "resolved." **[SER J].** Furthermore, when on September 12, 2006, Dr. Rowe noted that Goolsby's blood pressure was moderately elevated, and he re-prescribed Atenolol, a medication which he had stopped taking a year before, Goolsby was continually monitored for his hypertension and his hypertensive medications were altered as needed. **[SER I and J].**

There is simply nothing in the record to support the plaintiff's claim that his medical needs were ignored. This case is somewhat similar to the situation in Fox v. Fischer, 2005 WL 1423580 (S.D.N.Y. June 14, 2005), aff'd, 2007 WL 2089967 (2d Cir. July 20, 2007), wherein the Court dismissed a § 1983 complaint of a prisoner with chronic sinusitis and other problems because he failed to show he received inadequate medical care, stating as follows:

> Fox has no cognizable Eighth Amendment claim. By Fox's own admission, he received extensive medical treatment for his sinus and ear problems: He saw two E.N.T. specialists; he used the sick call procedure regularly; he was given two courses of antibiotics; a set of x-rays was taken and he received a hearing test; he took three prescription medications; he had his ear drained by an E.N.T.; and he had a drainage tube placed in his ear. Unfortunately, Fox's pain and hearing loss persisted despite this treatment, but such is sometimes the nature of sinus disorders. Defendants were far from deliberately indifferent to Fox's medical needs; arguably, they provided him with more care than the average non-incarcerated individual with sinus problems would receive.

Id. at \*3 (emphasis added).  Such can similarly be said in this case as well.

Even if this Court were to assume that Park County Defendants were somehow negligent with respect to their rendition of medical care to Goolsby, an assumption which finds no support in the record, that assumption would be insufficient to establish deliberate indifference.  Wood, 900 F.2d at 1334 (more than gross negligence is required to state a § 1983 claim); Frost, 152 F.3d at 1130 ("Mere negligence in the provision of medical care . . . does not constitute a constitutional violation").  In sum, and as the District Court properly determined, the record simply does not support a finding that Park County Defendants acted with deliberate indifference to Goolsby's alleged serious medical needs, and summary judgment on his federal medical needs claim was plainly appropriate.

## B.   Summary Judgment Was Properly Rendered on the Plaintiff's Medical Needs Claims Under State Law as Well.

In Count 4 of his First Amended Complaint, the plaintiff asserted a conglomeration of claims against all defendants under the Montana Constitution. Based on the isolated factual allegations directed at the Park County Defendants in ¶¶ 53-54 of the First Amended Complaint, the state constitutional claim against them was necessarily predicated, like the federal civil rights claim, upon the alleged deprivation of adequate medical care while being detained at the PCDC. Similar to their federal counterpart, the state constitutional claim implicated the

cruel and unusual punishment, and due process, provisions of Article II, §§ 17 and 22, of the Montana Constitution.

The Montana Supreme Court has looked to federal constitutional jurisprudence as persuasive authority in developing state law under the Montana Constitution. Where a provision of the Montana Constitution mirrors a provision of the United States Constitution, the Montana Supreme Court looks to the decisional law of the federal courts for guidance on developing the applicable analysis under the similar provision of the Montana Constitution. Quigg v. Slaughter, 2007 MT 76, ¶ 18, 336 Mont. 474, 154 P.3d 1217.

Accordingly, "[i]t is perfectly proper for [the court] to use criteria developed in federal cases" when state law under a provision of the Montana Constitution is silent or lacking. Kafka v. Mont. Dep't of Fish, Wildlife and Parks, 2008 MT 460, ¶ 162, 348 Mont. 80, 201 P.3d 8 (citation omitted). The Montana Supreme Court has thus found it proper "to rely on federal jurisprudence as persuasive authority" for construing a provision of the Montana Constitution which is similar to a provision of the federal constitution. Id. at ¶ 162.

