No. 11-35285

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER LEROY GOOLSBY, | ) |
| | ) |
| Plaintiff/Appellant, | ) |
| | ) |
| DARREN RANEY, individually and as | ) |
| the Chief of Police and as agent of the | ) |
| City of Livingston, CAPTAIN GLENN | ) |
| FARRELL, individually and as agent of | ) |
| the City of Livingston, OFFICER | ) |
| JOSEPH HARRIS, individually and as | ) |
| agent of the City of Livingston, | ) |
| CAPTAIN JAY O'NEILL, individually and | ) |
| as agent of Park County, CLARK | ) |
| CARPENTER, individually and as agent | ) |
| and Sheriff of Park County, THE CITY | ) |
| OF LIVINGSTON, a political   subdivision | ) |
| of the State of Montana, PARK COUNTY | ) |
| a political subdivision of the State of | ) |
| Montana, and JOHN DOES I-X, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

On appeal from the U.S. District Court for the
District of Montana, Billings Division

**BRIEF OF APPELLEES DARREN RANEY AND
CITY OF LIVINGSTON**

Michael J. Lilly
Berg, Lilly & Tollefsen, P.C.
1 West Main Street
Bozeman, MT 59715
406-587-3181
Attorneys for Defendants/Appellees Darren Raney and City of Livingston

Michael J. Lilly
Berg, Lilly & Tollefsen, P.C.
1 West Main Street
Bozeman, MT 59715
406-587-3181
Attorneys for Defendants/Appellees Darren
Raney and City of Livingston

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| PETER LEROY GOOLSBY, | ) | No. 11-35285 |
| | ) | |
| Plaintiff/Appellant, | ) | D.C. No. CV-08-111-BLG-CSO |
| | ) | |
| DARREN RANEY, individually and as | ) | |
| the Chief of Police and as agent of the | ) | |
| City of Livingston, CAPTAIN GLENN | ) | |
| FARRELL, individually and as agent of | ) | **BRIEF OF APPELLEES** |
| the City of Livingston, OFFICER | ) | **DARREN RANEY AND** |
| JOSEPH HARRIS, individually and as | ) | **CITY OF LIVINGSTON** |
| agent of the City of Livingston, | ) | |
| CAPTAIN JAY O'NEILL, individually and | ) | |
| as agent of Park County, CLARK | ) | |
| CARPENTER, individually and as agent | ) | |
| and Sheriff of Park County, THE CITY | ) | |
| OF LIVINGSTON, a political   subdivision | ) | |
| of the State of Montana, PARK COUNTY | ) | |
| a political subdivision of the State of | ) | |
| Montana, and JOHN DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CORPORATE DISCLOSURE STATEMENT

Appellees Darren Raney, Chief of Police, ("Chief Raney") and the City of Livingston ("Livingston") represent that they are not parties required to make a disclosure by Rule 26.1 of the Federal Rules of Appellate Procedure ("FRAP").

# **TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT                                          1

ISSUES PRESENTED FOR REVIEW                                      2

STATEMENT OF CASE                                                3

STATEMENT OF FACTS                                               6

SUMMARY OF ARGUMENT                                             10

ARGUMENT                                                        13

    I.  The District Court Did Not Err in Denying Mr. Goolsby's
    Motion to Continue His Response to Defendants' Summary
    Judgment Motions.                                        13

        A.  Mr. Goolsby's Contention                       13
        B.  Standard of Review                              13
        C.  Discussion                                      14

    II.  The District Court Did Not Err in Granting Summary
    Judgment to Chief Raney on the Issue of Liability.       18

        A.  Mr. Goolsby's Contention                       18
        B.  Standard of Review                              18
        C.  Discussion                                      19
            1.  Initial Stop                                22
            2.  Arrest                                      25
            3.  Searches                                    26

    III.  The District Court Did Not Err in Granting Summary
    Judgment to Livingston on the Issue of Liability.        32

        A.  Mr. Goolsby's Contention                       32
        B.  Standard of Review                              32
        C.  Discussion                                      33
            1.  Federal Claims                              33
            2.  State Law Claims                            34
            2(a)  False Arrest/Imprisonment               35
            2(b)  Malicious Prosecution                   36
            2(c)  Negligence Claims                       38

CONCLUSION                                                      42

STATEMENT OF RELATED CASES                                      42

CERTIFICATE OF COMPLIANCE                                       43

# TABLE OF AUTHORITIES

## Cases Cited:

Alabama v. White
    496 US 325, 328-331, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990)          24

Anderson v. Warner
    451 F.3d 1063, 1067 (9th Cir. 2006)                                    18, 21

Atwater v. City of Lago Vista
    532 US 318, 321, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001)               25

Cal. on behalf of Cal. Dep't of Toxic Substance Control v. Campbell
    138 F.3d 772, 779 (9th Cir. 1998)                                     13, 15

Crowe v. County of San Diego
    608 F.3d 406, 434-435 (9th Cir. 2010)                              28, 29, 32

Deist v. Thornton
    2009 MT 21, ¶ 9, 349 Mont. 94, 201 P.3d 800                               37

Edgerly v. City and County of San Francisco
    599 F.3d 946, 960 (9th Cir. 2010)                             18, 19, 20, 32

Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.
    525 F.3d 822, 827 (9th Cir. 2008)                                         14

Harrer v. Montgomery Ward & Co.
    124 Mont. 295, 221 P.2d 428, 433 (1950)                                  35

Hughes v. Pullman
    2001 MT 216, ¶ 21, 306 Mont. 420, 36 P.3d 339                            36

Lolli v. County of Orange
    351 F.3d 410, 416 (9th Cir. 2003)                                        19

Morris v. State,
    2001 MT 13, 304 Mont. 114, 18 P.3d 1003                               22, 23

Pearson v. Callahan
        555 US 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)                    21

Peschel v. City of Missoula
        664 F. Supp. 2d 1137, 1143                                              38

Peterson v. Eichhorn
        2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615                          40

Saucier v. Katz
        533 U.S. 194, 121 S. Ct. 2151                                      21, 22

State v. Flynn
        2011 MT 48, 359 Mont. 376, 251 P.3d 143                            23, 24

State v. Kriesel,
        2000 MT 144, ¶ 14, 300 Mont. 44, 2 P.3d 831                            30

State v. Lafferty
        1998 MT 247, 291 Mont. 157, 967 P.2d 363                          22, 23

State v. Swanson
        222 Mont. 357-362, 722 P.2d 1155 (1986)                                38

Terry v. Ohio
        392 US 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)        24, 25

US v. Cortez
        449 US 411, 412, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)               25

Volk v. D. A. Davidson & Co.
        816 F.2d 1406, 1416-17 (9th Cir. 1987)                               13

Waggy v. Spokane County, Washington
        594 F.3d 707, 713 (9th Cir. 2010)                                    33

**<u>Other Authorities</u>:**

<u>Federal Rules of Civil Procedure</u>
     Rule 56(f)                                 14, 15


<u>Montana Code Annotated</u>
     Section 46-15-32                         17
     Section 46-15-322(1) and (4)         41


28 USC § 1291                                1
28 USC § 1331                                1
28 USC § 1441(b)                         1
42 USC § 1983                  1, 21, 33, 35

## JURISDICTIONAL STATEMENT

The Complaint filed by Plaintiff Peter Leroy Goolsby ("Mr. Goolsby") in State Court set forth a claim alleging a violation of 42 USC § 1983. The case was removed to U.S. District Court pursuant to 28 USC § 1441(b).

