TERRY F. SCHAPLOW, P.C.
1700 West Koch, Suite 11
Bozeman, Montana 59715
(406) 587-2767
Fax (406)586-4922
tfschaplow@imt.net
Attorney for Plaintiff

UNITED STATES COURT OF APPEALS,
FOR THE NINTH CIRCUIT

PETER LEROY GOOLSBY

              Plaintiff

     v.

DARREN RANEY, individually and as
Chief of Police and as agent of the City
of Livingston, CAPTAIN GLENN
FARRELL, individually and as agent of
the City of Livingston, et al.,

              Defendants

No. 11-35285

D.C. No. 1:08-cv-00111-CSO
District of Montana, Billings

APPELLANT'S JOINT REPLY
BRIEF

Appeal from the Montana U.S.
District Court, Billings Division

APPEARANCES

Harlan Krogh
2708 First Ave. South Ste. 300
Billings, MT 59101
Phone: 406-587-3181
Fax: 406-255-0697
kgrogh@cristlaw.com
Atty. For Defendants Farrell/Harris

Mike Lilly
1 West Main Street
Bozeman, MT 59715
Phone: 406-587-3181
Fax: 406-587-3240
mikelilly@berglawfirm.com
Atty. For Defendants Raney/City of Livingston

Terry F. Schaplow
1700 W. Koch Ste. 11
Bozeman, MT 59715
Phone: 406-587-2767
Fax: 406-586-4922
tfschaplow@gmail.com
Atty. For Plaintiff-Appellant

Steve Milch
P.O. Box 2526
Billings, MT 59103-2529
Phone: 406-252-3441
Fax: 406-256-0277
smilch@crowleylaw.com
Atty. For Park County Defendants

<u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS…………………………………………………….2-3

TABLE OF AUTHORITIES……………………………………………….3-4

1. THE DISTRICT COURT'S ABOUT- FACE POSITION ADMITS THAT PLAINTIFF'S RULE 56(f) MOTION SHOULD HAVE BEEN GRANTED………………………………………….4

   A. The District Court's First Ruling………………………………..6
   B. The District Court Revealed the Error of its Order Denying the Rule 56(f) Motion……………………………………………………8
   C. The District Court Failed In Its Subsequent Attempt to Justify Its Earlier Ruling …………………………………………………...9

2. THE DEFENDANTS' ADMISSION IN THEIR BRIEFS MANDATE GRANTING PLAINTIFFS RULE 56(f) MOTION………………………10

   A. The Farrell/Harris Arguments Missed the Mark…………………13
   B. Raney/City of Livingston's Arguments Miss the Mark………….15

3. THE DISCRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO FARRELL/HARRIS/RANEY ON THE ISSUE OF LIABILITY……………………………………………………………...17

   A. The Farrell/Harris Arguments Fail to Negate Genuine Issues of Material Fact…………………………………………………………...18
   B. Farrell/Harris Fail to Negate Issues of Fact Regarding Probable Cause to Arrest Goolsby…………………………………………………….21
   C. Farrell/Harris Fail to Negate Issues of Fact Regarding The Search of the Car and the Motel Room…………………………………………….21

4. RANEY/CITY OF LIVINGSTON'S ARGUMENTS REGARDING THE INTIAL STOP AND ARREST NEGATE SUMMARY JUDGMENT……23

   A. Raney/City Fail to Negate Fact Issues Regarding Pete's Arrest and Search…………………………………………………………...24

5.  THE CITY OF LIVINGSTON FAILS TO NEGATE GOOLSBY'S FACT
    ISSUES ON ITS LIABILITY……………………………………………...25

    A. Federal Claims…………………………………………………………..25
    B. State Law Claims………………………………………………………..25

6.  PARK COUNTY HAS FAILED TO NEGATE GOOLSBY'S CLAIM
    THAT GENUINE ISSUE OF MATERIAL FACT LIE ON PLAINTIFFS
    MEDICAL NEEDS CLAIMS…………………………………………...27

    A. The Park County Defendants Fails to Negate Pete's Argument that
    Genuine Issues of Material Fact Exist on His Medical Claims Under State
    Law As Well………………………………………………………………..29
    B. The Park County Defendants Fail to Negate Genuine Issues of Material
    Fact Regarding their Deliberate Indifference………………………………32
    C. The Park County Defendants Fail to Negate Pete's Genuine Issues of
    Material Fact under State Law……………………………………………..33

7.  THE DISTRICT COURT ERRED IN GRANTING THE DEFENDANTS'
    MOTION TO QUASH……………………………………………………..34

8.  CONLUSION……………………………………………………………35

9.  CERTIFICATE OF COMPLIANCE…………………………………36

10. CERTIFICATE OF SERVICE……………………………………………..37

## TABLE OF AUTHORITIES

<u>CASES</u>

*Berg v. Kinchlow* (9th Cir. 1986) 794 F.2d 457, 460-61…………………………..17

*Blackwell v. Cole Taylor Bank* (7th Cir. 1998) 152 F.3d 666- 673……11, 15, 16, 20