Consequently, in addressing the plaintiff's deprivation of adequate medical care claim under the Montana Constitution, the same "deliberate indifference" standard which applies to his identical federal civil rights claim is applicable. As previously discussed, and as the District Court properly determined, the plaintiff

16

was unable to show that the Park County Defendants acted with "deliberate indifference" to his alleged serious medical needs, and the state constitutional claim was properly dismissed against these defendants.[2]

## VII.
### THE PARK COUNTY DEFENDANTS WERE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT CLAIMS

### A.    Applicable Constitutional Standards.

"[T]he Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Claims brought by pretrial detainees challenging the conditions of their confinement are analyzed under the Fourteenth Amendment Due Process Clause. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979)). "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, [the Ninth Circuit] appl[ies] the same standards." Frost, 152 F.3d at 1128 (citing Redman v. County of San Diego,

---

[2] The District Court also properly determined that the Park County Defendants were entitled to summary judgment on the plaintiff's state law false arrest/ imprisonment claim and assault/battery claim because "Park County was entitled to rely on a facially valid warrant when detaining Goolsby at the PCDC." **Order, March 24, 2010, p. 56 [SER L; CR 89].** Under Montana law, law enforcement officers are not liable for false arrest or imprisonment when they act pursuant to a warrant that is valid on its face. Strung v. Anderson, 529 P.2d 1380, 1381-82 (Mont. 1975); see also 32 Am.Jur.2d False Imprisonment § 36 (2d ed. 2007) ("A peace officer who accepts custody of a person following a citizen's arrest is not required to determine whether the arrest was justified, and may not be held liable if the arrest was improper.").

942 F.2d 1435, 1441 (9th Cir. 1991)).  It is a difficult standard for plaintiffs to

satisfy.  As the Ninth Circuit has explained:

> The Eighth Amendment is not a basis for broad prison reform.  It
> requires neither that prisons be comfortable nor that they provide
> every amenity that one might find desirable.  Rather, the Eighth
> Amendment proscribes the "unnecessary and wanton infliction of
> pain," which includes those sanctions that are "so totally without
> penological justification that it results in the gratuitous infliction
> of suffering."

Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982) (*quoting* Gregg v. Georgia,

428 U.S. 153, 173 (1976)).

   To determine whether the conditions of a pretrial detainee's confinement

constitute cruel and unusual punishment, a court must assess whether the detainee

was deprived of the "minimal civilized measure of life's necessities."  Frost, 152

F.3d at 1128 (*quoting* Wilson v. Seiter, 501 U.S. 294, 304 (1991)).  See also

Sommers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997) ("Because routine

discomfort is part of the penalty that criminal offenders pay for their offenses

against society, only those deprivations denying the minimal civilized measure of

life's necessities are sufficiently grave to form the basis of an Eighth Amendment

violation") (*quoting* Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

   If the detainee was deprived of such necessities, prison officials may be held

liable only if they "acted with 'deliberate indifference' to a substantial risk of

serious harm."  Frost, 152 F.3d at 1128 (*citing* Farmer v. Brennan, 511 U.S. 825,

835 (1994)).  In order to establish "deliberate indifference" for purposes of an unconstitutional conditions of confinement claim, the plaintiff must show that the official was (1) subjectively aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and (2) he must also draw the inference.  Farmer, 511 U.S. at 837.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  Id.  Significantly, "deliberate indifference is a high legal standard."  Simmons v. Navaho County, 609 F.3d 1011, 1019 (9th Cir. 2010) (quoting Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004)).

In Farmer v. Brennan, supra, the Supreme Court instructed that the state of mind of the defendant is to be viewed from a subjective, rather than objective viewpoint.

> [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 838.  As the Ninth Circuit expounded in Gibson v. County of Washoe, 290 F.3d 1175 (9th Cir. 2002):

> Under the Eighth Amendment's standard of deliberate indifference, a person is liable . . . only if the person "knows of and disregards an excessive risk to inmate health and safety."
> …  In order to know of the excessive risk, it is not enough that the person merely "be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, [ ]
he must also draw that inference." . . . <u>If a person should have
been aware of the risk, but was not, then the person has not
violated the Eighth Amendment, no matter how severe the risk</u>.