The District Court's subject matter jurisdiction is based upon 28 USC § 1331. This Court's jurisdiction is based upon 28 USC § 1291.

Final judgment was entered in favor of all Defendants and against Mr. Goolsby on the 24th day of March, 2011. (Doc. 126) Mr. Goolsby's Notice of Appeal was filed on the 31st day of March, 2011. (Doc. 127) As a result, it was filed within the requisite thirty days. FRAP 4.

<u>ISSUES PRESENTED FOR REVIEW</u>

Chief Raney and Livingston restate the issues raised by Mr. Goolsby that apply to them as follows:

1. Did the District Court err in denying Mr. Goolsby's Motion to Continue his Response to Defendants' Pending Motions for Summary Judgment?

2. Did the District Court err in granting summary judgment in favor of Chief Raney on the issue of liability?

3. Did the District Court err in granting summary judgment in favor of Livingston on the issue of liability?

## STATEMENT OF CASE

Mr. Goolsby filed his Complaint in the Montana Sixth Judicial District Court, Park County, on the 12th day of June, 2008. Defendants filed a Notice of Removal on the 22nd day of October, 2008. (Doc. 1) This case was assigned, with the consent of the parties, to United States Magistrate Caroline S. Ostby on the 6th day of February, 2009. (Doc. 19)

Mr. Goolsby filed his First Amended Complaint on the 7th day of July, 2009. (Doc. 31) Thereafter, Park County filed its Answer to the First Amended Complaint on the 7th day of July, 2009. (Doc. 32) Chief Raney and Livingston filed their Answer to the First Amended Complaint on the 14th day of July, 2009. (Doc. 33) Livingston Police Officers Harris and Farrell filed their Answer to the First Amended Complaint on the 14th day of July, 2009. (Doc. 34)

Chief Raney filed his Motion for Summary Judgment on the 15th day of December, 2009. (Doc. 51) It was supported by a Brief (Doc. 52) and a Statement of Uncontroverted Facts (Doc. 53). Officers Farrell and Harris filed a Motion for Summary Judgment on the 15th day of December, 2010. (Doc. 54) It was supported by a Brief (Doc. 55) and a Statement of Undisputed Facts (Doc. 56).

Mr. Goolsby filed one Response Brief opposing both Chief Raney's Motion for Summary Judgment and Officer Farrell and Officer Harris's Motion for

Summary Judgment on the 29th day of January, 2010. (Doc. 66) It was accompanied by a Statement of Genuine Issues (Doc. 67). Chief Raney filed his Reply Brief in Support of Motion for Summary Judgment on the 11th day of February, 2010. (Doc. 68) Officers Farrell and Harris filed their Reply Brief on the 12th day of February, 2010. (Doc. 75)

Chief Raney filed a Motion for Leave to File Supplemental Statement of Uncontroverted Facts on the 11th day of February, 2010. (Doc. 69) It was supported by a Brief. (Doc. 70) Officers Farrell and Harris also filed a Motion for Leave to File Supplemental Statement of Undisputed Facts on the 11th day of February, 2010. (Doc. 71) A proposed Statement of Undisputed Facts was also filed with the Court by Officers Farrell and Harris. (Doc. 71-2)

Mr. Goolsby filed a Motion to Continue His Response to Defendants' Summary Judgment Motions to Obtain Discovery ("Motion to Continue Response") on the 24th day of February, 2010. (Doc. 76) That Motion was supported by a Brief (Doc. 77) and a Declaration of Mr. Goolsby's counsel. (Doc. 78) Chief Raney filed a Brief in Opposition to Mr. Goolsby's Motion to Continue Response on the 4th day of March, 2010. (Doc. 84) Officers Farrell and Harris filed a Brief in Opposition to Mr. Goolsby's Motion to Continue Response on the

4th day of March, 2010.  (Doc. 85)  Mr. Goolsby filed a Reply Brief in support of his Motion on the 19th day of March, 2010.  (Doc. 88)

The District Court entered an Order on the 24th day of March, 2010. (Doc. 89)  By that Order, the District Court denied Mr. Goolsby's Motion to Continue Response.  (Doc. 89, pp. 65-69)  The District Court also granted the Motions to Supplement filed by Chief Raney and Officers Harris and Farrell. (Doc. 89, p. 65)  By that same Order, the District Court granted Chief Raney's, Officer Harris's, and Officer Farrell's Motions for Summary Judgment.  (Doc. 89, pp. 27-43)

Livingston filed a Motion for Summary Judgment on the 13th day of December, 2010.  (Doc. 106)  It filed a Brief in support of that Motion (Doc. 107) and a Statement of Undisputed Facts (Doc. 108).  Mr. Goolsby filed a Brief in opposition to Livingston's Motion for Summary Judgment on the 28th day of January, 2011.  (Doc. 118)  It was supported by a Statement of Genuine Issues. (Doc. 119).  Livingston filed a Reply Brief in support of its Motion for Summary Judgment on the 9th day of February, 2011.  (Doc. 124)

The District Court entered its Order granting Livingston's Motion for Summary Judgment on the 4th day of March, 2011.  (Doc. 125)  It also entered final judgment in favor of all Defendants on the issue of liability on that same date.

(Doc. 126)  Mr. Goolsby filed his Notice of Appeal on the 31st day of March, 2011. (Doc. 127)

STATEMENT OF FACTS

Pharmacist Carla Fenton called the Livingston Police Department on the 10th day of April, 2006.  She reported that Mr. Goolsby and a woman had been in her pharmacy attempting to purchase large amounts of Sudafed.  Sudafed is a known component of methamphetamine.  Pharmacist Fenton also reported that she had spoken with two other Livingston pharmacies that day and learned that Mr. Goolsby and the woman had purchased Sudafed from them.  (Doc. 56, ¶¶ 19-21; ER p. 5)

Pharmacist Fenton described Mr. Goolsby, the woman with him, and the car in which they were traveling.  The Livingston Police Department relayed this information to its officers in the field.  Officer Harris saw the car described by Pharmacist Fenton.  He began to follow it.  As he followed it, he saw it swerve several times crossing both the fog line and the center line.  (Doc. 56, ¶¶ 22-25; ER p. 5-6)

While following the car, Officer Harris learned that Mr. Goolsby's driver's license was suspended.   Officer Harris stopped the car.  Mr. Goolsby was the driver.  Officer Harris asked Mr. Goolsby to produce his driver's license.  Mr.

Goolsby produced three temporary licenses, but no permanent license. Officer
Harris also asked for Mr. Goolsby to produce proof of insurance. He was unable to
do so. (Doc. 56, ¶¶ 29-33; ER p. 6-7)

Officer Harris placed Mr. Goolsby under arrest for driving with a suspended
license, careless driving, driving without proof of insurance, and driving with a
broken windshield. He took Mr. Goolsby into custody and transported him to the
Park County Jail. (Doc. 56, ¶¶ 35-36, and 46; ER p. 7-8)

Officer Farrell contacted Mr. Goolsby's probation officer. He advised him
that Mr. Goolsby had been arrested and had been transported to the Park County
Jail. Once at the Park County Jail, Mr. Goolsby was subjected to a urinalysis. It
was conducted by Probation and Parole Officer Brent Rudolph. Mr. Goolsby
tested positive for methamphetamine. Mr. Goolsby later admitted under oath that
he had ingested methamphetamine and alcohol on the day of his arrest. (Doc. 56,
¶¶ 38-41; ER p. 7-8)

Mr. Goolsby's probationary status was created by the Sentence and
Judgment issued the case of State v. Goolsby, designated Cause Nos. DC-00-178,
and DC-01-10, filed in the Montana Eighteenth Judicial District Court, Gallatin
County. That sentence and judgment included the following provision:

3. Ten (10) years of the sentence is suspended upon the following
conditions:

. . .