*Clement v. Gomez*, 298 F.3d at 904……………………………………………….26

*Crowe v. County of San Diego* 593 F.3d 841, 869-70 (9th Cir. 2010)………21, 23

*Doe v. Abbington Friends School* 480 F.3d 252 (3rd Cir. 2007)……………4, 15, 34

*Edgerly v. City and County of San* Francisco 599 F.3d

   946, 960 (9th Cir. 2010)……………………………………16, 19-25, 28, 31

*Estelle v. Gamble*, 829 U.S. 97 (1976)…………………………………………26, 27

*Farmer v. Brennan* 511 U.S. 825, 832 (1994)……………………………..29

*Hoptowit v. Spellman* 753 F.2d 779, 783 (9th Cir. 1985)…………………31

*Hudson v. Palmer* 468 U.S. 517, 526-27 (1984)…………………………………….27

*Leer v. Murphy*  (9th Cir. 1988) 844 F.2d 628, 634…………………………...13, 18

*Morris v. State* 304 MT. 114, 18 P.3d 1003 (2001)…………………………..20, 21

*Norton v. Sam's Club* (2nd Cir. 1988) 145 F.3d 114-117-118……………………13

*Kiely Construction LLC. V. City of Red Lodge* 323 MT. 52, 557 P.3d 836………18

*Peschel v. City of Missoula* 664 F.2d 1137, 1142 (D. MT. 2009)……………15, 36

*State v. Fynn* ¶10 359 MT. 376, 251 P.3d 143 …………………………20, 21, 23

*State v. Lafferty* 291 MT. 157, 969 P.2d 363 (1998) …………………………20, 21

*U.S. v. Zannino* (1st Cir. 1990) 895 F.2d 1, 17…………………………………13

*Wilson v. Seiter*, 501 U.S. 294 (1991)……………………………………………….27

Comes Now the Plaintiff/Appellant Pete Leroy Goolsby ("Pete") and files this joint reply brief responding to the following three answer briefs: Park County Defendants (Carpenter, O'Neill, Park Co.), (DKT 17); Raney/City of Livingston, (DKT 18); and Farrell/Harris, (DKT 19).

1. THE DISTRICT COURT'S ABOUT- FACE POSITION ADMITS THAT PLAINTIFF'S RULE 56(f) MOTION SHOULD HAVE BEEN GRANTED

Because of the order regarding Pete's Rule 56(f) motion, the Defendants were allowed to introduce evidence of Pete's deposition (and file their self-serving affidavait's), but Pete was denied the opportunity to introduce any deposition evidence of the Defendants. Rule 56(f) motions are routinely granted, *Doe v. Abbington Friends School* 480 F.3d 252 (3rd Cir. 2007). As discussed below, there is no good reason why the District Court denied Pete the opportunity to supplement the record in the same way it allowed the Defendants to do so (ER 136-40) in its draconian 3/24/10 ruling.

Although said order granted Pete's 56(f) motion regarding his condition of confinement claims, (ER 138), the net effect of the order was to "gut" Pete's case of virtually all viability; therefore it will be referred to herein as a denial of his 56(f) motion.

The Defendants' three answer briefs shied away from discussing the District Court's 3/4/11 reversal of its earlier (3/24/10) position about why it denied

Plaintiff's Rule 56(f) motion (to conduct discovery regarding the Defendant's discovery abuse to be able to properly respond to the Defendants' summary judgment motions). The Defendants so acted for good reason. In its subsequent attempt to justify its earlier position, the Court simply dug itself a deeper hole, once again ignoring Pete's uncontradicted evidence (see part C below).

Of the three answer briefs filed, only the City of Livingston's brief attempts to address this issue (DKT 18 p. 38-41). However, it does so simply by parroting the District Court's erroneous reasoning and not by addressing the uncontradicted facts set forth in Plaintiffs first brief (DKT. 13 p. 47-49). The City so argues because it <u>can't</u> refute Pete's uncontradicted testimony proving the District Court wrong, *id.*

This issue is *pivotal* because, if this Court finds that the District Court erred in denying Pete's Rule 56(f) motion, its inquiry ends. As a result, the District Courts summary judgment rulings must be reversed as well, because the District Court's denial hamstrung the Plaintiff from conducting discovery so as to rebut the Defendants' summary judgment motions, a fact noted by the District Court, (ER 137) and by Plaintiff's Reply Brief, (ER 148-149). The Defendants' answer briefs' failure to adequately address this issue indicates that the District Court's denial of the Rule 56(f) motion was wrong, and merits further discussion.

<u>A. The District Court's First Ruling</u>

As noted in Pete's first brief (DK.T 13 p. 27-32), the District Court's first (3/24/10) decision discussed the three factors required for granting a Rule 56(f) motion: (1) The moving party has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment" (ER 137).

Plaintiff's initial 56(f) motion and declaration appear in Vol. 2 of Farrell/Harris Excerpt of Record (ER) p. 363, 372. Plaintiff's reply briefs supporting said motion appear at Plaintiffs ER p. 144, 151.

The District Court found that Plaintiff had satisfied the first requirement but not the other two. Amazingly the Court first found that Plaintiff did not prove that the exculpatory videos existed (ER 139) even though Pete testified they existed (ER 191). They were also discussed <u>twice</u> in the FAC (First Amended Complaint) and <u>eight</u> times in the exhibits of the FAC (ER 147).

Also, Prosecuter Linneweber's affidavit contained an exhibit which specifically referred to them (DKT. 18 p. 41). Therefore the Court erred in so finding.

Next the District Court found that Pete had not proven how these videos were essential to opposing the Defendant's summary judgment motion, (ER 139), even though the chain of custody of these videos was put squarely at issue by the

Defendant's supplemental pleadings, Farrell/Harris ER. Vol. 2 p 364-65. Thus the Court also erred on this factor.

## B. The District Court Revealed the Error of Its Order Denying the Rule 56(f) Motion

In spite of the above rulings in its 3/24/10 Order, the District Court's 3/4/11 ruling backtracked and attempted a further justification for denying Plaintiff's Rule 56(f) motion, which simply proves how wrong the Court was initially. All the evidence points to the fact that, while preparing its 3/4/11 ruling, the Court finally read the Plaintiff's Reply Briefs (supporting the Rule 56(f) motion), realized its earlier error in denying Pete's Rule 56(f) motion, and set about to manufacture a new justification for its earlier order.

First, its clear that the Court did not read Pete's Reply briefs prior to entering its 3/24/10 order. Said order (mistakenly) states that <u>one</u> deposition had been taken (ER 137), where as Pete's Reply brief (correctly) noted that three of the Defendants' depositions had already been taken and a fourth one scheduled (ER 149).