<u>Gibson</u>, 290 F.3d at 1187-88 (citations omitted) (emphasis added). <u>See</u> <u>also</u> <u>Minix
v. Canarecci</u>, 597 F.3d 824, 831 (7th Cir. 2010) (fact that defendant "*should have
been aware*" of the risk "is not enough to show the required, actual knowledge of
serious harm") (Court's emphasis).

### B.     <u>The Plaintiff Was Not Deprived of the Minimal Civilized Measures of Life's Necessities.</u>

For purposes of his unconstitutional conditions of confinement claims under
the federal and Montana Constitutions,[3] the plaintiff plainly failed to carry his
initial burden of demonstrating that he was deprived of the "minimal civilized
measure of life's necessities." <u>Frost</u>, 152 F.3d at 1128 (*quoting* <u>Wilson</u>, 501 U.S.
at 304). "[E]xtreme deprivations are required to make out a conditions-of-
confinement claim." <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).

---

[3] As the District Court aptly noted, the federal and Montana Constitutions apply
the same standard to unconstitutional conditions of confinement claims. <u>See</u>
Order, March 4, 2011, pp. 28-29. <u>See also</u> <u>Wilson v. State</u>, 2010 MT 278, ¶ 29,
358 Mont. 438, 249 P.3d 28 ("We look to federal law for guidance on the issue of
cruel and unusual punishment.") (citation omitted).

The plaintiff's First Amended Complaint alleged only that his jail cell was "moist, dark, with little ventilation and later had black mold cleaned out of it." [4] As the District Court properly determined, such *alleged* conditions are hardly "extreme," and clearly fail to rise to the level of cruel and unusual punishment for purposes of an Eighth Amendment inhumane-conditions-of-confinement claim. See Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998) (granting summary judgment where plaintiff failed to demonstrate that conditions in his jail cell were sufficiently severe as to "deprive[ ] him of the 'minimal civilized measures of life's necessities'") (*quoting* Hudson, 503 U.S. at 9).

First, the District Court properly determined that the plaintiff failed to show that his "dark" cell was so sufficiently deficient of adequate light to rise to the level of a constitutional violation. **See Order Addressing Summary Judgment**

---

[4] As he did below, the plaintiff asserts that he was deprived of exercise/recreation while incarcerated at the PCDC. As the District Court properly noted, however, neither the Complaint nor the First Amended Complaint make any reference whatsoever to Goolsby being allegedly denied exercise/recreation. **Order, March 24, 2010, p. 51 n. 9 [SER L; CR 89].** The first mention of such conditions of confinement allegations was in response to the Park County Defendants' Motion for Summary Judgment on Federal Claims. **Id.** It is well settled that a plaintiff cannot raise a claim for the first time in its opposition to summary judgment. See Trishan Air, Inc. v. Federal Ins. Co. 635 F.3d 422, 435 (9th Cir. 2011); see also Wasco Prods. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.") Furthermore, the District Court alternatively found that the Park County Defendants established that Goolsby was provided opportunities for exercise/recreation, and that he failed to present substantial evidence challenging these facts. **Id. at p. 51 n.9; see also Order Addressing Summary Judgment Motions, March 4, 2011, p. 24 [SER O; CR 125].**

**Motions, March 4, 2011, pp. 31-32 [SER O; CR 125]**. In <u>Hoptowit v. Spellman</u>, 753 F.2d 779 (9th Cir. 1985), the Ninth Circuit upheld the district court's finding of unconstitutional lighting conditions based upon evidence that "the lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue and hindered attempts to insure that basic sanitation was maintained." <u>Id.</u> at 783. Here, the plaintiff neither alleged nor demonstrated that the lighting at the PCDC was so inadequate that he suffered eyestrain or fatigue, or that it prevented him from reading or performing basic sanitation of his cell.