(j) The Defendant is subject to warrantless searches of his person vehicle, or residence.

(Doc. 56, ¶¶ 7-10; ER p. 3) This Sentence and Judgment was issued based upon a charge of Criminal Possession of Dangerous Drugs, a felony. Id.

On the 10th day of April, 2006, Officer Farrell filed an application for search warrant. (Doc. 56, ¶ 48, ER p. 9) Livingston City Judge Lord issued a search warrant in response to that application. (Doc. 56, ¶ 49, ER p. 9) Officer Farrell, Detective Steve Voss of the Missouri River Drug Task Force, and Probation and Parole Officer Brent Rudolph conducted a search of the vehicle. They discovered a number of items used in the manufacture of methamphetamine. (Doc. 56, ¶¶ 50-51; ER pp. 9-10) Defective Voss and Probation Officer Rudolph also conducted a search of Mr. Goolsby's motel room. (Doc. 56-1; Depo. Exh. 12)

On the 12th day of April, 2006, the Park County Attorney filed a Complaint in Park County Justice Court charging Mr. Goolsby with one count of Criminal Possession of Precursors to Dangerous Drugs, one count of Attempted Criminal Production or Manufacture of Dangerous Drugs, and one count of Criminal Possession of Dangerous Drugs. (Doc. 56, ¶ 52; ER p. 11) A warrant of arrest was

issued for Mr. Goolsby on the 12th day of April, 2006, based upon this Complaint. (Doc. 56, ¶ 53; ER p. 11)

On the 12th day of April, 2006, Mr. Goolsby was scheduled to make an initial appearance in the Montana Eighteenth Judicial District Court, Gallatin County, on a Petition to Revoke the suspended sentence identified in the above-referenced Sentence and Judgment. He did not appear on that date because of his incarceration in the Park County Jail. (Doc. 56, ¶ 54; ER p. 11) On that same day, the Gallatin County Attorney's office filed a Verified Petition and Application to Revoke Bond, Issue Warrant, and Forfeit Bail. (Doc. 56, ¶ 55; ER p. 11-12) The Montana Eighteenth Judicial District Court, Gallatin County, issued an order revoking Mr. Goolsby's appearance bond on that date. (Doc. 56, ¶ 56; ER p. 12)

On the 19th day of April, 2006, a Criminal Information was filed against Mr. Goolsby by the Park County Attorney in the Montana Sixth Judicial District Court, Park County. The Criminal Information charged Mr. Goolsby with Criminal Possession of Precursors to Dangerous Drugs, a felony, Attempted Criminal Production or Manufacture of Dangerous Drugs, a felony, and Criminal Possession of Dangerous Drugs, methamphetamine, a felony. (Doc. 56, ¶ 58; ER p. 12) This Criminal Information replaced the complaint filed against Mr. Goolsby in Justice Court for the same charges.

Then, on the 22nd day of June, 2006, a Criminal Information was filed by the Gallatin County Attorney against Mr. Goolsby in the Montana Eighteenth Judicial District Court, Gallatin County, for Assault With a Weapon, a felony. On that same date, a bench warrant was issued for Mr. Goolsby by the Montana Eighteenth Judicial District Court. (Doc. 56, ¶¶ 59-62; ER p. 12-13)

Mr. Goolsby ultimately entered into a plea agreement with the Gallatin County Attorney's office and the Park County Attorney's office in connection with the various pending felony charges. As part of that plea agreement, the charges against Mr. Goolsby filed in Park County were dismissed with prejudice. (Doc. 56, ¶¶ 66-68; ER p. 14) As part of that plea agreement, Mr. Goolsby was sentenced to a term of ten years. (Doc. 56, ¶ 67; ER p. 14) As part of the plea agreement, he received credit for all of those days he served in the Park County Jail. (Doc. 56, ¶¶ 63-68; ER p. 14)

## SUMMARY OF ARGUMENT

The District Court did not err in denying Mr. Goolsby's Motion to Continue Response. Mr. Goolsby did not demonstrate that the facts he sought to discover even existed. In addition, he did not establish that the facts he sought were essential to oppose the pending Motions for Summary Judgment. As a result, the District Court did not abuse its discretion in denying Mr. Goolsby's Motion.

The District Court did not err in granting summary judgment to Chief Raney on the issue of liability. Chief Raney had not acquiesced in any deprivation of Mr. Goolsby's constitutional rights by his officers. Moreover, Chief Raney's officers did not take any action which represented a constitutional deprivation. Mr. Goolsby did not provide the District Court with any evidence to support a conclusion that Chief Raney failed to train or supervise his officers. As a result, there were no genuine issues of material fact precluding the District Court from entering summary judgment in favor of Chief Raney on the issue of liability.

The District Court did not err in granting summary judgment to Livingston on the issue of liability in connection with either Mr. Goolsby's federal or state claims. In connection with his federal claim, Mr. Goolsby failed to identify any policy or custom which formed the basis of a constitutional violation. Mr. Goolsby did not provide any evidence that Livingston failed to properly train its officers. Chief Raney and Officers Harris and Farrell did not violate Mr. Goolsby's constitutional rights. As a result, the District Court correctly concluded there was not a genuine issue of material fact which would preclude it from entering summary judgment in favor of Livingston on the issue of liability in connection with Mr. Goolsby's federal claims.

The District Court did not err in granting Livingston summary judgment on the issue of liability in connection with Mr. Goolsby's state law claims. Mr. Goolsby's arrest and imprisonment were based upon probable cause. As a result, there were lawful. For this reason, Mr. Goolsby's false arrest and imprisonment claims fail as a matter of law.

Probable cause existed to prosecute Mr. Goolsby. As a result, Mr. Goolsby's malicious prosecution claim fails as a matter of law.

Mr. Goolsby's negligence and negligent emotional distress claims also fail. There is no evidence to support the conclusion that Livingston breached any duty to safe keep evidence or duty to produce it during the course of the criminal prosecution.

In addition, there is no evidence to support the conclusion that a breach of such duties caused Mr. Goolsby any damages. Mr. Goolsby was incarcerated in the Park County Jail on several Gallatin County felony charges in addition to the Park County charges which arose out of his arrest in Livingston. The Park County charges were dismissed with prejudice. Mr. Goolsby received credit for all time served in the Park County Jail against the time he ultimately was to serve at the Montana State Prison for the Gallatin County felony convictions for which he was sentenced.

12

<u>ARGUMENT</u>

## I. THE DISTRICT COURT DID NOT ERR IN DENYING MR. GOOLSBY'S MOTION TO CONTINUE HIS RESPONSE TO DEFENDANTS' PENDING MOTIONS FOR SUMMARY JUDGMENT.