As further proof thereof, said 3/24/10 order fails to mention any of the information contained in said reply briefs, e.g., the glaring discrepancies between the Defendants' self-serving affidavits drafted by their attorneys (that they had no

involvement in Pete's prosecution) and their deposition testimony (that they were in the loop with the county attorney throughout Pete's prosecution) (ER 148).

Second, the Court was well aware the Pete would be appealing the 3/24/10 order (after the Courts 3/4/10 order) because Pete had already attempted to appeal the 3/24/11 order on 4/20/10, DKT. 97. If the Court was satisfied that its 3/24/10 reasoning would be affirmed on appeal, there would have been no need for the Court to launch into such a gratuitous, after the fact, new justification for its earlier order. In fact, the City noted this in its answer brief and disagreed with it (DKT 18. p. 46).

Third, the District Court made up this new excuse out of whole cloth. None of the Defendants' briefs, upon which the 3/4/11 order was based, contain such an argument, because they know better. Those briefs treat the negligence issue in summary fashion (DKT 107 p. 13, DKT 110 p. 6).

Fourth, the Court's new justification for its earlier order is totally out of character with the rest of its opinion (DKT. 13 p 46). Specifically, in granting summary judgment on Pete's negligence claims, the Court could have followed its reasoning that it used in dismissing his other claims, by relying on its earlier order, e.g. (ER 15 (malicious prosecution)). ER 14-15 (unlawful arrest/imprisonment). However, it did not do so, suddenly accepting Plaintiff's position that the City

breached its duty by failing to produce the videos, (ER 18), but with a new explanation which ignored Pete's uncontradicted evidence as discussed below.

Fifth, the Court's placement of this discussion in the negligence section is problematic. It should have been placed in the section of the Court's opinion dealing with Pete's federal claims, (ER 12), because Pete alleges a denial of due process (as a result of the Defendants' failure to produce exculpatory evidence), a fact that the Court noted, (ER 21).

C. The District Court Failed In Its Subsequent Attempt to Justify Its Earlier Ruling

In its 3/4/11 order, the Court suddenly admitted that the videotapes did exist after all, and that the officers breached their duty by failing to produce them, (ER 16-18). But, the Court reasoned that Pete could not prove any negligence damages because he was going to jail, anyway, based on the stipulated facts, *id.* at 15-18.

However, here again, the Court totally ignored Pete's testimony disproving that reasoning, i.e. it was the dirty UA that was obtained after his initial illegal arrest that caused him to plead guilty to the petition to revoke (see Pete's initial brief DKT. 13 p. 46-48). In its answer brief, DKT. 18 p. 47-48, the City does not and cannot dispute Pete's uncontradicted proof that the Court's after-the-fact attempt to justify denying Pete's Rule 56(f) motion was erroneous. Therefore the Rule 56(f) motion should have been granted.

## 2.  THE DEFENDANTS' ADMISSIONS IN THEIR BRIEFS MANDATE GRANTING PLAINTIFFS RULE 56(f) MOTION

In addition to the District Court's subsequent attempted justification (for its earlier ruling denying Pete's Rule 56(f) motion) being wrong, the Defendants themselves have so admitted by failing to deny, or even address, numerous arguments in Pete's initial brief. In Pete's opening brief (DKT. 13), Pete discussed how the District Court erred in denying his Rule 56(f) motion, (DKT. 13 p. 27-31).

There are several critical admissions that the Defendants make in their answer briefs which mandate a reversal of the District Court's order denying Plaintiffs Rule 56(f) motion. The Park County Defendants do not respond to Pete's arguments at all, even though it would have an impact on Pete's medical claims against them. Therefore they have admitted those arguments are true (see the cases cited below).

Farrell/Harris discussed this issue in their answer brief (DKT. 19 p. 19-23) and Raney/Livingston discussed this issue in their answer brief (DKT. 18 p. 21-26). A review of these three briefs reveals that these Defendants do not and cannot deny the following:

2.  The Defendants were allowed to supplement their pleadings regarding the discovery abuse and the chain of custody issue, but the Plaintiff was not;

3. Pete himself had personally reviewed the discovery in his criminal case and had personal knowledge of what had been produced;

4. The Defendants violated three written discovery requests and the first (5/17/06) discovery order;

5. The Defendants failed to respond to any discovery requests/order for over four months;

6. There were numerous contradictions between the Farrell/Harris supplemental affidavits and their actual deposition testimony. In their depositions, both admitted that they were in regular communication with prosecutor Linneweber throughout Plaintiff's prosecution. Also there were Goolsby criminal pleadings in their files, indicating that they were still in the loop as late as August 2006, after both discovery orders were issued (ER 148);

7. There were numerous contradictions between the O'Neill supplemental affidavit and his actual deposition testimony. For example, although his affidavit stated that Plaintiff was allowed to recreate 22 times, in his deposition he admitted that Pete was always kept in handcuffs when he did so, which does not quality for recreation at all (ER 153).

8. The Defendants failed to disclose the videotapes in spite of three written request therefor, violating MCA 46-15-322 (disclosure of evidence by the prosecution upon written request).

As a result of this failure to respond to the Plaintiff's arguments, the Defendants have waived their right to make such a claim on this appeal, *Blackwell v. Cole Taylor Bank* (7th Cir. 1998) 152 F.3d 666-, 673 (party's failure to respond to facts alleged in an earlier brief caused them to be treated as true), *Leer v. Murphy* (9th Cir. 1988) 844 F.2d 628, 634, (issue not briefed is abandoned); *Norton v. Sam's Club* (2nd Cir. 1988) 145 F.3d 114-117-118 (Appellee waived his right to appeal issues not contained in his brief) *U.S. v. Zannino* (1st Cir. 1990) 895 F.2d 1, 17 (issues not briefed are waived).