Second, the District Court properly determined that the plaintiff failed to show that ventilation in his cell was so sufficiently deficient to rise to the level of a constitutional violation. **<u>See</u> Order Addressing Summary Judgment Motions, March 4, 2011, pp. 32-33 [SER O; CR 125]**. In <u>Keenan v. Hall</u>, 83 F.3d 1083 (9th Cir. 1996), the Court held that a prisoner's claim for unconstitutionally inadequate ventilation could proceed where he "produced sufficient evidence" that his cell was "permeated with stale air that is saturated with the fumes of feces (thrown by some inmates), the smell of urine and vomit as well as other stale bodily odors." <u>Id.</u> at 1090. The Court concluded that "[i]f the air was in fact saturated with the fumes of feces, urine, and vomit, it could undermine health and sanitation." <u>Id.</u>

However, absent such extreme conditions raising serious and obvious risks to prisoner health, the courts have routinely determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim. See, e.g., Vasquez v. Frank, 290 Fed. Appx. 927, 2008 WL 3820466 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004) (holding that ventilation system that allowed cells to sometimes exceed 95 degrees was not sufficiently extreme to violate the Eighth Amendment); Ingram v. Jewell, 2004 WL 619428 (6th Cir. 2004) (upholding dismissal of prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation); Bourrage v. McFarland, 2001 WL 185034 (5th Cir. 2001) (upholding dismissal of prisoner's claim that inadequate ventilation had led to his prescription for an Albuterol inhaler).

Here, the plaintiff merely alleged that his cell had "little ventilation." He has neither alleged nor shown that the alleged "little ventilation" undermined the health of the inmates or the sanitation of the detention facility. Unlike the conditions described in Keenan, the plaintiff presented no evidence here that fumes or offensive, unhealthy, or unsanitary odors "saturated," permeated, or even existed at the PCDC.

Finally, the District Court properly determined that the plaintiff's allegations that his cell was "moist" and later had black mold cleaned out of it failed to amount to an "extreme" condition that "undermine[d] the health of inmates and the sanitation of the [jail]" for purposes of an Eighth Amendment claim. <u>Keenan</u>, 83 F.3d at 1090 (<i>quoting</i> <u>Hoptowit</u>, 753 F.2d at 784). Other courts have similarly determined that such alleged conditions do not give rise to constitutional violations. <u>See</u>, <u>e.g.</u>, <u>Watkins v. Maryland Div. of Corrections</u>, 2010 WL 234975, at *6 (D. Md. Jan. 15, 2010) ("The medical records do not demonstrate that Plaintiff suffered any injury as a result of mold or fungus in his cell."); <u>Jordan v. Franks</u>, 2010 WL 4007641, at *2 (S.D. Ga. Aug. 30, 2010) ("It is well established that the mere exposure to mold, mildew, and odors does not amount to 'an excessive risk to inmate health or safety' under the Eighth Amendment . . . ."); <u>Nickles v. Taylor</u>, 2010 WL 1949447, at *5 (D.N.J. May 14, 2010) (assertions of "black mold in the shower" and other alleged jail conditions "do not show, alone or in combination, that Plaintiff was deprived of 'the minimal civilized measure of life's necessities'"); <u>Forde v. Fischer</u>, 2009 WL 5174650, at *5 (D.N.J. Dec. 16, 2009) ("[T]he conditions alleged, rainwater flooding and mold, alone or in combination, do not state a claim for cruel and unusual punishment under the Eighth Amendment."); <u>Allen v. Malone</u>, 2009 WL 2595615, at *4 (E.D.Wis. Aug.

20, 2009) (finding existence of mold, poor ventilation, and small bugs did not

establish an "objectively serious" deprivation).

### C. The Plaintiff Failed to Demonstrate that PCDC Personnel Acted with Deliberate Indifference.

Aside from failing to objectively demonstrate a "sufficiently serious"

condition of confinement amounting to the denial of "the minimal civilized

measure of life's necessities," Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)

(*quoting* Wilson, 501 U.S. at 298), the plaintiff also failed to subjectively

demonstrate that PCDC personnel acted "with a sufficiently culpable state of

mind," id. at 731 (*quoting* Wilson, 501 U.S. at 298), or that they "kn[ew] of and

disregard[ed] an excessive risk to inmate health or safety." Id. at 733 (*quoting*

Farmer, 511 U.S. at 837).