A. <u>Mr. Goolsby's Contention</u>

On the 24th day of February, 2010, Mr. Goolsby filed a Motion to Continue Response . (Doc. 76) Mr. Goolsby's Motion was supported by a Brief (Doc. 77) and a Declaration of his counsel (Doc. 78). At the time of this Motion, Harris's, Farrell's, and Raney's Motions for Summary Judgment were pending. They all filed Briefs in opposition to Mr. Goolsby's Motion to Continue Response. (Docs. 83, 84, and 85)

The District Court denied Mr. Goolsby's Motion to Continue Response on the 24th day of March, 2010. (Doc. 89, pp. 65-69) Mr. Goolsby contends that the District Court erred in denying his Motion to Continue Response.

B. <u>Standard  of Review</u>

District Courts have "wide latitude in controlling discovery." <u>Volk v. D. A. Davidson & Co.</u>, 816 F.2d 1406, 1416-17 (9th Cir. 1987). The District Court's Order denying Mr. Goolsby's Motion to Continue Response may only be reversed if it is demonstrated that it represents a clear abuse of discretion. <u>Cal. on behalf of Cal. Dep't of Toxic Substance Control v. Campbell</u>, 138 F.3d 772, 779 (9th Cir.

13

1998); Family Home & Finance Center, Inc. v. Federal Home Loan Mortg. Corp.,

525 F.3d 822, 827 (9th Cir. 2008).

   C.  Discussion

   Mr. Goolsby's Motion was made pursuant to Rule 56(f), Fed. R. Civ. P.[1]  It

provides:

> **(f)    When Affidavits Are Unavailable.**  If a party opposing the
> motion shows by affidavit that, for specified reasons, it cannot
> present facts essential to justify its opposition, the court may:
>
> (1)    deny the motion;
>
> (2)    order a continuance to enable affidavits to be obtained,
> depositions to be taken, or other discovery to be undertaken; or
>
> (3)    issue any other just order.

The District Court considered counsel's Declaration as an affidavit satisfying the

procedural requirements of Rule 56(f), Fed. R. Civ. P.  (Doc. 89, p. 67, n.13)

Chief Raney does not disagree with the District Court's consideration of the

Declaration as an affidavit in compliance with the Rule.

   This Court has consistently held that a party requesting a continuance

pursuant to Rule 56(f), Fed. R. Civ. P., must present evidence by affidavit that

satisfies three requirements.  The Court described those requirements in Federal

Home Loan Mortg., supra, 525 F.3d at 827:

---

[1]Rule 56, Fed. R. Civ. P., was amended in 2010.  Subsection (f) was rewritten as subsection (d).

The requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment.

Accord, Cal. on behalf of Cal. Dep't of Toxic Substances Control v. Campbell, supra, 138 F.3d at 779. If the moving party is unable to present evidence to satisfy these three requirements, the District Court acts within its discretion in denying the motion for continuance. Id.

Mr. Goolsby's counsel indicated in his Declaration that he hoped to discover facts to support his client's contention that he had not received video and audio tapes during the criminal prosecution. He indicated he needed chain of custody records for that purpose. (Doc. 78, ¶ 19) The District Court considered this information sufficient to satisfy the first requirement of Rule 56(f), Fed. R. Civ. P.

However, the District Court concluded that the Declaration of Mr. Goolsby's counsel failed to satisfy the second and third requirements of the rule. It concluded that the Declaration did not demonstrate that the evidence Mr. Goolsby sought to discover even existed. The only evidence the Declaration provided to support Mr. Goolsby's claim that video and audio tapes were not produced in the criminal prosecution was his own deposition testimony. (Doc. 78, ¶ 4) The District Court correctly rejected that testimony because Mr. Goolsby did not have personal knowledge of the facts presented. (Doc. 89, p. 68)

15

The District Court also concluded that the Declaration filed by Mr. Goolsby's counsel did not demonstrate that the sought-after facts were essential to oppose summary judgment.  In reaching this conclusion, the District Court considered the Supplemental Statement of Undisputed Facts it had allowed Officers Farrell, Harris, and Raney to file.  That Supplemental Statement of Undisputed Facts included the Affidavit of Brett Linneweber (Doc. 71-2, Exh. Q; ER p. 38)  Mr. Linneweber was the County Attorney responsible for prosecuting Mr. Goolsby in the criminal case.  He testified that he was provided with all the investigative materials relating to the arrest of Mr. Goolsby by the Livingston Police Department.  (Doc. 71-2, ¶ 73; ER p. 31)

Mr. Linneweber further testified that he provided a memorandum to Mr. Goolsby's criminal defense attorney on September 7, 2006, advising her that the video was available for her review and duplication.  (Doc. 71-2, ¶ 82; ER 33)  That memorandum read in bold:  "VIDEO TAPE AVAILABLE FOR YOUR REVIEW."  (Doc. 71-2, ¶ 13, Exh. Q, ¶ 13; ER p. 40)

The District Court correctly concluded that the facts Mr. Goolsby sought to discover were not essential in resisting Chief Raney's Motion for Summary Judgment.  Montana law does not impose any burden upon a chief of police or his officers to produce evidence to a defendant during a criminal prosecution.  Section

16

46-15-322, MCA, provides in pertinent part:

>    (1)  Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
>
> . . .
>    (2)  At the same time, the prosecutor shall inform the defendant of, and make available to the defendant for examination and reproduction, any written or recorded material or information within the prosecutor's control regarding:
>
> . . .
>    (4)  The prosecutor's obligation of disclosure extends to material and information in the possession or control of members of the prosecutor's staff and of any other persons who have participated in the investigation or evaluation of the case.

In his Affidavit, Prosecutor Linneweber acknowledged his responsibility for providing full disclosure to Mr. Goolsby in the criminal case.  (Doc. 71-2, ¶ 74; ER p. 32)

In sum, Mr. Goolsby, through his counsel's Declaration, failed to provide the Court with any evidence to suggest that facts existed demonstrating that any evidence was withheld from his criminal defense attorney.  Moreover, he failed to demonstrate that the facts that he sought to discover were essential to his opposition to Officer Raney's Motion for Summary Judgment.  On the other hand, Chief Raney and Officers Harris and Farrell established that the video and audio tapes were made available to Mr. Goolsby's criminal defense attorney.  As a result,

the District Court did not abuse its discretion in denying Mr. Goolsby's Motion to Continue Response. This Court should affirm the District Court's denial of that Motion.

## II.  THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO CHIEF RANEY ON THE ISSUE OF LIABILITY.

### A.  Mr. Goolsby's Contention

Chief Raney filed a Motion for Summary Judgment on the 15th day of December, 2009.  (Doc. 51)  The District Court granted Chief Raney's Motion on the 24th day of March, 2010.  (Doc. 89)  Mr. Goolsby contends that genuine issues of material fact existed requiring the District Court to deny Chief Raney's Motion for Summary Judgment.

### B.  Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. Edgerly v. City and County of San Francisco, 599 F.3d 946, 960 (9th Cir. 2010); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  In that review, the Court must view the evidence in the light most favorable to the nonmoving party. It must determine if there is a genuine issue of material fact and whether the District Court correctly applied the law.  Id.

18

C. <u>Discussion</u>

Mr. Goolsby asserted claims against Chief Raney in both his official and his individual capacities. The District Court granted Chief Raney summary judgment on both claims. The Court concluded that the official capacity claim was the same as the claim against Livingston. (Doc. 89, p. 43, n.7) Mr. Goolsby does not appeal that conclusion. He limits his appeal to his individual capacity claim against Chief Raney.