A. <u>The Farrell/Harris Arguments Missed the Mark</u>

At DKT. 19 p. 21, Farrell/Harris state that Pete failed to offer substantial evidence that Farrell/Harris failed to produce the exculpatory evidence, which does not take into account their deposition testimony set forth in Plaintiffs reply briefs, (ER 144 at seq.), as discussed above, and their access to the videotapes throughout the entire proceedings (see DKT. 13 p. 19-20).

Then, Farrell/Harris state that the District Court was correct in stating that only Goolsby's criminal defense counsel and the Park County Attorney had

personal knowledge of the discovery. However, this fails to take into account Goolsby's testimony that he had personal knowledge of the discovery and what was received. Particularly, Goolsby testified as follows:

> "Q: Now, did your attorney Jami Rebsom make requests for discovery in the criminal defense?
>
> A: I believe four to six times there was discovery requests for specific discovery that I knew was out there.
>
> Q: And what did you get, what was the total that you got from the county attorney during that prosecution regarding the responses to those requests?
>
> A: As far as discovery, the only thing I ever received was about six pages of I think they call is police narrative or police—it is price [sic] narrative, the officer narrative. (emphasis added). ER 191

Moreover, it would be normal procedure for a defense attorney to turn over such evidence to her client, a fact that the Court was well aware of. Amazingly, the District Court ruled that Goolsby did not prove that the sought-after evidence existed, yet both Farrell/Harris and Raney/Livingston admitted that the video tapes existed (Farrell/Harris brief DKT. 19 p. 22, p. 15; Raney/Livingston DKT. 18 p. 24).

Next, Farrell/Harris claim that the videotapes were not withheld in the criminal prosecution (DKT. 19 p. 21-22). However, as discussed above, they failed

14

to produce them in violation of three requests and the first discovery order, a violation of Pete's due process rights, (DKT. 13 p. 30-31).

Next, Farrell/Harris claim that they cannot be accused of failing to do something the prosecutor is responsible for, (DKT. 19 p. 21-22). However, as discussed above, it is uncontradicted that their deposition testimony and file documents showed that they were still "in the loop" regarding Pete's prosecution as late as October, 2006, after both discovery orders had been issued, (DKT 13 p. 29). However, Pete was denied from pursuing this proof further by the Court's denial of his 56(f) motion.

In their answer brief, Farrell/Harris fail to note that Prosecutor Linneweber's alleged offer of the videotape came as a result of the <u>second</u> discovery order, and that he and the Defendants totally ignored the first one.

The Defendants' cavalier attitude toward disclosure and exculpatory evidence (ignoring three written requests and a court order) denied Pete's due process rights (DKT. 13 p. 30-31). They also disrupted the orderly administration of justice and the evidentiary balance essential to the fact-finding process, *Peschel v. City of Missoula, 664 F. Supp. 2d 1137, 1146 (D. MT. 2009).* This attitude also resulted in the unnecessary expenditure of judicial resources and the parties' resources to resolve the issue and betrayed the public's interest in the fair and

accurate resolution of disputes between the public and law enforcement, *id.* at 1146-47.

### B. Raney/City of Livingston's Arguments Miss the Mark

Most of the Raney/City's arguments regarding the 56(f) motion, DKT. 18 p. 21-26 were already dealt with above and will not be repeated here. Suffice it to say that Raney/City fare no better that Farrell/Harris do.

The City claims that Goolsby's testimony was the only evidence to support his claim that the video/audiotapes were not produced in discovery, *id.* at 23. However, this ignored the numerous times this fact was disclosed in the FAC and its exhibits, as discussed above.

Then, Raney/City rely on their supplemented statement of undisputed facts, while failing to note that the Defendant was not allowed to file any similar statement of undisputed facts to respond to them, *id.* at p. 24. Also, Raney/City's discussion of the Linneweber affidavit, *id.* fails to note the fact that the City's officers were still in the loop regarding the criminal prosecution and in regular communication with Linneweber throughout, (ER 148).

In summary, the *Blackwell* line of cases set forth above mandate a reversal of the District Court's denying Goolsby's Rule 56(f) motion. The Defendants have failed to respond to those points set forth above, thereby admitting that they are true.

Goolsby was not given the same opportunity for discovery that the Defendants were and there was no good reason for not allowing him to do so, *Doe, supra*. The Court's after-the-fact justification for its earlier order simply digs itself a deeper hole and the Defendants' failure to refute Pete's uncontradicted testimony regarding why he pled guilty to the parole revocation (a dirty UA) reveals the error of the Court's ruling.

As discussed above, the Court's 56(f) ruling also prejudiced Pete in responding to the Defendants' summary judgment motions by not allowing him to present the Defendants' deposition evidence to refute them. Nonetheless, even on the limited evidence that Pete was able to produce, genuine issues of fact exist, mandating a denial of summary judgment, *Edgerly v. City and County of San Francisco*, 599 F.3d 946 (9th Cir. 2010).

### 3. THE DISCRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO FARRELL/HARRIS/RANEY ON THE ISSUE OF LIABILITY

The Park County Defendants do not address the issue of the initial stop and arrest and therefore have waived the right to contest it on appeal under the *Blackwell* line of cases cited above. Farrell/Harris discuss the initial traffic stop and subsequent arrest at DKT. 19 p. 27-32 of their brief. Raney/City discusses this issue at DKT. 18 p. 30-40. These will be discussed in turn.

However, before doing so, it's interesting to note that the Defendants do not and cannot dispute the following evidence:

1.      The officers totally failed to investigate the cause of Pete's alleged weaving, i.e. that he was crossing the fog line, ER190, 194;

2.      The Defendants motive for the stop is that they described Pete as somebody who needed to be put in jail for the rest of his life, (ER 193).