As was previously discussed herein, the deliberate indifference standard

imposes an extremely high burden for a plaintiff to meet. The Supreme Court has

justified this high standard by explaining that:

> An act or omission unaccompanied by knowledge of a
> significant risk of harm might well be something society
> wishes to discourage, and if harm does result society might
> well wish to assure compensation. The common law reflects
> such concerns when it imposes tort liability on a purely
> objective basis…. But an official's failure to alleviate a
> significant risk that he should have perceived but did not,
> while no cause for commendation, cannot under our cases be
> condemned as the infliction of punishment.

<u>Farmer</u>, 511 U.S. at 837-38 (emphasis added). Therefore, the Supreme Court has cautioned that "courts should be careful to ensure that the requirement of subjective culpability is not lost. <u>It is not enough merely to find that a reasonable person would have known, or that the defendant should have known</u> …." <u>Id.</u> at 843 n. 8 (emphasis added).

It is thus clear that a plaintiff must show <u>actual knowledge</u> on the part of jail officials that a particular inhumane jail condition exists, that the condition presents "an excessive risk to inmate health or safety," and that the officials nevertheless deliberately disregarded the risk. <u>See</u> <u>Farmer</u>, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); <u>Gibson</u>, 290 F.3d at 1187 (the "deliberate indifference" standard does not impose liability unless a person "<u>knows of and disregards an excessive risk to inmate health and safety</u>") (<i>quoting</i> <u>Farmer</u>, 511 U.S. at 837).

Here, the plaintiff failed to demonstrate that PCDC personnel had <u>actual knowledge</u> that an inhumane jail condition existed or that such condition presented an excessive risk to inmate health or safety. Indeed, the Park County Defendants denied that any such conditions even existed.

Moreover, and notwithstanding lack of knowledge or evidence demonstrating the existence of an inhumane confinement condition, there is

absolutely no evidence that the Park County Defendants deliberately disregarded any excessive risk to inmate health or safety with respect to the conditions of confinement at the PCDC. Quite the contrary. During the period of Goolsby's incarceration in 2006 and presently, inmates at the PCDC are provided with cleaning products and supplies every other day which they can use to do their own cleaning of their cells. [**SER N**]. See, e.g., Sumahit v. Parker, 2009 WL 2879903, at *18 (E.D.Cal. Sept. 3, 2009) (summary judgment on conditions-of-confinement claim – mold, mildew – where inmates at county jail were provided cleaning supplies by which to clean their cells).

Furthermore, during the period of Goolsby's incarceration in 2006 and presently, the PCDC arranged for a licensed County Sanitarian to conduct routine inspections to assure compliance with state and local environmental and hygiene standards. [**SER N**]. In addition, the PCDC made arrangements in September 2007 for an Industrial Hygienist to conduct mold sampling at the jail, including its showering area. **Id.** The results of the mold sampling indicated that mold levels were low and within normal ranges. **Id.** Accordingly, and as the District Court properly determined, the plaintiff failed to demonstrate that the Park County Defendants deliberately disregarded any excessive risk to inmate health or safety with respect to the conditions of confinement at the PCDC.

**D.** **Summary Judgment was Properly Rendered on the Plaintiff's Conditions of Confinement Claims Under State Law as Well.**

In addition to his federal claim, and with respect to the conditions of his confinement at the PCDC, the plaintiff also asserted state law claims against Park County sounding in negligence, gross negligence, and emotional distress. In its Order dated March 4, 2011, the District Court properly determined that Park County was entitled to summary judgment on those claims. **See Order Addressing Summary Judgment Motions, March 4, 2011, pp. 36-41 [SER O; CR 125].**

A cause of action for negligence (or gross negligence) requires a plaintiff to prove the following four essential elements:

> (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted.

Peterson v. Eichhorn, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615. Summary judgment dismissing a claim for negligence is appropriate if the party advancing the claim fails to establish any one of the four elements. Hagen v. Dow Chemical Co., 261 Mont. 487, 492, 863 P.2d 413, 416 (1993).

There is no dispute that a legal duty existed. "A jailer owes a duty to the prisoner to keep him safe and to protect him from unnecessary harm." Pretty On Top v. City of Hardin, 182 Mont. 311, 315, 597 P.2d 58, 60 (1979).