Mr. Goolsby asserted his individual capacity claim against Chief Raney on the theory of supervisory liability. A supervisory liability claim under Section 1983 is viable if the supervisor was personally involved in the constitutional deprivation or there is a nexus between the supervisor's unlawful conduct and the constitutional violation. <u>Edgerly</u>, <u>supra</u>, 599 F.3d at 961; <u>Lolli v. County of Orange</u>, 351 F.3d 410, 416 (9th Cir. 2003). The Court in <u>Edgerly</u> identified three grounds for holding a supervisor liable:

> Thus, supervisors "can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." <u>Cunningham v. Gates</u>, 229 F.3d 1271, 1292 (9th Cir. 2000).

<u>Edgerly</u>, <u>supra</u>, 599 F.3d at 961.

19

In the District Court, Mr. Goolsby contended that Chief Raney was liable for his officers' conduct because he was "responsible for the ultimate direction of their operations." (Doc. 66, p. 15) It appears this is an attempt to argue that Chief Raney was liable under the first ground identified in Edgerly. Mr. Goolsby does not argue that Chief Raney was liable for acquiescence or reckless indifference.

The District Court, of course, found that the officers had not violated Mr. Goolsby's constitutional rights. (Doc. 89, pp. 30-43) Having found that the officers were not liable under Section 1983, the District Court concluded that Chief Raney's supervision of the officers did not form a basis for Mr. Goolsby's Section 1983 claims against him. (Doc. 89, pp. 42-43)

The District Court's analysis is correct. If the officers did not violate Mr. Goolsby's rights, it cannot be said that Chief Raney failed to adequately supervise them. A supervision claim under Section 1983 obviously requires conduct by the officers subject to supervision that represents a constitutional deprivation. Therefore, assuming the District Court did not err in concluding that the officers' conduct did not violate Mr. Goolsby's constitutional rights, the Court did not err in concluding that Chief Raney was not liable in his individual capacity as a result of his supervisory role.

20

The District Court did not err in granting summary judgment on the issue of liability in connection with Mr. Goolsby's Section 1983 claims against Officers Farrell and Harris. Its Order granting summary judgment was consistent with Pearson v. Callahan, 555 US 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). In that case, the United States Supreme Court reviewed the analysis to be undertaken when qualified immunity is asserted. The Court described the analytical framework employed in qualified immunity cases in the following terms:

> In Saucier, 533 U.S. 194, 121 S. Ct. 2151, this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the fact that a plaintiff has alleged (see Fed. R. Civ. P. 12(b)(6),(c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S. Ct. 2151. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Ibid*. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. Anderson, supra, at 640, 107 S. Ct. 3034.

Pearson, supra, 555 US at 232. In Pearson, the Court went on to conclude that a district court need not necessarily resolve the issues presented by step 1 of the analysis first, but may under appropriate circumstances address the issues presented by step 2 of the analysis first. Pearson, supra, 555 US at 236.

The District Court in this case followed the two-step analysis mandated by Saucier and Pearson. (Doc. 89, pp. 30-43) The District Court followed the traditional Saucier analysis by first reviewing the facts to determine if Mr.

21

Goolsby's rights had been violated. It concluded that his rights were not violated. As a result, it did not undertake the second step of the analysis.

The District Court examined the facts surrounding the initial stop of Mr. Goolsby, the arrest of Mr. Goolsby, and the searches of Mr. Goolsby, the car which he was driving, and his motel room. The District Court concluded that Mr. Goolsby did not allege or show any facts to suggest that his initial stop, his arrest, or the searches violated his constitutional rights. There were no genuine issues of material fact which precluded the District Court from reaching this conclusion.

      1. Initial Stop

On appeal, Mr. Goolsby argues that the District Court erred in concluding that his initial stop did not violate his constitutional rights. Mr. Goolsby takes the District Court to task for not considering the officers' failure to investigate the reason he crossed the fog line, the officers' motive for stopping him, and their explanation of the number of times he crossed the fog line.

Mr. Goolsby argues that Montana law at the time provided that crossing the fog line a few times does not justify a traffic stop. Mr. Goolsby relies upon two Montana cases: Morris v. State, 2001 MT 13, 304 Mont. 114, 18 P.3d 1003 and State v. Lafferty, 1998 MT 247, 291 Mont. 157, 967 P.2d 363. Mr. Goolsby maintains that these two opinions stand for the proposition that crossing the fog

lines a few times is not grounds sufficient to justify a traffic stop.

Mr. Goolsby's reliance upon <u>Morris</u> and <u>Lafferty</u> is misplaced. Both opinions were overruled by the Montana Supreme Court in <u>State v. Flynn</u>, 2011 MT 48, 359 Mont. 376, 251 P.3d 143. In that case, Flynn was stopped for crossing the fog line on three occasions. He ultimately was arrested for driving under the influence. Mr. Flynn argued that the Supreme Court's opinion in <u>Lafferty</u> established a bright line which held that crossing the fog line does not give rise to particularized suspicion sufficient to justify a traffic stop.

The Supreme Court declined to rely on either <u>Morris</u> or <u>Lafferty</u>. It concluded that the analysis it had employed in those two cases was "flawed." In reaching this conclusion the Court said:

> In short, the approach utilized in <u>Lafferty</u> and <u>Morris,</u> analyzing particularized suspicion in light of defendant testimony, was improper and resulted in flawed analysis. We take this opportunity to clarify that a defendant's after-the-fact explanation for his or her conduct has no bearing on a court's determination of whether an officer possessed particularized suspicion to justify a stop. To the extent which <u>Morris</u> and <u>Lafferty</u> improperly relied on defendant testimony cannot be discerned. As a result, we decline to rely on them as precedent.

<u>Flynn</u>, <u>supra</u>, 2011 MT 48, at ¶ 12. Thus, the proper approach in Montana is to evaluate the existence of a particularized suspicion based upon what the officer

23

knew at the time of the stop and to ignore information which might come into his possession at a later date.

Mr. Goolsby suggests that the District Court erred by not considering the officers' alleged failure to investigate the cause of his weaving. Such an investigation would involve reviewing evidence which may have come into the officers' possession after the initial stop. The holding in <u>Flynn</u> prevented the District Court from considering that evidence.

Mr. Goolsby also suggests that the officers exaggerated the number of times he crossed the fog line. At the same time, he admits that the video recording of his driving showed he crossed the fog line two to three times. (Appellant's Brief, p. 33) The Montana Supreme Court found that the particularized suspicion justifying the stop in <u>Flynn</u> consisted of Mr. Flynn's car crossing the fog line on three occasions. Even if Mr. Goolsby's characterization of his driving as reflected in the video tape is correct, it is sufficient to justify the officers' stop.

The analysis of the facts in this case is similar under federal law. Under federal law, an officer may make a traffic stop based upon a reasonable suspicion, following his evaluation of all the circumstances that surround it. <u>Terry v. Ohio</u>, 392 US 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); and <u>Alabama v. White</u>, 496 US 325, 328-331, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). A reasonable

24

suspicion exists when the officer can point to "specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant" the stop. <u>Terry</u>, <u>supra</u>, 392 US at 21 and <u>US v. Cortez</u>, 449 US 411, 412, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

It is clear the District Court did not err in concluding that Officer Harris had particularized suspicion justifying his stop of Mr. Goolsby. It is undisputed that the car swerved several times. As a result, the initial stop did not violate Mr. Goolsby's constitutional rights.