As a result, these Defendants have admitted that the above facts are true under the *Blackwell* line of cases, *supra.*

A.  The Farrell/Harris Arguments Fail to Negate Genuine Issues of Material Fact

Farrell/Harris rely on *Kiely Construction LLC. v. City of Red Lodge* 323 MT. 52, 57 P. 3d 836 (2002) to support their claims, (DKT. 19 p. 26). However, *Kiely* is distinguishable for the following reasons.

First, *Kiely* did not involve the interaction between an arrestee and law enforcement, as happened here. Rather, that case involved a developer suing some Red Lodge city council members.

Second, other in this setting have found individual liability. For example, in *Leer, supra*. 844 F.2d at 633-34, individual defendants were held to be liable. As noted by the *Leer* court, the inquiry into causation must be individualized and focused on the duties and responsibilities of each individual defendant whose acts

18

or omissions are alleged to have caused the constitutional deprivation. See also, *Berg v. Kinchlow* (9th Cir. 1986) 794 F.2d 457, 460-61 (reversing entry of summary judgment in favor of prison official when the inmate had alleged specific facts showing that the official knew of the threat to the inmate's safety and failed to take action).

Also, as noted in FAC paragraph 102, by the language of, MCA 2-9-305(6) the immunity sought by the Park County Defendant here is void where their conduct constitutes oppression, fraud or malice. Malice is defined by MCA 27-1-221(2) as existing if the defendant has knowledge of facts or intentionally disregards acts that create a high probability of injury to the plaintiff, and deliberately proceeds to act in conscious or intentional disregard of that high probability of injury or deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Oppression exists if a person intentionally causes cruel and unjust hardship by the misusing or abusing authority or power or taking advantage of some weakness, disability or misfortune of another person, MCA 27-1-221(5).

Given the facts set forth above, a jury may well find that the individual Defendants acted oppressively and/or with malice. Therefore the MCA 2-9-305(6) exception would apply

Farrell/Harris argue that the initial stop was legal because Goolsby admitted that he touched the center line a couple times before the stop (DKT. 19 p. 27-28). However, Farrell/Harris failed to note that the reason for Goolsby doing so was the high wind in the Livingston area, (ER 190).

The videotape that the Defendants fail to produce showed that Pete crossed only one line, two to three times because of the high wind, and did not cross the other line at all (ER 190). Farrell/Harris also fail to discuss passenger/eyewitness Peck's testimony that Pete was not driving recklessly or speeding and that Farrell lied about how many times Pete crossed the fog line. This evidence creates a genuine issue of material fact, mandating a denial of the District Court's summary judgment motion, even on the evidence that Pete was allowed to produce, *Edgerly supra.*

Farrell/Harris also claim that the weaving, in addition to the severely broken windshield were enough to establish particularized suspicion (DKT. 19 p. 28). However, the severely broken windshield was <u>never</u> relied on by these Defendants as a basis for the stop, until this appeal, therefore negating that reasoning.

Next, Farrell/Harris claim that *State v. Flynn* ¶10 359 MT. 376, 251 P.3d 143 preempts the ruling of *Morris v. State* 304 MT. 114, 18 P.3d 1003 (2001) and *State v. Lafferty* 291 MT. 157, 969 P.2d 363 (1998). However, *Flynn* did not overrule *Morris* or *Lafferty* but simply stated that the *Lafferty* and *Morris* method

20

of analyzing particularized suspicion, in light of Defendant testimony, was improper. ¶ 12.

*Flynn* did not hold that crossing the fog line two or three times only, was sufficient for particularized suspicion. Therefore, crossing the fog line twice, and driving on it once, (*Lafferty*) and drifting to the fog line and then drifting a foot or two into the oncoming traffic lane (*Morris*), are still insufficient grounds for a traffic stop. Moreover, *Flynn* is distinguishable because in that case there were no weather conditions justifying Flynn's driving ¶4, whereas here the high wind caused Pete to drive the way he did (ER 190).

B. Farrell/Harris Fail to Negate Issues of Fact Regarding Probable Cause to Arrest Goolsby

Interestingly, Farrell/Harris (DKT. 19 p. 29-30) fail to dispute Goolsby's evidence that it was impossible for Harris to see who was driving because he would have had to see through overly tinted glass, a full sized all-terrain tire, and a passenger who was sitting directly behind Pete (ER 190-191). Given that the original traffic stop was invalid, the arrest was invalid as well. At the very least, Pete has put forth evidence of genuine issue of material fact regarding his arrest, even on the scant record that the District Court allowed him to produce (none of the Defendants' depositions), *Edgerly, supra.*

21

C. <u>Farrell/Harris Fail to Negate Issues of Fact Regarding The Search of the Car and the Motel Room</u>

Here, Farrell/Harris claim that the search of the car and the motel room by Farrell/Harris, which was based on the initial illegal stop, somehow ripened into a valid police action (DKT. 19 p. 31-32). Farrell/Harris cannot dispute and therefore admit, *Blackwell, supra* that the application for the search warrant failed to note that the car was Peck's, not Pete's (ER 183, 203). It also failed to note that she twice told the officers, once at the site, and once in a hand-written statement, that she had purchased the Sudafed and that everything in the car was hers, not Pete's (ER 183, 203).

Farrell/Harris fail to dispute that these representations (regarding the ownership of the very evidence that Pete was charged with possessing), were material and omitted from Harris' affidavit, therefore violating the Fourth Amendment, *Crowe v. County of San Diego* 593 F.3d 841, 869-70 (9th Cir. 2010). At the very least, Pete's evidence, none of which was discussed by the District Court, rebutted the Defendant's facts, and raised issues of fact denying summary judgment, *Edgerly supra.*

Also, the Court and Farrell/Harris fail to discuss these Defendants' planting of evidence. Specifically, they claim that a "cookbook" and "list of chemicals"

were in Pete's possession on 4/11/06. However, the internet download date for these documents was 4/11/06, the date after Pete was arrested (ER 200-01).