However, and as the District Court properly concluded, the plaintiff failed to present admissible evidence that Park County's alleged breach of the foregoing duty "was the actual and proximate cause of an injury to the plaintiff." Peterson, ¶ 23. In support of his claim, the plaintiff testified during his deposition that he believes that his diagnosed sinusitis condition was caused by the conditions in his cell. When inquiry was made whether he had a medical doctor who would confirm his causation "beliefs," the following colloquy occurred:

> Q.    Do you have a doctor that is going to testify at the trial of this case that you got sinusitis because of the environment at the Park County jail?
>
> A.    I don't know how to answer that right now. I don't know. All I know is the only answer that I can give you is I did not have sinusitis before I landed in the jail. After being in the jail for those period of months, I came down with sinusitis. I was treated for sinusitis. After being put into a more hospitable environment, I no longer have sinusitis. That's all I can say.

Goolsby Depo., November 18, 2009, pp. 113-114 **[SER M; CR 110].**

Montana law requires expert testimony "when the issue presented is sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." Hinkle v. Shepherd Sch. Dist. #37, 2004 MT 175, ¶ 35, 322 Mont. 80, 93 P.3d 1239 (affirming summary judgment where plaintiff failed to introduce expert testimony establishing causal connection between defendants' actions and plaintiff's ketoacidosis, Type I diabetes, and post-traumatic stress disorder). Here,

the medical cause of the plaintiff's sinusitis was sufficiently beyond the common experience of the trier of fact. Absent expert testimony on the issue of causation, the District Court properly determined that summary judgment was appropriate on the plaintiff's negligence and gross negligence claims. Contrary to the plaintiff's argument in his opening brief at p. 50, the necessity of expert medical testimony is not excused because he allegedly lacks the financial means to hire a medical expert.

During his deposition, the plaintiff elucidated on his emotional distress claim. The emotional distress which the plaintiff described was related <u>solely</u> to his alleged wrongful arrest by the defendant City of Livingston police officers, and his resulting prison sentence for violating the conditions of his probation. The plaintiff attributed <u>none</u> of his alleged emotional distress to the alleged conditions of confinement at the PCDC. He testified as follows:

> Q. You've alleged that you've suffered emotional distress damages as a result of the event described in your complaint. Tell me about that. What emotional distress have you suffered?

> A. I guess what I could say is being locked up for the last, again, another four years of my life on something that I feel was completely unjust. You know, I have a son that I had a relationship with that I've destroyed the relationship with him. I was actually pretty productive when I was out there. I had a really good job. I made decent money. I don't know how else to describe what an emotional toll sitting in a jail cell for four or five years does to you. That's the emotional answer right there.

Goolsby Depo., p. 80 **[SER M; CR 110].**

Consequently, as none of his alleged emotional distress related to the alleged conditions of confinement at the PCDC, summary judgment was appropriate on that claim. In addition, and as the District Court properly found, because there was no negligent or intentional acts or omissions on the part of the Park County Defendants from which his emotional distress claims could flow, summary judgment was appropriate on that ground as well. **See Order Addressing Summary Judgment Motions, March 4, 2011, pp. 40-41 [SER O; CR 125].**

## VIII.
## CONCLUSION

For the foregoing reasons, and based upon undisputed facts and established law, it is respectfully requested that the Ninth Circuit Court of Appeals affirm the District Court's award of summary judgment to the Park County Defendants.

DATED this 12th day of October, 2011.

/s/ Steven R. Milch
STEVEN R. MILCH
Crowley Fleck PLLP
PO Box 2529
Billings, MT  59103-2529
Attorneys for Defendants/Appellees
Clark Carpenter, Jay O'Neill and
Park County

## CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Steven R. Milch
STEVEN R. MILCH

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C), F.R.A.P., I certify that this brief in support contains 6951 words (as counted by Microsoft Word 2007), excluding caption, certificate of service and compliance, is double spaced and printed in at least 14 point font.

/s/ Steven R. Milch
STEVEN R. MILCH

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Appellees state that there are no other related cases pending appeal in this Court.

/s/ Steven R. Milch
STEVEN R. MILCH