### 2. <u>Arrest</u>

Mr. Goolsby was driving just prior to his arrest. He was doing so without a valid driver's license. The officers learned of that fact following their stop of Mr. Goolsby. They also learned that the vehicle had no insurance and had a broken windshield. As a result, they placed him under arrest for driving without a valid driver's license, driving without insurance, and failing to have a vehicle equipped with a windshield. (Doc. 56, ¶ 36; ER p. 7)

The District Court held that the warrantless arrest of Mr. Goolsby for these offenses did not violate his constitutional rights. That holding was based upon the fact that an officer may arrest a defendant for even a minor offense without a warrant if that offense is committed in the officer's presence. <u>Atwater v. City of</u>

<u>Lago Vista</u>, 532 US 318, 321-322, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001). It is undisputed that Mr. Goolsby was driving without a valid license, without insurance, and with a broken windshield in the presence of the arresting officer in violation of Montana law. As a result, Mr. Goolsby's warrantless arrest did not violate his constitutional rights.

Mr. Goolsby argues that the officers' warrantless arrest of him violated his constitutional rights because the officers' stop of him violated his constitutional rights. As demonstrated above, Mr. Goolsby's stop was not in violation of his constitutional rights. As a result, his warrantless arrest was not unconstitutional.

      3. <u>Searches</u>

Mr. Goolsby was subjected to three separate searches. First, his body was searched by conducting a urinalysis. Second, the vehicle Mr. Goolsby was driving was searched. Third, Mr. Goolsby's motel room was searched.

On appeal, Mr. Goolsby first challenges the search of the vehicle. The search of the vehicle followed the issuance of a Search Warrant based upon an Application submitted by Officer Farrell. The Application for Search Warrant contained the following information:

      1. Officer Farrell had received training in illegal drug identification, drug paraphernalia, and drug trafficking.

26

2.  A pharmacist named Carla Fenton had advised the officers that Mr. Goolsby had attempted to buy Sudafed at her pharmacy.

3.  Pharmacist Fenton had called two other pharmacies and was informed that Mr. Goolsby had purchased Sudafed from them earlier in the day.

4.  Pharmacist Fenton had observed Mr. Goolsby leave her drug store in a Ford Explorer.

5.  The vehicle Mr. Goolsby was driving had been stopped and that Mr. Goolsby had been placed under arrest for driving with a suspended license.

6.  Mr. Goolsby had submitted to a urinalysis by his probation officer and that he had tested positive for methamphetamine.

(Doc. 56, ¶¶ 48-49; ER. p. 9)  A Search Warrant was issued by City Judge Lord after reviewing this Application.  Id.

Mr. Goolsby contends that the Application for Search Warrant contained false information.  He argues that Officer Harris falsely stated that he recognized the driver as Mr. Goolsby.  Mr. Goolsby also contends that the Application was deficient because it failed to mention that the vehicle was not owned by him. Finally, Mr. Goolsby argues the Application was deficient because it failed to acknowledge that his passenger, Daphane Peck, told the officers on two occasions that she was the one who had purchased the Sudafed.

City Judge Lord made an independent conclusion that the Application for Search Warrant supported the issuance of the Search Warrant.  (Doc. 56, ¶ 49;

ER p. 9)  The District Court independently reviewed the Application upon which the Search Warrant had been issued.  The District Court then determined that the Application for Search Warrant demonstrated that probable cause existed for the issuance of the Warrant.

The Ninth Circuit recently addressed the issue of probable cause for the issuance of a search warrant.  It described probable cause in the following terms:

> Probable cause exists when "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  Illinois v. Gates, 462 US 213, 238-39, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).  In reviewing a search warrant on probable cause grounds, this Court, like the district court, is "limited to the information and circumstances contained within the four corners of the underlying affidavit."  United States v. Stanert, 762 F.2d 775, 778, amended on other grounds, 769 F.2d 1410 (9th Cir. 1985).  The evidence in the affidavit need not necessarily be admissible, but must be "legally sufficient and reliable."  Franklin, 312 F.3d at 438.

Crowe v. County of San Diego, 608 F.3d 406, 434-435 (9th Cir. 2010).  There was more than sufficient evidence within the Application to support the City Judge's and District Court's finding of probable cause.

Mr. Goolsby contends that some of the information in the Application was a misrepresentation.  If the Application contained a material misrepresentation, the Warrant issued as a result of it could be considered a violation of Mr. Goolsby's

constitutional rights.  This Court summarized that legal proposition in the

following terms:

> A misrepresentation in the affidavit constitutes a violation of the
> Fourth Amendment if the misrepresentation is material.  [Internal cite
> omitted.]  Misrepresentations can be affirmative or based on omission.
> Affirmative misrepresentations are material only if there is no
> probable cause absent consideration of the misrepresented facts.  Id.
> A misrepresentation based on an omission is material only when the
> omitted facts "cast doubt on the existence of probable cause."
> [Internal quotations omitted.]  If a plaintiff is able to demonstrate that
> a warrant was issued as the result of a material misrepresentation, a
> police officer defendant may still be entitled to summary judgment on
> qualified immunity grounds, unless the plaintiff can also demonstrate
> that the police officer deliberately falsified information presented to
> the magistrate or recklessly disregarded the truth.

Crowe, supra, 608 F.3d at 435.  Even if Mr. Goolsby's contentions were true, his

alleged misrepresentations of fact were not material or deliberate.

Mr. Goolsby claims that Officer Harris falsely stated in the Application for

Search Warrant that he recognized the driver as Mr. Goolsby.  Officer Farrell, not

Officer Harris, prepared the Application for Search Warrant.  (Doc. 56, ¶ 48;

ER p. 9)  In Officer Harris's report, he stated that he had seen pictures of Mr.

Goolsby.  (Doc. 56-3)  Regardless of how Officers Harris and Farrell characterized

Officer Harris's knowledge of Mr. Goolsby, it is not material.  Mr. Goolsby was in

fact the driver.

Mr. Goolsby also claims that the Application should have noted that the car was Daphne Peck's, not Mr. Goolsby's. Ownership of the car is not material. The important point is that the Application indicated correctly that Mr. Goolsby was driving the vehicle. That is the information in the Application that was considered by Judge Lord and the District Court.

Mr. Goolsby fails to produce any evidence to suggest that any officer deliberately made misrepresentations in the Application for Search Warrant. In fact, all of the evidence outlined in the Search Warrant was true. As a result, the officers did not violate Mr. Goolsby's constitutional rights by making any misstatements in the Application for Search Warrant.

Mr. Goolsby also challenges the District Court's conclusion that a search warrant was not necessary for Mr. Goolsby's probation officer to conduct a urinalysis or search his motel room. The Court reached that conclusion in reliance upon State v. Kriesel, 2000 MT 144, ¶ 14, 300 Mont. 44, 2 P.3d 831. In that case, the defendant had been placed on probation. One of the conditions of his probation was to subject himself to a search and seizure of his residence, person, and vehicle upon the request of his probation officer, with or without a warrant.

The Supreme Court in Kriesel held that reasonable grounds were necessary to justify a warrantless search of a probationer's vehicle. It explained that the

30

"reasonable grounds" standard required substantially less evidence than does probable cause. The evidence in this case provided more than reasonable grounds to support the probation officer's search of Mr. Goolsby's person and motel room.