Finally, the Court and Farrell/Harris also failed to discuss Farrell's improper actions of threatening Peck with 30 to 40 years in jail if she did not testify against Pete, (ER 183). Pete is entitled to have all these facts viewed in a light most favorable to him, negating summary judgment, Edgerly, supra.

### 4. RANEY/CITY OF LIVINGSTON'S ARGUMENTS REGARDING THE INTIAL STOP AND ARREST NEGATE SUMMARY JUDGMENT

In his discussion, Raney does not dispute the fact that if his officers' actions were improper, he is liable as a supervisor under *Edgerly supra* 599 F.3d at 961 DKT 18 p. 27-28.

Raney/City also argue that the officers' initial stop was valid for the same basic reasons that Farrell/Harris did, which was already discussed above. Raney/City also relies on *State v. Flynn* which was distinguished above.

Next, Raney makes the bald assertion that the *Flynn* holding prevents the District Court from considering the fact that the District Court not consider the officers failed to investigate the cause of the weaving (DKT 18 p. 32). However, *Flynn* does not stand for such a proposition.

Raney/City next claim that *Flynn* authorized the finding of particularized suspicion here because Goolsby admitted that he crossed the fog line two or three times, *id.* However, conspicuously absent from Raney's brief was the reason for

Goolsby's crossing the fog line, i.e. the admittedly high wind in the Livingston area (ER 190).

_In summary_, genuine issues of fact exist regarding the officers' lack of particularized suspicion to justify the traffic stop, negating summary judgment, _Edgerly, supra_. All Defendants admit that if the initial traffic stop was invalid, all evidence seized thereafter is suppressible as well.

A. Raney/City Fail to Negate Fact Issues Regarding Pete's Arrest and Search

Raney/City claim that the arrest of Goolsby was valid (DKT. 18 p. 33) However, they don't dispute the fact that if Goolsby's initial stop was invalid, (as discussed above) then his arrest was invalid as well.

Next, Raney/City claim that the search warrant was valid but fail to note that the application contained false information as discussed above. Moreover, Raney fails to dispute the fact that an application containing a material misrepresentation is a violation of Goolsby's constitutional rights, _Crowe, supra_.

Furthermore, Raney, just like Farrell/Harris totally fails to address Peck's uncontradicted statements that all of the items in the car were hers, not Goolsby's and that she bought the Sudafed (ER 201). Raney/City also fail to adequately dispute Pete's evidence that Farrell/Harris could not tell who the driver was (ER

24

191, 196). At the very least, these facts create issues of fact, negating summary judgment, *Edgerly, supra.*

Finally, Raney suggests that the District Court did not err in failing to address the planted evidence, (DKT. 18 p. 39-40). However, the date from the internet download on this evidence raises a genuine issue of fact, negating summary judgment. Pete is entitled to all reasonable inferences to be drawn from all the above evidence, *Edgerly, supra,* which is that the officers planted the evidence, therefore violating his rights.

## 5. THE CITY OF LIVINGSTON FAILS TO NEGATE GOOLSBY'S FACT ISSUES ON ITS LIABILITY

A. Federal Claims

Here the City (DKT. 18 p. 41-42), just like the Court, totally failed to take into account Pete's facts as discussed above. The City admits this, i.e. that since the District Court held that Raney/Harris/Farrell had not violated Goolsby's rights, there was no issue regarding summary judgment.

The City also argues that Goolsby has not brought forth any evidence which demonstrates that the officers were not properly trained. However this fails to take into account the material misrepresentations in Harris' application, the total failure to respond to Peck's uncontradicted statement that all the items in the car were hers, that she had purchased the Sudafed (as discussed above) and that they failed

to respond to Pete's discovery requests. At the very least, this demonstrates genuine issues of material fact negating summary judgment, *Edgerly, supra.*

    B. <u>State Law Claims</u>

Regarding false arrest/imprisonment, the City relies on the District Court's erroneous conclusion that Goolsby's stop was based on reasonable suspicion and his arrest was based on probable cause (DKT. 18 p. 43-44). However, because Goolsby has demonstrated there were genuine issues of material fact regarding those claims, this argument fails, i.e. the City's reasoning fares no better than the District Court's, upon which it relies.

Also, the City discusses the petition to revoke. However, the city does not and <u>cannot</u> dispute Pete's uncontradicted evidence that the 2/2/06 petition to revoke was filed over two months before the 4/10/06 events at issue here and that it related to an absconding charge that he never pled guilty to, ER 180-183).

The City also cannot dispute Pete's uncontradicted evidence that it was a dirty UA (ER 180) that was obtained after his illegal stop, (ER 107) that caused him to subsequently plead guilty to the petition to revoke. Here, once again the District Court simply ignored all of Pete's evidence. See Part 1 above.

Regarding malicious prosecution, the City simply parrots the District Court that, because the District Court found that Pete's arrest and prosecution were supported by probable cause, the third element of malicious prosecution (a lack of

probable cause for the other party's actions) was not satisfied which was already disproven above.

The City's discussion regarding negligence (DKT, 18 p. 48-49) is based on the District Court's reasoning, the falsity of which was proven in Part 1 above (DKT. 13 p. 46-48). Because Pete is entitled to have his evidence viewed in a light most favorable to him, and genuine issues of fact exist, summary judgment does not lie, *Edgerly supra.*

## 6. PARK COUNTY HAS FAILED TO NEGATE GOOLSBY'S CLAIM THAT GENUINE ISSUE OF MATERIAL FACT LIE ON PLAINTIFFS MEDICAL NEEDS CLAIMS

The 8th Amendment imposes duties on prison officials to provide human conditions of confinement; to ensure that inmates receive adequate food, clothing, shelter, and medical care; and to "take reasonable measure to guarantee the safety of the inmates." *Farmer v. Brennan* 511 U.S. 825, 832 (1994) (citing *Hudson v. Palmer* 468 U.S. 517, 526-27 (1984)). A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate violates the 8th Amendment, *id.* at 828 (citing *Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991); and *Estelle v. Gamble*, 829 U.S. 97 (1976). "While *Estelle* establishes that deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts of omissions for the

very purpose of causing harm or with knowledge that harm will result." *Id.* at 835 [Emphasis added].