Mr. Goolsby's probation officer conducted the search of Mr. Goolsby's person and motel room. (Doc. 56-2, Ex. A) Officers Harris and Farrell are not liable for the conduct of Mr. Goolsby's probation officer. Even if they were liable for the probation officer's search, those searches did not violate Mr. Goolsby's constitutional rights.

The Sentence and Judgment which placed Mr. Goolsby on probation included a provision which allowed his probation officer to conduct warrantless searches of his body, vehicle, or residence. (Doc. 56, ¶10; ER p. 3) The probation officers did not need to secure a search warrant to search Mr. Goolsby or his motel room. The searches of Mr. Goolsby and his motel room cannot be said to be constitutional deprivations.

Mr. Goolsby also suggests the District Court should have discussed his claim that the officers planted evidence, e.g., "cook book" and "list of chemicals." Mr. Goolsby does not indicate at what point in the District Court's analysis this contention should have been evaluated. Presumably, he believes it should have been conducted in connection with the Court's evaluation of the Application for

31

Search Warrant.  That Application makes no mention of these terms.  (Doc. 56-1)

The District Court's review of the Application for Search Warrant is limited to its four corners.  Crowe, supra, 608 F.3d at 434-435.  As a result, the District Court was not allowed to review or consider this evidence.  To do so would have been to violate the Four Corners Rule.

### III.  THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO LIVINGSTON ON THE ISSUE OF LIABILITY

A.  Mr. Goolsby's Contention

Livingston filed a Motion for Summary Judgment on the 13th day of December, 2010, in connection with Mr. Goolsby's federal and state claims.  (Doc. 106)  The District Court issued its Order granting Livingston's Motion for Summary Judgment on the 4th day of March, 2011.  (Doc. 125)  Mr. Goolsby contends that genuine issues of material fact exist precluding entry of summary judgment.

B.  Standard of Review

The District Court's Order is reviewed de novo.  Edgerly, supra, 599 F.3d at 960.  This Court must review the evidence in the light most favorable to Mr. Goolsby.  It must determine if there is a genuine issue of material fact or whether the District Court misapplied the law.  Id.

C.  Discussion

Mr. Goolsby's First Amended Complaint alleged two counts based upon civil rights violations.  (Doc. 31)  Count 3 alleged civil rights violations under the U.S. Constitution.  Count 4 alleged civil rights violations under the Montana Constitution.  Both Counts 3 and 4 were based upon 42 USC § 1983.  It alleged six state law claims.  The federal and state claims must be analyzed separately.

1.  Federal Claims

A municipality such as Livingston may be held liable for constitutional violations in one of two ways.  It may be held liable for constitutional violations for harm that is caused by its own policies or customs.  It may also be held liable for constitutional violations as a result of harm caused by its employees in their official capacity.  Waggy v. Spokane County, Washington, 594 F.3d 707, 713 (9th Cir. 2010).  The District Court concluded that Mr. Goolsby failed to raise genuine issues of material fact in connection with either basis for establishing liability against Livingston.

First, the District Court concluded that Mr. Goolsby had not provided any evidence to demonstrate that Livingston had a policy or custom that deprived him of his constitutional rights.  (Doc. 125, p. 10)  Mr. Goolsby suggests the District Court failed to take into account Livingston's lack of a policy concerning

33

recreation.  Mr. Goolsby refers the Court to page 221 of the Excerpts from Record.

That document is a page from the Park County Jail Manual.  It does not reflect

Livingston's policy or procedure.  As the record reflects, Park County confined

Mr. Goolsby, not Livingston.  As a result, Mr. Goolsby's reference to a lack of

policy concerning recreation is totally inappropriate.

Mr. Goolsby correctly suggests that a failure to properly train officers can

constitute a policy or custom which violates one's constitutional rights.  However,

Mr. Goolsby does not point to any evidence which demonstrates that the officers

were not properly trained.  There was no such evidence.

Second, the District Court held that Officers Raney, Harris, and Farrell had

not violated Mr. Goolsby's constitutional rights.  Mr. Goolsby, of course,

challenges that conclusion.  He recognizes that if that holding is affirmed, the

District Court's Order granting Livingston's Motion for Summary Judgment

should also be affirmed.  Livingston is not liable for a constitutional violation

unless one of its officers is liable for such a violation.

2.  <u>State Law Claims</u>

Mr. Goolsby's First Amended Complaint alleges six state law claims for

relief:

1.      Count 1, False Arrest/Imprisonment;
2.      Count 2, Malicious Prosecution;

34

3.   Count 5, Gross Negligence and Negligence;
4.   Count 6, Emotional Distress;
5.   Count 7, Assault and Battery; and
6.   Count 8, Acting in Concert.

(Doc. 31)  Mr. Goolsby included a ninth count alleging punitive damages.  The

District Court concluded that claim was not a separate identifiable claim.  (Doc.

89, p. 7, n.5)  Counts 3 and 4 were claims for civil rights violations under 42 USC

§ 1983.

Livingston's Motion for Summary Judgment requested judgment on the

issue of liability in connection with all six claims.  (Doc. 106)  The District Court's

Order granted summary judgment on all six claims.  (Doc. 125)  Mr. Goolsby

contends on appeal that the District Court erred in granting summary judgment on

all six claims.

### 2.(a)   False Arrest/Imprisonment

Mr. Goolsby's false arrest and false imprisonment claims are essentially the

same.  Harrer v. Montgomery Ward & Co., 124 Mont. 295, 305, 221 P.2d 428, 433

(1950).  To establish a claim for false arrest/false imprisonment, Mr. Goolsby was

required to produce evidence to satisfy two requirements:

1.   Restraint of Mr. Goolsby against his will; and
2.   The unlawfulness of such restraint.

Hughes v. Pullman, 2001 MT 216, ¶ 21, 306 Mont. 420, 36 P.3d 339. The District Court found that Mr. Goolsby's stop was based upon reasonable suspicion and his arrest was based upon probable cause. Consequently, the District Court concluded that Mr. Goolsby could not produce evidence creating a genuine issue of fact demonstrating that his stop and arrest were unlawful.

Mr. Goolsby challenges the District Court's conclusion on two grounds. First, he argues the Court's conclusion was in error because it was based upon the erroneous conclusion that his stop and arrest were lawful. As discussed supra, pp. 22-26, the stop and arrest were lawful.

Second, he argues that the petition to revoke was based upon an unlawful urinalysis. This argument makes no sense. Mr. Goolsby was arrested for traffic violations. The urinalysis was conducted after the arrest. It had no relationship to the arrest.

### 2.(b)  Malicious Prosecution

To establish a claim for malicious prosecution, Mr. Goolsby was required to produce evidence to satisfy six requirements:

1. A judicial proceeding commenced against the party alleging malicious prosecution;

2. The other party's responsibility for instigating the proceeding;

3. A want of probable cause for the other party's actions;

4.  The existence of malice as the motivator behind the other party's action;

5.  The termination of a proceeding in favor of the alleging party; and

6.  Damages suffered by the party alleging malicious prosecution.

Deist v. Thornton, 2009 MT 21, ¶ 9,  n.1, 349 Mont. 94, 201 P.3d 800.  The

District Court concluded that Mr. Goolsby could not satisfy the third element.

(Doc. 125, p. 12)  In support of that conclusion, it reiterated its holding that Mr.

Goolsby's arrest and prosecution were supported by probable cause.