In *Estelle v. Gamble*, the Supreme Court held a prison official's deliberate indifference to serious medical needs violated the 8th Amendment, 427 U.S. at 106. A serious medical need is present whenever the "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'" *Clement v. Gomez*, 298 F.3d at 904 (citations omitted).

*Estelle* characterizes deliberate indifference as the unnecessary and wanton infliction of pain and the plaintiff must show that the officials knew of and disregarded the substantial risk of harm to the prisoner's health, *Estelle*, 429 U.S. at 104.

Here, it is contradicted that the wet, moist conditions in his cell caused the Plaintiff's headaches and sinusitis (DKT. 13 p. 21). He had never suffered these conditions before enduring the conditions of the Park County Defendants' jail (*id.*). His head conditions persisted for days before the jailers eventually acted by taking him to the emergency room of the hospital, *(id.)*.

First, the Park County Defendants (Carpenter, O'Neill, and Park County) claim that summary judgment lies because there is simply nothing in the record to support the Plaintiffs claim that his medical needs were ignored (DKT. 17 p. 20).

However, these Defendants, just like the District Court, failed to discuss Pete's uncontradicted evidence regarding his medical needs.

The Park County Defendants rely on their self-serving records to prove that Pete's medical needs were properly attended to. However, all of these documents (relating to the length of time Pete made request to the jailers before they responded) were not accurate. The jailers ignored his request, at times for at least seven days (ER 190-193).

Nor do the Park County Defendants dispute Pete's testimony that the pain in his head was so severe that he called his parents and told them he was going to die (ER 188), or that his head condition had been going on for days before the jailers took any action regarding it, (ER 189).

As the party opposing summary judgment, Pete is entitled to all reasonable inferences from this evidence and to have it viewed in a light most favorable to him, *Edgerly, supra.* At the very least, this uncontradicted testimony creates fact issues denying summary judgment.

Also, Park County Defendants claim that this deliberate inaction did not constitute deliberate indifference to his medical needs. However, Pete testified in uncontradicted fashion, that some of the jailers were deliberately indifferent to his medical needs (ER 189) and the above evidence supports this conclusion.

A. <u>The Park County Defendants Fail to Negate Pete's Argument that Genuine Issues of Material Fact Exist on His Medical Claims Under State Law As Well</u>

The Park County Defendants contend that summary judgment was properly rendered on Plaintiffs medical claims under state law, as well (DKT. 17 p. 21-23). However, on those pages, these Defendants admit that the same criteria applies to state law claims as federal law claims. Because Pete has demonstrated that genuine issues of material fact exist regarding his federal law claims, similarly summary judgment was inappropriate on the state law claims because genuine issues of material fact exist regarding those claims as well.

These Defendants don't deny that inadequate ventilation and air flow violate the 8th Amendment if it jeopardizes the health of the inmates and the sanitation of the jail, Keenan v. Hall 89 F.3d 1083, 1090 (9th Cir. 1996). Deprivation of outdoor exercise violated the 8th Amendment rights of inmates, *id.* at 1089.

The 8th Amendment imposes duties on prison officials to provide humane conditions of confinement, to ensure inmates receive adequate food, clothing, shelter and medical care and to take reasonable measures to guarantee the safety of the inmates, *Farmer v. Brennan*. 511 U.S. 825, 832 (1994). A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the 8th Amendment, *id.* at 828. Deliberate indifference is satisfied by something less than

actual intentions for the very purpose of causing harm or with knowledge that harm will result, *id.* at 835.

In discussing Pete's jail conditions, (DKT. 17 p. 27, beginning at page 21, the Park County Defendants, just like the District Court, failed to note the asbestos that was hanging on the pipes around Pete's cell for over twenty years, (ER 192). This condition represents a *prima facia* health violation.

The Park County Defendants also attempt to explain away Pete's testimony that he received no exercise for 272 days (DKT. 17 p. 27). The District Court claimed that the first mention of such conditions appeared in the summary judgment pleadings, which failed to note that the Park County Defendants were made well aware of this claim during Pete's deposition, (ER 192).

These Defendants also parrot the District Court in finding that even if it had been properly pled; the Park County Defendants establish that Goolsby was provided opportunities for exercise. However they failed to note that, in O'Neill's deposition, he testified that all inmates in the sun room were always kept in handcuffs, which of course does not quality as recreation at all, as was pointed out to the Court in Plaintiffs reply brief, (ER 153).

Defendants also ignore the uncontradicted evidence that Park County has no policy providing for the recreation of inmates as indicated by the absence thereof in the Park County Jail Manuel (ER 221). Also, as discussed in Part 1 above, the

Plaintiff was unfairly denied (by the Court's 56(f) ruling) the opportunity to contradict the affidavits upon which the Court relied by its draconian 56(f) ruling.

Next, the Park County Defendants discuss the inadequate lighting in Pete's cell (DKT. 17 p. 27-28). Inadequate lighting may be grounds for a constitutional violation, *Hoptowit v. Spellman* 753 F.2d 779, 783 (9th Cir. 1985).

Pete testified that daylight was not visible from his cell. In fact, a person could not see daylight from the entire floor (ER 192). This condition caused Pete mental/psychological problems, justifying a denial of summary judgment, *Keenan, supra*. 83 F.3d at 1091.

As discussed above, inadequate ventilation violates prisoners constitutional rights, *id.* at 1090. These Defendants claim that the Plaintiff merely alleged that his cell had little ventilation.