      Mr. Goolsby argues that the District Court erroneously reached that

conclusion by failing to consider his testimony  that the video and audio tapes were

not turned over to his criminal defense attorney.  Mr. Goolsby did not provide any

additional evidence to support his testimony.  Regardless, the alleged evidence is

not relevant to his prosecution.  The alleged withholding of evidence occurred after

the prosecution was initiated, not before.  There was no duty to turn over the video

and audio tapes until after the prosecution had been commenced.  As a result, the

alleged failure to turn over the video and audio evidence was not the basis for

prosecuting Mr. Goolsby.  In addition and as demonstrated below, the audio and

video tapes were made available to Mr. Goolsby's criminal defense counsel.

2(c).  <u>Negligence Claims</u>

Mr. Goolsby's primary argument is that the District Court improperly

considered his negligence claims.  He contends that the District Court ignored his

evidence.  He maintains that he plead guilty to a petition to revoke his probation

because of results of the urinalysis.  He maintains that he fully intended to go to

trial on the petition to revoke his probation based upon an alleged absconding

charge.

Mr. Goolsby characterizes as "preposterous" the District Court's conclusion

that he had no right to the exculpatory evidence since the charges had been

dismissed against him.  Despite the harshness of that characterization, Mr. Goolsby

does not cite to this Court any authority to support it.

The District Court concluded that police officers in Montana owe a duty to

insure the safe keeping of potentially exculpatory evidence.  <u>Peschel v. City of</u>

<u>Missoula</u>, 664 F. Supp. 2d 1137, 1143 (D. Mont. 2009) and <u>State v. Swanson</u>, 222

Mont. 357, 362, 722 P.2d 1155 (1986).  Livingston does not contend that its

officers did not owe Mr. Goolsby a duty to preserve this potentially exculpatory

evidence.

The District Court assumed Livingston breached this duty.  (Doc. 125, p. 15)

Livingston does not agree with the District Court's assumption.  There is no

evidence in this case that the video tape and audio recording were ever destroyed. Mr. Goolsby has testified that he has reviewed them. In fact, he relies upon that review in support of his argument that he only crossed the fog line two to three times. (Appellant's Brief, p. 33)

Mr. Goolsby's allegation is that the tapes were not produced by the prosecutor during the course of his criminal case. Livingston has introduced the Affidavit of Prosecutor Linneweber which demonstrates that the video tape and audio tape were in fact made available to Mr. Goolsby's defense counsel for review. (Doc.71-2, ¶ 82; ER p. 33) Mr. Goolsby's allegation and Prosecutor Linneweber's Affidavit create an issue of fact.

The District Court did not attempt to resolve this factual issue. Rather, it based its decision on the undisputed facts set forth in the parties' Stipulation. (Doc. 27, pp. 3-4) The crucial paragraph of the Stipulation read:

> (k)    On January 2, 2007, Goolsby appeared before the Montana Eighteenth Judicial District Court, Gallatin County, in Cause No. DC 01-010, agreed to the revocation of his suspended sentence, and was directed to serve the remainder of his sentence at MSP. Goolsby also received credit from the Court for his 272 days incarceration in the Park County Jail from April 10, 2006 until November 1, 2006.

(Doc. 27, p. 4) This Stipulation contradicts Mr. Goolsby's current contention.

Having reviewed that undisputed evidence, the District Court concluded that the withholding of the tapes, if true, did not cause Mr. Goolsby any damage. It

reached that conclusion because the criminal case in which the tapes were evidence was dismissed with prejudice. Mr. Mr. Goolsby was sentenced to ten years in prison based upon his prior conviction and violation of probation. He received credit for all of the time he spent in the Park County Jail. (Doc. 27, p. 4)

In Montana, a plaintiff must produce evidence to satisfy four elements to prevail on a claim for negligence. The Supreme Court described those elements in the following terms:

> To maintain an action in negligence, the plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted.

Peterson v. Eichhorn, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615.

The failure to offer proof in support of any one of the four elements can result in summary judgment. Id. The District Court concluded that Mr. Goolsby failed to produce evidence of causation. That conclusion is supported by the parties' Stipulation. Mr. Goolsby cannot now create an issue of fact by contradicting the Stipulation.

As noted above, the District Court concluded that Montana law imposes a duty upon police officers to safe keep potentially exculpatory evidence. There is no allegation in this case that the video and audio tapes were destroyed or lost.

The allegation is they were not produced during the course of discovery in the criminal case. Consequently, the District Court could have supported its Order Addressing Summary Judgment Motions by concluding that Livingston did not breach any duty.

The duty to produce evidence during the course of a criminal prosecution is different than the duty to preserve evidence. The duty to produce evidence during the course of a prosecution is imposed upon the prosecutor by statute in Montana. Section 46-15-322(1) and (4), MCA, read:

> (1) Upon request, the prosecutor shall make available to the defendant for examination and reproduction the following material and information within the prosecutor's possession or control:
>
> . . .
>
> (4) The prosecutor's obligation of disclosure extends to material and information in the possession or control of members of the prosecutor's staff and of any other persons who have participated in the investigation or evaluation of the case.

This statute does not create a duty to disclose upon investigating officers.

The undisputed evidence demonstrates that the prosecutor made available the tapes in question to Mr. Goolsby's criminal defense attorney. (Doc. 71-2, ¶ 82; ER p. 33) Mr. Goolsby did not present any evidence to contradict that proof. As a result, the District Court could have properly granted summary judgment in connection with Mr. Goolsby's negligence claims on this basis.

41

## CONCLUSION

The District Court did not abuse its discretion in denying Mr. Goolsby's Motion to Continue Response. As a result, the District Court's Order denying Mr. Goolsby's Motion should be affirmed.

The District Court did not err in granting summary judgment in favor of Chief Raney on the issue of liability. As a result, the District Court's Order granting Chief Raney summary judgment should be affirmed.

The District Court did not err in granting summary judgment in favor of Livingston on the issue of liability. As a result, the District Court's Order granting Livingston summary judgment on the issue of liability should be affirmed.

DATED this 13th day of October, 2011.

BERG, LILLY & TOLLEFSEN, P.C.


By  /s/ Michael J. Lilly
   Michael J. Lilly
   Attorneys for Defendants/Appellees
   Darren Raney and City of
   Livingston

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellees Darren Raney and City of Livingston state that there are no other related cases pending appeal in this Court.

   /s/ Michael J. Lilly
   Michael J. Lilly

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,602 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P.32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 using Times New Roman 14 point type.

 /s/ Michael J. Lilly
Michael J. Lilly

43

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 13th day of October, 2011, a copy of the foregoing document was served on the following persons by the following means:

 X  ECF
___ Hand Delivery
___ Mail
___ Overnight Delivery Service
___ Fax
___ E-Mail


Clerk, U.S. Court of Appeals
Ninth Circuit

Mr. Terry F. Schaplow
1700 West Koch, Ste. 11
Bozeman, MT 59715

Mr. Harlan B. Krogh
Crist, Krogh & Nord, LLC
2708 1st Ave. N., Ste. 300
Billings, MT 59101

Mr. Steven Milch
Crowley Fleck, PLLP
P.O. Box 2529
Billings, MT 59103-2529

BERG, LILLY & TOLLEFSEN, P.C.


By  /s/ Michael J. Lilly
    Michael J. Lilly
    Attorneys for Defendants/Appellees
    Darren Raney and City of
    Livingston

44