However, this argument ignores Pete's deposition testimony that there was a complete lack of ventilation in his cell, the air in his cell was constantly foggy and misty and his cell was always damp (ER 192). It also ignores the uncontradicted facts that the showerhead, which ran twenty four hours a day, was only six feet away from Pete's bed, causing water to constantly drip down the cell's walls, *id.*

Because Pete has alleged that this condition undermined his health/sanitation, summary judgment does not lie, Keenan, supra. 83 F.3d at 1090. As the party opposing summary judgment, Pete is entitled to every reasonable

inference that may be drawn from this testimony, and to have it viewed in a light most favorable to him. Given these parameters, summary judgment does not lie, *Edgerly, supra.*

      B.  <u>The Park County Defendants Fail to Negate Genuine Issues of Material Fact Regarding their Deliberate Indifference</u>

Next, the Park County Defendants argued that summary judgment lies because Pete failed to demonstrate that the PCDC personnel acted with deliberate indifference (DKT 17 p. 31). As discussed above, Pete testified that they acted with deliberate indifference, (ER 189) and the evidence indicates.

Then, the Park County Defendants argue that the Plaintiff failed to demonstrate that PCDC personnel had actual knowledge that an inhumane jail existed or that such condition presented an excessive risk to inmate health and safety (DKT. 17 p. 32). However, this is tantamount to arguing that the PCDC personnel did not even know the conditions of their own jail which is totally unsupported by the evidence.

Next, the Park County Defendants cite numerous facts based on their supplementary affidavits (DKT. 17 p. 22). However, the Plaintiff was not allowed to contradict this evidence because the District Court unfairly short circuited his Rule 56(f) motion as discussed above.

C. <u>The Park County Defendants Fail to Negate Pete's Genuine Issues of Material Fact under State Law</u>

The Park County Defendants contend that summary judgment was properly rendered on the Plaintiffs conditions of confinement claims under state law as well (DKT. 17 p. 34). However, here the Park County Defendants, just like the District Court, retreats to the position that Pete must produce expert testimony regarding the fact that his sinusitis condition was caused by the conditions in his cell.

Of course, as the District Court well knew, this puts the possibility of such proof beyond the financial means of all inmates, thereby rendering proof of such claim an impossibility. Because of this, the District Court erred in ruling that summary judgment as appropriate on Plaintiffs negligence and gross negligence claims.

Next, the Park County Defendants argue that the District Court properly granted summary judgment on Pete's emotional distress claim (DKT/ 17 p. 36). However, Pete clearly was placed under emotional distress due to the conditions of the cell and jail that he was placed in, being denied physical exercise for 272 days, being placed in a cell and (even more) on a floor with no outdoor sunlight visible, violating *Keenan, supra.* 83 F. 3d at 1089-91.

Deprivation of outdoor exercise for a long-term inmate (like Pete) violates the 8th Amendment, *id.* at 1089. Here, its uncontradicted that Pete was never given

outdoor exercise, or any exercise at all, because he was always shackled in the recreation room, ER 153.

## 7. THE DISTRICT COURT ERRED IN GRANTING THE DEFENDANTS MOTION TO QUASH

Farrell/Harris argue that the District Court acted properly in granting their motion to quash (DKT. 19 p. 32). However, they totally failed to note that they had already agreed to produce the personnel files, which made the District Court's granting their motions to quash moot.

Also, they failed to note that this matter was brought to the District Court's attention (ER 51) but it predictably refused to acknowledge it (ER 48). If this Court grants the Rule 56(f) motion, it should also reverse the District Court on this issue. Plaintiff has already agreed to a suitable protective are not violated.

## 8. CONCLUSION

For the reasons set forth above, this Court should reverse the Court's denial of Plaintiffs Rule 56(f) motion. While the Defendants were allowed to rely on Pete's deposition and their self-serving affidavits drafted by their lawyers, Pete was unfairly denied the opportunity to similarly rely on the Defendants' testimony. Rule 56(f) motions are routinely granted, *Doe, supra.* depositions and there was no good for the denial thereof here.

The District Court's after the fact, attempted justification for the 3/24/10 56(f) denial in its 3/4/11 order is without merit. It also totally ignores Pete's uncontradicted testimony about why he pleaded guilty to the parole revocation (dirty UA).

Moreover, the Defendants did not, and could not, deny that they failed to provide discovery for over four months and that they ignored three written discovery requests. This cavalier attitude disrupted the orderly administration of justice, *Peschel, supra.* The Defendants' failure to deny these allegations constitutes an admission of their truthfulness *Blackwell, supra.*

The Court's severe 56(f) ruling also limited Pete's ability to respond to the Defendants summary judgment motions. However, even on the scat evidence that he was allowed to produce, summary judgment does not lie.

Dated this: 17th day of November, 2011.

S/ Terry Schaplow<br>
Terry F. Schaplow, P.C.<br>
Attorney for Plaintiff

CERTIFICATE OF COMPLIANCE

I certify that:

Pursuant to FRAP 32(a)(7)(c) and Ninth Circuit Rule 32-1, the attached joint reply brief is proportionally spaced, has a typeface of 14 point,

is printed with Times New Roman text typeface, is double spaced, and

contains 7, 677 words, according to Microsoft Word Word Count.

DATED: 11/17/11

By: <u>S/ Terry Schaplow</u>
Terry F. Schaplow, P.C.
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the following by ECF on
11/17/11:

| | |
|---|---|
| Ninth Circuit Clerk of Court | Harlan Krogh |
| 95 Seventh St. | 2708 1st Ave. N, Suite 300 |
| P.O. Box 193939 | Billings, MT 59101 |
| San Francisco, CA 94119-3939 | |
| | |
| Steve Milch | Mike Lilly |
| P.O. Box 2529 | 1 West Main St. |
| Billings, MT 59103-2529 | Bozeman, MT 59715 |

<u>S/ Terry Schaplow</u>
Terry F. Schaplow, P.C.
